# 24-1310(L)

## 24-1469(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—against—

JOHN COSTANZO, JR., AKA SEALED DEFENDANT 1,
MANUEL RECIO, AKA SEALED DEFENDANT 2,

*Defendants-Appellants,*

DAVID MACEY, LUIS GUERRA,

*Intervenors.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

### APPENDIX FOR DEFENDANTS-APPELLANTS
### VOLUME IV OF V
### (Pages A-680 to A-907)

---

RONALD GAINOR
GAINOR & DONNER
3250 Mary Street, Suite 405
Miami, Florida 33133
(305) 537-2000

*Attorneys for Defendant-Appellant
Manuel Recio*

DANIEL J. O'NEILL
BRONWYN C. ROANTREE
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas,
17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendant-Appellant
John Costanzo, Jr.*

## TABLE OF CONTENTS

PAGE

District Court Docket Entries ............................................... A-1

Indictment, filed May 18, 2022 (Dkt. 1) ................................ A-38

Government's Opposition to Motion to Quash,
 dated September 25, 2023 (Dkt. 112) (without exhibits)............. A-63

Excerpts of Transcript of October 11, 2023 Final Pretrial Conference .... A-74

Excerpts of Trial Transcript ............................................ A-76

**Government Exhibits**

GX 113A (excerpt): DEA Policy Manual: § 2735 Employee
 Responsibilities and Conduct ................................. A-714

GX 202A-T: Transcript of July 4, 2019 phone call between John
 Costanzo and Manuel Recio ................................. A-719

GX 203-T: Transcript of July 5, 2019 phone call between Manuel
 Recio, John Costanzo, and Luis Guerra ...................... A-721

GX 207-T: Transcript of July 16, 2019 phone call between
 Manuel Recio and John Costanzo ............................ A-725

GX 214-T: Transcript of August 30, 2019 phone call between
 Manuel Recio and John Costanzo ............................ A-729

GX 217-T: Transcript of September 3, 2019 phone call between
 Manuel Recio and John Costanzo ............................ A-734

GX 317: Instant Message Thread between John Costanzo and
 David Macey, dated November 13, 2018 ..................... A-737

ii

PAGE

GX 318: WhatsApp Chat Thread between Manuel Recio and John
Costanzo, dated May 31, 2019 through August 28, 2019 ...... A-739

GX 336: Native Chat Thread between David Macey and John
Costanzo, dated March 3, 2019 ............................. A-753

GX 337: WhatsApp Chat Thread between David Macey and John
Costanzo, dated March 12, 2015 through May 13, 2015 ....... A-754

GX 339: Telegram Chat Thread between John Costanzo and
Manuel Recio, dated February 19, 2019 ..................... A-758

GX 343: Telegram Chat Thread between Manuel Recio and John
Costanzo, dated May 6, 2019 ............................... A-760

GX 344: Telegram Chat Thread between Manuel Recio and John
Costanzo, dated May 7-8, 2019 ............................. A-762

GX 345: Telegram Chat Thread between Manuel Recio and John
Costanzo, dated May 13, 2019 .............................. A-764

GX 347: Telegram Chat Thread between Manuel Recio and John
Costanzo, dated May 14-15, 2019........................... A-766

GX 349: WhatsApp Chat Thread between Manuel Recio and John
Costanzo, dated November 27-29, 2018 ..................... A-768

GX 351: WhatsApp Chat Thread between Manuel Recio and John
Costanzo, dated December 9-10, 2018 ...................... A-769

GX 355: Native Chat Thread between David Macey and John
Costanzo, dated April 14, 2019 ............................ A-770

GX 362D: Telegram Chat Thread between John Costanzo and
Manuel Recio, dated April 26, 2019 ........................ A-771

GX 363B: WhatsApp Chat Thread between John Costanzo and
Manuel Recio, dated June 20, 2019 ......................... A-772

iii

PAGE

GX 364: Telegram Chat Thread between Manuel Recio and John
Costanzo, dated February 27, 2019 .......................... A-773

GX 367: Invoice from EBCO International of Miami to Global
Legal Consulting, dated November 12, 2018 ................. A-774

GX 385: Native Chat Thread between John Costanzo and Manuel
Recio, dated April 16, 2019 ................................. A-775

GX 386: WhatsApp Chat Thread between John Costanzo and
Manuel Recio, dated October 15, 2019 ...................... A-776

GX 401A: Withdrawal receipt and cashier's check to Susana
Rueda, dated January 3, 2020 ............................... A-777

GX 440 (excerpts): U.S. Century Bank statement for Global
Legal Consulting LLC, dated April 1-30, 2019
and May 1-31, 2019 ........................................ A-779

GX 440A: Articles of Incorporation for Global Legal Consulting
LLC, dated October 5, 2018 ................................ A-788

GX 440C: Bank records for Global Legal Consulting LLC ......... A-790

GX 440D: Bank records for Global Legal Consulting LLC ........ A-791

GX 440E: Bank records for Global Legal Consulting LLC ......... A-792

GX 503: Invoice from JEM Solutions Inc. to Manuel Recio,
dated April 17, 2019 ....................................... A-793

GX 504: Invoice from JEM Solutions Inc. to Manuel Recio,
dated June 3, 2019 ......................................... A-794

GX 520: Grand Jury Subpoena to Global Legal Consulting LLC,
dated February 22, 2023 .................................... A-795

iv

PAGE

GX 528: Trial Subpoena to Global Legal Consulting LLC,
dated August 28, 2023 ..................................... A-802

GX 530 (redacted): Global Legal Consulting LLC's Response to
Trial Subpoena .......................................... A-812

GX 701: Summary Chart of Financial Transactions and
Communications Among David Macey, John Costanzo, Sr.,
Edwin Pagan, Manuel Recio, and John Costanzo, Jr. .......... A-825

GX 704A-2: Summary Chart of John Costanzo, Jr. NADDIS
Searches ................................................ A-830

GX 704B-2: Summary Chart of John Costanzo, Jr. NADDIS
searches and Subsequent Phone Calls ....................... A-831

GX 705: Schedule for JEM Solutions Bank Account From
Account Inception to November 18, 2019 .................... A-832

GX 1020: Instant Message Thread between Manuel Recio and
John Costanzo, dated November 10-12, 2019 ................. A-833

GX S1: Trial stipulation regarding cell site data,
dated October 21, 2023.................................... A-835

GX S2: Trial stipulation regarding email records,
dated October 21, 2023.................................... A-837

GX S3: Trial stipulation regarding subpoena returns,
dated October 21, 2023.................................... A-839

GX S6: Trial stipulation regarding wiretap,
dated October 23, 2023.................................... A-842

GX S7: Trial stipulation regarding court filings,
dated October 23, 2023.................................... A-846

v

PAGE

GX S8: Trial stipulation regarding cellphone extractions,
    dated October 23, 2023 ..................................... A-850

**Defendants' Exhibits**

JC 2621: Analysis of Banking Transactions regarding Global
    Legal Consulting and EBCO International of Miami .......... A-858

JC 2622: Analysis of Edwin Pagan III and Edwin Pagan Romero
    Bank Accounts Summary .................................... A-860

JC 2623: Analysis of John Costanzo, Jr. and JEM Solutions, Inc.
    Accounts ................................................. A-865

Excerpts of Sentencing Transcript of John Costanzo, Jr.,
    dated April 24, 2024 ..................................... A-866

Excerpts of Sentencing Transcript of Manuel Recio,
    dated May 13, 2024 ....................................... A-882

Verdict, filed November 20, 2023 (Dkt. 176) ...................... A-901

Notice of Appeal of John Costanzo, Jr., filed May 8, 2024 (Dkt. 249) .. A-904

Notice of Appeal of Manuel Recio, filed May 24, 2024 (Dkt. 260) ..... A-906

## SEALED VOLUME

Letter Motion to Quash Grand Jury Subpoena, dated March 6, 2023
    (sealed in the district court; not docketed) ...................... A-908

Letter Response to Motion to Quash Grand Jury Subpoena,
    dated March 7, 2023 (sealed in the district court; not docketed) ... A-914

Letter Reply re Motion to Quash Grand Jury Subpoena,
    dated March 8, 2023 (sealed in the district court; not docketed) ... A-920

vi

PAGE

Opinion and Order denying Motion to Quash, dated July 17, 2023
    (sealed in the district court; not docketed)........................ A-925

Letter Motion to Quash Trial Subpoena, dated September 19, 2023
    (redacted version docketed at Dkt. 111)......................... A-929

Declaration of Torrey K. Young in Support of Defendants' Omnibus
    Motions in Limine, dated September 27, 2023, including only
    Ex. L (sealed in the district court; not docketed)................. A-946

Letter Reply to Motion to Quash Grand Jury Subpoena,
    dated October 2, 2023 (redacted version docketed at Dkt. 122)... A-1016

Defendants' Joint Opposition to the Government's Motions in
    Limine, dated October 4, 2023 (sealed in the district court;
    not docketed)................................................. A-1025

Excerpts of Sealed Trial Transcript ................................ A-1080

**Government's Exhibits**

    GX 302: Email from Manuel Recio to Manuel Recio,
        dated October 29, 2018, with attachment (sealed at trial)..... A-1110

    GX 530: Global Legal Consulting LLC's Response to Trial
        Subpoena................................................. A-1126

Nb72Cos8                    Charge

1          THE COURT:  The first element that the government must

2     prove beyond a reasonable doubt is that the conspiracy existed.

3     What is a conspiracy?  Simply defined, a conspiracy is an

4     agreement by two or more persons to accomplish one or more

5     unlawful objectives by working together.

6          The essence of the crime of conspiracy is the unlawful

7     agreement to violate the law.  It is not necessary that a

8     conspiracy actually succeed in its purpose for you to conclude

9     that it existed.  Indeed, you may find a defendant guilty of

10    conspiracy despite the fact that it was factually impossible

11    for the defendant to commit the substantive crime or goal of

12    the conspiracy.  This is because the success or failure of a

13    conspiracy is not material to the question of guilt or

14    innocence of the conspirator.  The crime of conspiracy is

15    complete once the unlawful agreement is made and an act is

16    taken in furtherance of that agreement.

17          To establish a conspiracy, the government is not

18    required to show that two or more persons sat around a table

19    and entered into a solemn pact, orally or in writing, stating

20    that they have formed a conspiracy to violate the law and

21    setting forth details of the plans and means by which the

22    unlawful project is to be carried out or the part to be played

23    by each conspirator.  Indeed, it would be extraordinary if

24    there were such a formal document or a specific oral agreement.

25          Your common sense will tell you that when people in

2048

Nb72Cos8                    Charge

1   fact undertake to enter into a criminal conspiracy, much is

2   left to unexpressed understanding.  Conspirators do not usually

3   reduce their agreements to writing or acknowledge them before a

4   notary public, nor do they publicly broadcast their plans.

5   From its very nature, a conspiracy is almost invariably secret

6   in its origin and execution.  I remind you that a conspiracy

7   must include two or more persons.

8        It is sufficient if two or more persons in any way,

9   either explicitly or implicitly, come to a common understanding

10  to violate the law.  Express language or specific words are not

11  required to indicate assent or attachment to a conspiracy.  Nor

12  is it required that you find that any particular number of

13  alleged coconspirators joined in the conspiracy in order to

14  find that a conspiracy existed.  You need only find two or more

15  persons entered into the unlawful agreement alleged in the

16  indictment and that an act was committed in furtherance of that

17  agreement in order to find that a conspiracy existed.

18       In determining whether there has been an unlawful

19  agreement, you may judge acts and conduct of the alleged

20  coconspirators that are done to carry out an apparent criminal

21  purpose.  The saying "actions speak louder than words" is

22  applicable here.  In this regard, you may, in determining

23  whether an agreement existed here, consider the acts and

24  statements of all of those you find to be participants as proof

25  that a common design existed on the part of the persons charged

Nb72Cos8                    Charge

1    to act together to accomplish an unlawful purpose.

2            Often, the only evidence of a conspiracy available is

3    that of disconnected acts that, when taken together and

4    considered as a whole, show a conspiracy or agreement to secure

5    a particular result as satisfactorily and conclusively as more

6    direct proof, such as evidence of an express agreement.

7            Of course, proof concerning the accomplishment of the

8    object or objects of the conspiracy may be the most persuasive

9    evidence of the existence of the conspiracy itself.  But it is

10   not necessary that the conspiracy actually succeed in its

11   purpose in order for you to conclude that the conspiracy

12   existed.

13           In determining whether a conspiracy existed, you

14   should consider all of the evidence that has been admitted with

15   respect to the conduct and statements of each alleged

16   coconspirator and any inference that may reasonably be drawn

17   from that conduct and those statements.

18           It is sufficient to establish the existence of the

19   conspiracy if, after considering all of the relevant evidence,

20   you find beyond a reasonable doubt that the minds of at least

21   two alleged coconspirators agreed, as I have explained, to work

22   together in furtherance of one or more of the objects alleged

23   in Count One of the indictment, and that an act was taken to

24   further that agreement.

25           In this case, Count One of the indictment charges that

Nb72Cos8                    Charge

1    there were two objects of the conspiracy:

2              One, that Costanzo, being a public official, would

3    receive a bribe in return for being induced to perform an act,

4    or not to perform an act, in violation of his official duty.  I

5    have already instructed you on the elements of this substantive

6    crime in connection with Count Two -- in connection with my

7    instructions for Count Two.

8              Two, that Recio and others would give a bribe to a

9    public official with the intent to induce that public official

10   to perform an act, or not to perform an act, in violation of

11   his lawful duty.  I have already instructed you on the elements

12   of this substantive crime in connection with my instructions

13   for Count Three.

14             If you find that the conspirators agreed to accomplish

15   any one or more of these two objectives, then the illegal

16   purpose element will be satisfied.  In other words, you need

17   not find that the conspirators agreed to accomplish all of

18   these -- both of these two objectives.  An agreement to

19   accomplish any one or more of the objectives is sufficient.

20             However, you must be unanimous as to that objective or

21   those objectives.  That is, you must all be in agreement with

22   respect to at least one of the two alleged objectives of the

23   conspiracy.  You all have to be in agreement on the specific

24   object of the conspiracy that you find to exist before you can

25   find the conspiracy charged in the indictment existed.

Nb72Cos8                    Charge

1      In order to satisfy the second element of Count One,

2   the government must also prove beyond a reasonable doubt that

3   the defendant you are considering unlawfully, willfully, and

4   knowingly entered into the conspiracy, that is, that the

5   defendant agreed to take part in the conspiracy with knowledge

6   of its unlawful purposes and in furtherance of its unlawful

7   objectives.

8      "Unlawful" simply means contrary to law.  A defendant

9   need not have known that he or she was breaking any particular

10  law or any particular rule, but he or she must have been aware

11  of the generally unlawful nature of his acts.

12     An act is done "knowingly" and "willfully" if it is

13  done deliberately and purposefully.  That is, a defendant's

14  acts must have been the product of his or her conscious

15  objective, rather than the product of mistake, accident, mere

16  negligence, or some other innocent reason.

17     Now, knowledge is a matter of inference from the

18  proven facts.  Science has not yet devised a manner of looking

19  into a person's mind and knowing what that person is thinking.

20  However, you do have before you the evidence of certain acts

21  and conversations alleged to have taken place involving the

22  defendants or in their presence.  You may consider this

23  evidence in determining whether the government has proven

24  beyond a reasonable doubt a defendant's knowledge of the

25  unlawful purposes of the conspiracy.

Nb72Cos8                    Charge

1          It is not necessary for the government to show that a

2     defendant was fully informed as to all the details of the

3     conspiracy in order for you to infer knowledge on his or her

4     part.  To have guilty knowledge, a defendant need not have

5     known the full extent of the conspiracy or all of the

6     activities of all of its participants.  It is not even

7     necessary for a defendant to know every other member of the

8     conspiracy.  I instruct you that to become a member of the

9     conspiracy, a defendant need not have known the identities of

10    each and every other member, nor need he have been apprised of

11    all of their activities.  Furthermore, a defendant need not

12    have joined in all of the conspiracy's unlawful objectives.

13         Nor is it necessary that a defendant received any

14    monetary benefit from their participation in the conspiracy, or

15    had a financial stake in the outcome.  However, although proof

16    of a financial interest in the outcome of a scheme is not

17    essential or determinative, if you find that a defendant had a

18    financial or other interest, that is a factor you may properly

19    consider in determining whether the defendant was a member of

20    the conspiracy.

21         The duration and extent of each defendant's

22    participation has no bearing on the issue of his guilt.  He

23    need not have joined the conspiracy at the outset and need not

24    have received any benefit in return.  A defendant may have

25    joined it for any purpose at any time in its progress, and he

Nb72Cos8                    Charge

1  will be held responsible for all that was done before he joined

2  and all that was done during the conspiracy's existence while

3  he was a member, if those acts were reasonably foreseeable and

4  within the scope of that defendant's agreement.

5          Each member of a conspiracy may perform separate and

6  distinct acts and may perform them at different times.  Some

7  conspirators may play major roles while others play minor roles

8  in the scheme.  One participating in a conspiracy is no less

9  liable because his part is minor and subordinate.  An equal

10  role or an important role is not what the law requires.  In

11  fact, even a single act can be sufficient to make a defendant a

12  participant in an alleged conspiracy.

13          A person's mere association with a member of the

14  conspiracy, however, does not make that person a member of the

15  conspiracy, even when that association is coupled with

16  knowledge that a conspiracy is taking place.  A person may

17  know, work with, or enter into business or friendship with an

18  individual who is committing a crime without being a criminal

19  himself.  You may not find that the defendant you are

20  considering is a member of a conspiracy merely because of a

21  friendship or business association with alleged coconspirators.

22  Furthermore, mere presence at the scene of a crime, even

23  coupled with knowledge that a crime is taking place, is not

24  sufficient to support a conviction.  In other words, knowledge

25  without agreement and participation is not sufficient.  What is

Nb72Cos8                    Charge

1    necessary is that a defendant participate in the conspiracy

2    with knowledge of its unlawful purposes, and with an intent to

3    aid in the accomplishment of its unlawful objectives.

4         A conspiracy once formed is presumed to continue until

5    its objective is accomplished or until there is some

6    affirmative act of termination by its members.  So too, once a

7    person is found to be participant in the conspiracy, that

8    person is presumed to continue being a participant in the

9    venture until the venture is terminated, unless it is shown by

10   some affirmative proof that the person withdrew and

11   disassociated himself from it.

12        It is not essential that the government prove that a

13   particular conspiracy alleged in the indictment started or

14   ended on any of the specific dates described for that

15   conspiracy.  It is sufficient if you find that the conspiracy

16   was formed and that it existed for some time around or within

17   the dates set forth in the indictment.

18        In sum, the government must prove beyond a reasonable

19   doubt that a defendant, with an understanding of the unlawful

20   nature of the conspiracy, knowingly and intentionally engaged,

21   advised, or assisted in the conspiracy for the purpose of

22   furthering an illegal undertaking.  Only through that does a

23   defendant become a knowing and willing participant in the

24   unlawful agreement——that is to say, a conspirator.

25        Let me now turn to the third element of the conspiracy

2055

Nb72Cos8                    Charge

1   alleged in Count One, the requirement of an overt act.

2           The last element the government must prove beyond a

3   reasonable doubt is that at least one overt act was knowingly

4   committed by at least one of the coconspirators in furtherance

5   of the conspiracy.  An overt act is an independent act that

6   tends to carry out the conspiracy but need not necessarily be

7   the object of the crime.  The function of the overt act

8   requirement is to ensure that the agreement went beyond the

9   mere talking or agreeing stage.

10          You need not find that either of the defendants in

11  this case committed the overt act.  It is sufficient if you

12  find that at least one overt act was in fact performed by at

13  least one coconspirator, whether a defendant or another

14  coconspirator, to further the conspiracy within the time frame

15  of the conspiracy.  Remember that the act of any member of the

16  conspiracy done in furtherance of the conspiracy becomes the

17  act of all of the members.  Nor is it necessary for the

18  defendant you are considering to commit an overt act in order

19  to be a member of the conspiracy.  An overt act must have been

20  knowingly and willfully done by at least one coconspirator in

21  furtherance of the object or purpose of a conspiracy that is

22  charged in the indictment.

23          In this regard, you should bear in mind that the overt

24  act, standing alone, may be an innocent lawful act.

25  Frequently, however, an apparently innocent act sheds its

Nb72Cos8                     Charge

1   harmless character if it is a step in carrying out, promoting,

2   aiding, or assisting in the conspiratorial scheme.  You are

3   therefore instructed that the overt act does not have to be an

4   act which in and of itself is criminal or constitutes an

5   objective of the conspiracy.  It must be an act that furthers

6   the object of the conspiracy.  It is an element of the crime

7   that the government must prove beyond a reasonable doubt.

8           The government can satisfy this element by proving any

9   overt act, provided that the overt act is committed by one of

10  the coconspirators and is done to further the object of the

11  conspiracy.  It is sufficient if you find beyond a reasonable

12  doubt that any one overt act occurred while the conspiracy was

13  still in existence.

14          Nor is it necessary for you to reach unanimous

15  agreement on whether a particular overt act was committed in

16  furtherance of the conspiracy.  You just need to all agree that

17  at least one overt act was so committed.

18          I have admitted into evidence the acts and statements

19  of certain individuals who the government alleges were

20  coconspirators of the defendants.

21          You may consider as evidence against a defendant the

22  acts and statements of those who were coconspirators of that

23  defendant.  The reason for this rule has to do with the nature

24  of the crime of conspiracy.  A conspiracy is often referred to

25  as a partnership in crime.  Thus, as in other types of

2057

Nb72Cos8                    Charge

1    partnerships, when people enter into a conspiracy to publish an

2    unlawful end, each member becomes an agent for the other

3    conspirators in carrying out the conspiracy.  Accordingly, the

4    reasonably foreseeable acts, declarations, statements, and

5    omissions of any member of the conspiracy in furtherance of the

6    common purpose of the conspiracy are deemed, under the law, to

7    be the acts of all of the members, and all of the members are

8    responsible for such acts, declarations, statements, and

9    omissions.

10           In determining the factual issues before you, you may

11   consider against the defendants any acts or statements made by

12   any of the people who you find, under the standards I have

13   already described, to have been their coconspirators, even

14   though such acts or statements were not made in their presence,

15   or were made without their knowledge.

16           I will now turn to Counts Four and Five.  Counts Four

17   and Five relate to the crime of honest services wire fraud.

18   Count Four charges the defendants with conspiracy to commit

19   honest services wire fraud.  Count Five charges the defendants

20   with the substantive crime of honest services wire fraud.

21   Because the law relating to the honest services wire fraud that

22   is charged in Count Five is relevant to my instructions on the

23   conspiracy that is charged in Count Four, I will first instruct

24   you on the substantive fraud that is charged in Count Five.

25   Then I will turn to the law of conspiracy.

Nb72Cos8                    Charge

1          Count Five charges that the defendants committed

2     honest services wire fraud between in or about October 2018 up

3     to and including November 2019, in that Costanzo, a DEA agent,

4     shared nonpublic DEA information with Recio in exchange for

5     bribes paid at the direction of Recio and defense attorneys

6     David Macey and Luis Guerra.

7          The federal wire fraud statute, Title 18, United

8     States Code, Section 1343, provides in pertinent part as

9     follows:  "Whoever, having devised or intending to devise any

10    scheme or artifice to defraud, or for obtaining money or

11    property by means of false or fraudulent pretenses,

12    representations, or promises, transmits or causes to be

13    transmitted by means of wire, radio, or television

14    communications in interstate or foreign commerce, any writings,

15    signals, pictures, or sounds for the purpose of executing such

16    scheme or artifice shall be guilty of a crime."

17         The law defines "the term 'scheme or artifice to

18    defraud'" to "include a scheme or artifice to deprive another

19    of the intangible right of honest services."

20         Honest services wire fraud involves a scheme to

21    defraud the public of its right to a public official's honest

22    services through bribery using wire communications.  To meet

23    its burden of proof of Count Five, the government must prove

24    four elements beyond a reasonable doubt.

25         First, that during the time alleged in the indictment,

Nb72Cos8                    Charge

1    there was a scheme or artifice to deprive the public and the

2    DEA of their right to the honest services of Costanzo through

3    bribery;

4            Second, that the defendant you are considering

5    knowingly and willfully participating -- participated in the

6    scheme or artifice, with knowledge of its fraudulent nature and

7    with specific intent to defraud;

8            Third, the scheme or artifice to defraud involved a

9    material misrepresentation, omission, false statement, false

10   pretense, or concealment of fact; and

11           Fourth, that in execution of that scheme, the

12   defendant you are considering used, or caused the use by

13   others, of interstate wires.

14           The first element the government must prove beyond a

15   reasonable doubt is the existence of a scheme or artifice to

16   deprive the public and the DEA of their right to defendant

17   Costanzo's honest services through bribery, which, as I

18   mentioned before, can more generally be described as *quid pro*

19   *quo* payment.

20           What is the "right to honest services"?  A DEA

21   employee owes a duty of honest and faithful services to the

22   public and the U.S. government agency——the DEA——by which he is

23   employed.  The public and the DEA have the right to expect the

24   official's "honest services"——that he is acting in their

25   interest, not his own.  Thus, when a DEA employee commits an

Nb72Cos8                    Charge

1    act in violation of his official duty, at least in part, in

2    return for a concealed bribe, he has deprived the public and

3    the DEA of his honest services.

4            A "scheme or artifice" is merely a plan for the

5    accomplishment of an object.

6            A "scheme to defraud" is any plan, device, or course

7    of action to deprive another of the right of honest services by

8    means of false or fraudulent pretenses, representation, or

9    promises reasonably calculated to deprive persons of average

10   prudence.

11           To prove that a defendant committed honest services

12   fraud through bribery, the government must show a *quid pro quo*,

13   that is, a defendant received money in exchange for an act

14   performed or promised to be performed in the course of his

15   employment DEA.  Here, the *quid pro quo* alleged is the exchange

16   of payments for Costanzo's act of sharing nonpublic DEA

17   information.  The payment need not have been provided directly

18   to Costanzo, but may have been provided to another person at

19   his request or with his agreement.

20           Not all bad or undesirable conduct by a public

21   official, however, violates the duty of honest services in the

22   context of the criminal charges before you.  For example, it is

23   not enough that that the government prove that there was merely

24   some undisclosed self-dealing by a public official or, more

25   colloquially, that a public official had an undisclosed

Nb72Cos8                    Charge

1    "conflict of interest" or violated some disclosure obligation.

2          It is also not enough that the government prove that

3    the defendants understood that the payments were made solely to

4    create generalized good will.  However, the government is not

5    required to show that Costanzo performed, or promised to

6    perform, an act solely because of the payment.  It is no

7    defense that Costanzo acted because of both proper and improper

8    motives.  A defendant may have the requisite intent to defraud

9    even if he possesses a dual intent, such as an unlawful intent

10   to receive bribes and a proper or neutral intent, like trying

11   to further a DEA investigation.

12         Similarly, it is not a defense that, had there been no

13   bribe, Costanzo might have performed the same act anyway, or

14   that the acts taken were desirable or beneficial to the DEA or

15   the public.

16         The second element the government must prove beyond a

17   reasonable doubt is that the defendant you are considering

18   devised or participated in the scheme to defraud knowingly,

19   willfully, and with a specific intent to defraud.  The

20   definitions of "knowingly" and "willfully" here are the same

21   definitions that I gave you earlier.  "Intent to defraud" means

22   to act with the specific intent to deceive for the purpose of

23   depriving the public and the DEA of its right to Costanzo's

24   honest services—in other words, of its right to Costanzo's

25   faithful performance of his official duties, including the duty

2062

Nb72Cos8                    Charge

1    to not accept payments or things of value in exchange for

2    performing, or promising to perform, an act.

3            Direct proof of knowledge and fraudulent intent is

4    almost never available.  Direct proof of knowledge and

5    fraudulent intent is almost never available.  Nor is direct

6    proof required.  As I mentioned earlier, facts may be

7    established by circumstantial evidence, based upon a person's

8    outward manifestations, his words, conduct, and acts, and all

9    of the surrounding circumstances disclosed by the evidence and

10   the logical inferences that may be drawn from them.

11           Because intent to defraud is an element of honest

12   services wire fraud, it follows that a good-faith belief on the

13   part of a defendant that he was acting lawfully is a complete

14   defense to the charge.  Good faith means having a state of mind

15   that is honest and absent of criminal intent.  If a defendant

16   believed in good faith that he was acting lawfully, even if he

17   was mistaken in that belief, and even if others were harmed by

18   his conduct, there would be no crime.  A defendant, however,

19   has no burden to establish a defense of good faith.  The burden

20   is on the government to prove fraudulent intent and the

21   consequent lack of good faith beyond a reasonable doubt.

22           If a defendant participated in the scheme to defraud,

23   however, then a belief by the defendant, if such a belief

24   existed, that ultimately everything would inure to the public

25   good does not mean that the defendant acted in good faith.  If

Nb72Cos8                    Charge

1   the defendant you are considering participated in the scheme

2   with the intent of depriving the victims of their right to an

3   official's honest services, then no amount of honest belief on

4   the part of the defendant that the scheme would, for example,

5   ultimately benefit the public will excuse fraudulent actions or

6   false representations by him.

7          The third element that the government must prove

8   beyond a reasonable doubt is that the scheme or artifice to

9   defraud involved a material misrepresentation, false statement,

10  false pretense or omission.

11         A representation, statement, false pretense, omission,

12  or concealment of fact is "material" if it would naturally tend

13  to lead or is capable of leading a reasonable person, in this

14  case the DEA, to change its conduct.  Put another way, a

15  material fact is one which would be expected to be of concern

16  to a reasonable and prudent person in relying upon the

17  representation or statement in making a decision.

18         It does not matter whether the DEA might have

19  discovered the fraud had it probed it further.  If you find

20  that a scheme or artifice existed, it is irrelevant whether you

21  believe that the DEA or anyone else involved was careless,

22  gullible, or even negligent.  Furthermore, it is not necessary

23  that the government prove that the public or DEA actually

24  suffered any loss.  It is sufficient for the government to

25  prove that the public and the DEA did not receive the honest

2064

Nb72Cos8                    Charge

1    and faithful services of Costanzo.

2            The fourth element that the government must prove

3    beyond a reasonable doubt is the use of interstate or

4    international wire communications in furtherance of the scheme

5    to defraud.  Wire communications include telephone calls,

6    e-mails, faxes, text messages, chat messages, bank transfers of

7    money, and uploads via the Internet.  "Interstate" means that

8    the wire communications must pass between two or more states

9    as, for example, a telephone call between New York and

10   New Jersey.

11           The use of the wires need not itself be fraudulent.

12   Stated another way, the material wired need not contain any

13   fraudulent misrepresentation, or even any request for money.

14   It must, however, further or assist in the carrying out of the

15   scheme to defraud.  It is not necessary for the defendant you

16   are considering to be directly or personally involved in the

17   wire communication, as long as the communication was reasonably

18   foreseeable in the execution of the alleged scheme to defraud

19   in which that defendant is accused of participating.  In this

20   regard, it is sufficient to establish this element of the crime

21   if the evidence justifies a finding that the defendant you are

22   considering caused the wires to be used by others.  When a

23   defendant does an act with knowledge that the use of the wires

24   will follow in the ordinary course of business or where such

25   use of the wires can reasonably be foreseen, even though not

Nb72Cos8                          Charge

1    actually intended, then he causes the wires to be used.

2         With respect to the use of the wires, the government

3    must establish beyond a reasonable doubt the particular use

4    charged in the indictment.  However, the government does not

5    have to prove that the wires were used on the exact date charge

6    in the indictment.  It is sufficient if the evidence

7    establishes beyond a reasonable doubt that the wires were used

8    on a date substantially similar to the dates charged in the

9    indictment.

10        If you find that wire communications were used in

11   furtherance of the scheme to defraud, you must be unanimous as

12   to at least one of the particular interstate or foreign wire

13   communications in furtherance of the scheme that occurred.

14        We have discussed Count Five of the indictment, which

15   charges honest services wire fraud.  Now let us turn back to

16   Count Four, which charges Costanzo and Recio with participating

17   in a conspiracy to violate the honest services wire fraud

18   statute, the crime I just described, in violation of Title 18,

19   United States Code, Section 1349.

20        As I previously discussed, a conspiracy is an

21   agreement, or an understanding, of two or more persons to

22   accomplish by concerted action one or more unlawful objects.

23   To meet its burden of proof on this charge, the government must

24   prove the following two elements beyond a reasonable doubt:

25        First, that a conspiracy existed; and

Nb72Cos8                    Charge

1          Second, that the defendant you are considering

2     knowingly, willfully, and intentionally became a member of the

3     conspiracy.

4          I previously instructed you, in connection with

5     Count One, on the law relevant to determining whether a

6     conspiracy existed and whether a defendant became a member of

7     such a conspiracy.  Those instructions apply here as well, with

8     the difference here being the object or goal of the conspiracy.

9     The government alleges that the object of the conspiracy in

10    Count Four was to commit honest services wire fraud.  So in

11    deciding whether the conspiracy existed, you must determine

12    whether the conspirators agreed to accomplish that object.

13         In addition to charging Costanzo in Count Two with

14    accepting a bribe, charging Recio in Count Three with paying a

15    bribe to a public official, and charging both Costanzo and

16    Recio in Count Five with honest services wire fraud, Counts

17    Three and Five of the indictment also charge the defendants

18    with what is called aiding and abetting others in the

19    commission of these crimes.

20         A person may be guilty of a substantive offense, such

21    as the ones I just listed if he "aids or abets," which

22    essentially means if he assists another person in committing

23    the offense.  Thus, for example, you may find that the

24    defendant you are considering is guilty of accepting a bribe,

25    paying a bribe, or honest services wire fraud, if you find

Nb72Cos8                    Charge

1    beyond a reasonable doubt that the government has proven that

2    another person actually committed the crime, and that the

3    defendant you are considering helped or assisted that person in

4    the commission of the offense.

5          The legal principles that an aider or abettor of a

6    crime is also liable is codified in a statute called Title 18,

7    United States Code, Section 2.  Under this federal statute,

8    whoever "aids, abets, counsels, command, induces or procures"

9    the commission of an offense "is punishable as a principal."

10   You should give those words their ordinary meeting.  A person

11   "aids" or "abets" a crime if he knowingly does some act for the

12   purpose of aiding or encouraging the commission of that crime,

13   with the intention of causing the crime to be committed.  To

14   "counsel" means to give advice or recommend.  To "induce" means

15   to lead or move by persuasion or influence as to some action or

16   state of mind.  To "procure" means to bring about by

17   unscrupulous or indirect means.  To "cause" means to bring

18   something about, to effect something.

19         In other words, you may find the defendant you are

20   considering guilty of the substantive crime if you find beyond

21   a reasonable doubt that the government has proven both that

22   another person actually committed the crime, and that the

23   defendant aided and abetted that person in the commission of

24   the offense.

25         As you can see, the first requirement for aiding and

2068

Nb72Cos8                    Charge

1   abetting liability is that the crime charged was committed.

2   Obviously, no one can be convicted of aiding and abetting a

3   crime if no crime was committed.  But if you find that a crime

4   was committed, then you must consider whether the defendant

5   aided and abetted the commission of the crime.

6           However, I emphasize, to aid and abet another to

7   commit a crime, it is necessary that a person willfully and

8   knowingly associated himself in some way with the crime and

9   willfully and knowingly sought to help make the crime succeed.

10  Participation in a crime is willful if action is taken

11  voluntarily and knowingly.

12          To determine whether the defendant aided and abetted

13  the commission of the crime with which he is charged, ask

14  yourself these questions:

15          1.  Did he participate in the crime charged as

16  something he wished to bring about?

17          2.  Did he associate himself with the criminal venture

18  knowingly and willfully?

19          3.  Did he seek by his actions to make the criminal

20  venture succeed?

21          If he did, then the defendant is an aider and abettor

22  and therefore guilty of the offense.  If he did not, then the

23  defendant is not an aider and abettor and is not guilty as an

24  aider and abettor.  The mere presence of a person where a crime

25  is being committed, even coupled with knowledge by that person

Nb72Cos8                    Charge

1     that a crime is being committed, or the mere acquiescence by a

2     person in the criminal conduct of others, even with guilty

3     knowledge, is not sufficient to establish aiding and abetting.

4     An aider and abettor must have some interest in the criminal

5     venture and must take some action to assist or encourage the

6     commission of the crime.

7           Let me just remind you the section I just read was BB

8     and is it applies specifically to Counts Three and Five and

9     only Counts Three and Five.

10          Now, I am on CC, Good Faith.

11          Because the government must prove that the defendants

12    acted willfully or with corrupt intent to establish their guilt

13    on each of the charges, the "good faith" of a defendant is a

14    complete defense to each count.  Good faith means having a

15    state of mind that is honest and absent of criminal intent.  I

16    say it is a "defense," but I want to make it clear a defendant

17    has no burden of establishing his good faith.  The burden

18    remains on the government to prove beyond a reasonable doubt

19    that a defendant acted willfully or with corrupt intent and,

20    consequently, that he lacked good faith.

21          A person who acts or causes another person to act

22    based on a belief that the intended action complies with the

23    law is not punishable under the statutes relevant to this case

24    merely because that belief turns out to be inaccurate,

25    incorrect, or wrong.  If a defendant believed in good faith

Nb72Cos8                    Charge

1     that he was acting lawfully, even if he was mistaken in that

2     belief, and even if others were harmed by his conduct, there

3     would be no crime.  Again, the burden of proving good faith

4     does not rest of the defendants because the defendants did do

5     not have an obligation to prove anything in this case.

6          Whether a person acted in good faith, like whether he

7     acted knowingly, intentionally, willfully, or with corrupt

8     intent, is a question of fact for you to determine like any

9     other question of fact.

10         DEA Policies and Standards of Conduct.

11         As I instructed you during the presentation of the

12    evidence, you have heard evidence regarding certain DEA

13    policies and standards of conduct that the government alleges

14    are relevant to this case.  I remind you, and you are

15    instructed again, that violating DEA policies or standards of

16    conduct is not by itself a federal crime.

17         I have already instructed you on the elements of the

18    federal crimes that have been charged in the indictment.  You

19    may not find either defendant guilty simply because you believe

20    that Costanzo did not comply with any of the DEA policies or

21    standards of conduct introduced into evidence.  You may,

22    however, consider such evidence in evaluating whether Costanzo

23    violated an official duty or a lawful duty, as well as in

24    evaluating Costanzo's and Recio's state of mind with respect to

25    the charged offenses.

Nb72Cos8                    Charge

1          Motive.

2          Proof of motive is not a necessary element of the

3     crimes with which the defendants are charged.  Proof of motive

4     does not establish guilt, nor does a lack of proof of motive

5     establish that the defendants are not guilty.

6          If the guilt of the defendants is shown beyond a

7     reasonable doubt, it is immaterial what the motive for the

8     crimes may be or whether any motive is shown, but the presence

9     or absence of motive is a circumstance that you may consider as

10    bearing on the intent of the defendants.

11         False Exculpatory Statements and Consciousness of

12    Guilt Evidence.

13         On Thursday, you heard from Special Agent Joseph

14    LaRocca and Special Agent Delise Jeffrey about their interviews

15    with the defendants in November 2019.  They testified, among

16    other things, that during those interviews, John Costanzo spoke

17    about Manuel Recio and Manuel Recio spoke about John Costanzo.

18    I instruct you that the defendants' statements about each other

19    are not being introduced for their truth.  I further instruct

20    you that neither defendant is charged with making a false

21    statement to the F.B.I.

22         In this testimony, you heard that the defendants made

23    statements in which they claimed that their conduct was

24    consistent with innocence and not with guilt.  The government

25    claims that these statements in which the defendants exculpated

Nb72Cos8                    Charge

1    themselves are false.  While false exculpatory statements can

2    be circumstantial evidence of a consciousness of guilt and can

3    have probative value, such false statements alone are

4    insufficient proof on which to convict.  In other words, if you

5    find that a defendant gave a false statement to divert

6    suspicion from his scheme, you may not infer that the

7    defendants -- that the defendant believes that he was guilty.

8    You may not, however, infer -- sorry, let me do that again.  In

9    other words, if you find that a defendant gave a false

10   statement to divert suspicion from his scheme, you may infer

11   that the defendant believes that he was guilty.  You may not,

12   however, infer on that basis of this -- on the basis of this

13   alone that a defendant is in fact guilty of the crimes with

14   which he is charged.

15          Whether the evidence as to a defendant's statements

16   shows that the defendant believed that he was guilty, and the

17   significance, if any, to be attached to such evidence, are

18   matters for you, the jury, to decide.

19          You heard testimony regarding the Standard Form 86

20   questionnaire for national security positions, or SF86, that

21   Costanzo completed in 2020.  Special Agent Costanzo has not

22   been charged with any crime related to his SF86 questionnaires.

23   You may not find Special Agent Costanzo guilty on any count

24   simply because you believe he should have disclosed more or

25   different information on that questionnaire.  If, however, you

Nb72Cos8                    Charge

1    find that Costanzo knowingly failed to disclose information

2    that was required by the SF86 questionnaire, you may consider

3    that as evidence of Costanzo's state of mind.  On the other

4    hand, if you find that Costanzo properly disclosed the

5    information required by the questionnaire, then you may

6    consider that as evidence of Costanzo's good faith and intent

7    to comply with the law.

8           You have seen evidence and heard testimony regarding a

9    gift letter that Costanzo and his father, John Costanzo, Sr.,

10   submitted in connection with the mortgage application for

11   Costanzo's home.  I instruct you that there are no bank fraud

12   or mortgage fraud charges in this case.  You may not consider

13   the gift letter as proof that Costanzo is of a bad character or

14   has a propensity to commit crime.  However, you may consider it

15   when evaluating Costanzo's state of mind or intent.

16          You have seen evidence and heard testimony about

17   Costanzo's tax returns, as well as certain tax-related

18   documents for John Costanzo, Sr. and Edwin Pagan III.  I

19   instruct you that there are no tax charges in this case and

20   that Costanzo has not been charged with participating in a

21   tax-related conspiracy.  However, you may consider whether this

22   tax evidence is relevant to state of mind or intent.  You may

23   not consider such evidence as proof that Costanzo is of a bad

24   character or has a propensity to commit crime.

25          I also instruct you that taxpayers in the

Nb72Cos8                    Charge

1  United States are required to report all sources of taxable

2  income on their tax returns.  Under the federal tax code, gifts

3  are not considered taxable income, and so an individual who

4  receives a gift is not required to declare the gift as income

5  on his tax returns.  However, an individual who gives a gift

6  over $15,000 in a given year, to a single individual, is

7  required to report the gift to the IRS.  Furthermore,

8  compensation for services is considered taxable income and must

9  be disclosed on an individual's tax return.

10          Venue.

11          In addition to all the elements I have just described

12  for you, in order to convict the defendants, you must also

13  consider the issue of venue as to each offense.  The government

14  must establish what is called "venue," which means that some

15  act pertaining to the charge occurred in the Southern District

16  of New York.  The Southern District of New York encompasses

17  Manhattan, the Bronx, Westchester, Rockland, Putnam, Dutchess,

18  Orange, and Sullivan Counties.  Anything that occurs in the

19  counties I have listed for you occurs in the Southern District

20  of New York.

21          The government does not need to prove that the

22  complete crime for any count was committed within the Southern

23  District of New York or that the defendants themselves were

24  ever in the Southern District of New York.

25          Venue must be examined separately for each count in

Nb72Cos8                    Charge

1    the indictment.  Venue on one count does not establish venue on

2    another count, although, if applicable, you may rely on the

3    same evidence to establish venue on multiple counts.

4         With respect to Counts One through Four, it is

5    sufficient to establish venue if the government proves that any

6    act in furtherance of the crime charged occurred in the

7    Southern District of New York.  The act itself need not be a

8    criminal act.  It could include, for example, meeting with

9    others involved in the criminal scheme within this district.

10   The act need not be taken by a defendant or a conspirator, as

11   long as the act was caused by the conduct of the defendant or

12   conspirator or was reasonably foreseeable.

13        With respect to honest services wire fraud—Count

14   Five—it is sufficient to establish venue if the government

15   proves that any of the wire communications you found to satisfy

16   the fourth element of the offense were transmitted from or to

17   the Southern District of New York, so long as the defendant

18   reasonably anticipated that a wire communication in furtherance

19   of the scheme would be transmitted from or to the Southern

20   District of New York.

21        I should note that on this issue—and this issue

22   alone—the government need not prove venue beyond a reasonable

23   doubt, but only by a mere preponderance of the evidence.  A

24   "preponderance of the evidence" means that the government must

25   prove that it is more likely than not that any act in

Nb72Cos8                    Charge

1    furtherance of a given crime occurred in the Southern District

2    of New York.

3            The indictment in this case refers to various dates.

4    The government is not required to prove that the conduct took

5    place on the precise dates alleged in the indictment.  The law

6    only requires a substantial similarity between the dates

7    alleged in the indictment and the dates established through

8    evidence at trial.  It is not essential that the government

9    prove that the conspiracy started and ended within the

10   specified time period.  The government is also not required to

11   prove that the defendants participated in the charged

12   conspiracy for the entire time period alleged in the

13   indictment.  It is sufficient if you find that a conspiracy was

14   formed and that it existed for some time within the period set

15   forth in the indictment.

16           Theory of the Defense.

17           It is Costanzo's position that he acted at all times

18   in good faith and always in pursuit of the DEA's law

19   enforcement mission.  Costanzo contends that at no time did he

20   ever promise Recio or anyone else that he would take any

21   action, or fail to take any action, in violation of his

22   official duty as a DEA agent and that he never did so or agreed

23   to do so in return for a bribe.  Costanzo denies that he ever

24   participated in an illegal *quid pro quo* bribery or honest

25   services fraud scheme, or that he ever entered into a criminal

2092

Nb82CosF

1              MR. SWETT:  Yes, your Honor.

2              MR. MUKASEY:  Yes, your Honor.

3              MR. GAINOR:  Yes, your Honor.

4              THE COURT:  All right.

5              (Jury present; 2:18 p.m.)

6              THE COURT:  Members of the jury, I have your note

7      indicating that the jury has reached a verdict from your

8      foreperson.

9              Madam Foreperson, Ms. Daw, you are the foreperson,

10     correct?

11             THE FOREPERSON:  Yes.

12             THE COURT:  Has the jury reached a verdict?

13             THE FOREPERSON:  Yes, your Honor.

14             THE COURT:  And is it unanimous?

15             THE FOREPERSON:  Yes, your Honor.

16             THE COURT:  Would you please hand the verdict form to

17     Mr. Hampton.

18             Madam foreperson, if you would please stand, the

19     courtroom deputy clerk will take the verdict.

20             THE DEPUTY CLERK:  Count One, Conspiracy to Bribe a

21     Public Official, as to defendant John Costanzo, Jr. how does

22     the jury find?  Not guilty or guilty.

23             THE FOREPERSON:  Guilty.

24             THE DEPUTY CLERK:  As to Manuel Recio, not guilty or

25     guilty?

Nb82CosF

1              THE FOREPERSON:  Guilty.

2              THE DEPUTY CLERK:  Count Two, Public Official

3    Accepting a Bribe, how does the jury find as to defendant John

4    Costanzo, Jr.?

5              THE FOREPERSON:  Guilty.

6              THE DEPUTY CLERK:  As to Manuel --

7              THE COURT:  That's Count Three.

8              THE DEPUTY CLERK:  I'm sorry.  Moving on to Count

9    Three, Bribery of a Public Official, how does the jury find as

10   to defendant Manuel Recio?

11             THE FOREPERSON:  Guilty.

12             THE DEPUTY CLERK:  Count Four, Conspiracy to Commit

13   Honest Services Wire Fraud, how does the jury find as to

14   defendant John Costanzo, Jr.?

15             THE FOREPERSON:  Guilty.

16             THE DEPUTY CLERK:  How does the jury find as to

17   defendant Manuel Recio?

18             THE FOREPERSON:  Guilty.

19             THE DEPUTY CLERK:  Count five, Honest Services Wire

20   Fraud, how does the jury find as to defendant John Costanzo,

21   Jr.?

22             THE FOREPERSON:  Guilty.

23             THE DEPUTY CLERK:  And as to defendant Manuel Recio?

24             THE FOREPERSON:  Guilty.

25             THE DEPUTY CLERK:  Ladies and gentlemen of the jury,

2094

Nb82CosF

1    please listen to your verdict as it stands recorded.

2         Count One, Conspiracy to Bribe a Public Official, as

3    to John Costanzo, Jr., you found guilty.  As to Manuel Recio,

4    you found guilty.

5         Count Two, Public Official Accepting a Bribe, as to

6    John Costanzo, Jr., you found guilty.

7         Count Three, Bribery of a Public Official, as to

8    Manuel Recio, you found guilty.

9         Count Four, Conspiracy to Commit Honest Services Wire

10   Fraud, as to defendant John Costanzo, Jr., you found guilty.

11   As to defendant Manuel Recio, you found guilty.

12        Count Five, Honest Services Wire Fraud, as to

13   defendant John Costanzo, Jr., you found guilty.  As to

14   defendant Manuel Recio, you found guilty.

15        So say you all?

16        JURORS:  Yes.

17        THE COURT:  Please poll the jury.

18        THE DEPUTY CLERK:  Juror No. 1, is this your verdict?

19        JUROR:  Yes.

20        THE DEPUTY CLERK:  Juror No. 2, is this jury verdict?

21        JUROR:  Yes.

22        THE DEPUTY CLERK:  Juror No. 3, is this your verdict?

23        JUROR:  Yes.

24        THE DEPUTY CLERK:  Juror No. 4, is this your verdict?

25        JUROR:  Yes.

Nb82CosF

1          THE DEPUTY CLERK:  Juror No. 5, is this jury verdict?

2          JUROR:  Yes.

3          THE DEPUTY CLERK:  Juror No. 6, is this your verdict?

4          JUROR:  Yes.

5          THE DEPUTY CLERK:  Juror No. 7, is this your verdict?

6          JUROR:  Yes.

7          THE DEPUTY CLERK:  Juror No. 8, is this your verdict?

8          JUROR:  Yes.

9          THE DEPUTY CLERK:  Juror No. 9, is this your verdict?

10          JUROR:  Yes.

11          THE DEPUTY CLERK:  Juror No. 10, is this your verdict?

12          JUROR:  Yes.

13          THE DEPUTY CLERK:  Juror No. 11, is this your verdict?

14          JUROR:  Yes.

15          THE DEPUTY CLERK:  Juror No. 12, is this your verdict?

16          JUROR:  Yes.

17          THE DEPUTY CLERK:  Verdict unanimous.

18          THE COURT:  Counsel, is there any reason I may not

19   release the jury at this time.

20          MR. ANDREWS:  No, your Honor.

21          MR. MUKASEY:  No, Judge.

22          I have never made this request before, but I would

23   like to ask if any of the jurors are interested in sharing

24   their thoughts just in a casual way when they are finished with

25   their service, I would be interesting in speaking with them.

**DEA SENSITIVE**

This manual is the property of the Drug Enforcement Administration (DEA). Neither it nor its content may be disseminated outside of the DEA (or, if loaned outside of DEA, further disseminated) without the express written permission of the Office of Chief Counsel.

**2735 EMPLOYEE RESPONSIBILITIES AND CONDUCT TR 17-02, 12/23/16**

**Contents**

2735.10 References

2735.11 General Provisions

2735.12 Responsibilities

2735.13 Conflicting Financial Interests

2735.14 Impartiality in Performing Official Duties

2735.15 Gifts from Outside or Non-Federal Sources

2735.16 Gifts Between Employees

2735.17 Outside Employment or Activities TR 17-12, 9/13/17

2735.18 Misuse of Official Position

2735.19 Use of Official Government Vehicles

2735.20 Conduct Prejudicial to the Government

2735.21 Reporting Requirements to and Cooperation with the Office of Professional Responsibility

2735.22 Penalty Guidelines

Exhibit 1/2735 Standards of Conduct Annual Employee Certification

Exhibit 2/2735.15 Outside Employment

Exhibit 3/2735.15 Addendum for Outside Employment

**\*2735.10 References**

A. Statutory Authorities.

1. 18 U.S.C. §§ 202-209:  Prohibition against bribery, graft, and conflicts of interest.

2. 31 U.S.C. § 1349(b):  Authorizing a penalty of suspension of at least 30 days up to and including removal for willful misuse of an OGV.

3. 5 U.S.C. §§ 7321-7326:  Restrictions on political activities for federal employees (The Hatch Act).

**DEA SENSITIVE**

DEA SENSITIVE - DO NOT DISCLOSE



**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration (DEA). Neither it nor its content may be disseminated outside of the DEA (or, if loaned outside of DEA, further disseminated) without the express written permission of the Office of Chief Counsel.

a. Any person or organization substantially involved in the conduct that is the subject of the investigation or prosecution; or

b. Any person or organization which they know has a specific and substantial interest that would be directly affected by the outcome of the investigation or prosecution.

2. An employee assigned to or otherwise participating in a criminal investigation or prosecution who believes that his/her participation may be prohibited by Paragraph 1, above, shall report the matter and all attendant facts and circumstances to his/her supervisor. The supervisor will comply with the requirements of 28 C.F.R. § 45.2(b) to determine whether the employee should continue participating in a criminal investigation or prosecution.

3. For the purposes of this section:

a. Political relationship means a close identification with an elected official, a candidate (whether or not successful) for elective, public office, a political party, or a campaign organization, arising from service as a principal advisor thereto or a principal official thereof.

b. Personal relationship means a close and substantial connection of the type normally viewed as likely to induce partiality. An employee is presumed to have a personal relationship with his or her father, mother, brother, sister, child, and spouse. Whether relationships (including friendships) of an employee to other persons or organizations are "personal" must be judged on an individual basis with due regard given to the subjective opinion of the employee.

C. Use of Nonpublic Information.

An employee shall not engage in a financial transaction using nonpublic information, nor allow the improper use of nonpublic information to further his/her own private interest or that of another, whether through advice or recommendation, or by knowing unauthorized disclosure. Non-public information includes DEA sensitive information (e.g., information that may compromise an ongoing investigation or prosecution, provide an unfair advantage to a company competing for a DOJ/DEA contract, or reveal the identities of confidential sources (CSs) or DEA Special Agents (SAs) or Task Force Officers(TFOs)) as well as the items identified in 5 C.F.R. § 2635.703.

**2735.15 Gifts from Outside or Non-Federal Sources**

A. An employee shall not accept a gift from a prohibited source. A DEA employee also shall not accept a gift given because of his/her official position.

1. For the purposes of this section, the following definitions apply:

a. Gift includes any gratuity, favor, discount, entertainment, hospitality, loan, forbearance, or other item having monetary value, including but not limited to gifts of training, transportation, local travel, lodging, and meals.

**DEA SENSITIVE**

**DEA SENSITIVE**

This manual is the property of the Drug Enforcement Administration (DEA). Neither it nor its content may be disseminated outside of the DEA (or, if loaned outside of DEA, further disseminated) without the express written permission of the Office of Chief Counsel.

Modest items of food and refreshments, such as soft drinks, coffee and donuts, and food offered other than as part of a meal are not gifts. Other modest items include greeting cards and items with little intrinsic value, such as plaques, certificates, and trophies, which are intended solely for presentation, are also not gifts. (See 5 C.F.R. §§ 2635.203(b)(1)-(7) for other examples of items that are not considered gifts). Therefore, the gift prohibition in Paragraph A does not apply to such items.

b. Prohibited source means any person who:

i. Is seeking official action by the employee's agency;

ii. Does business or seeks to do business with the employee's agency;

iii. Conducts activities regulated by the employee's agency;

iv. Has interests that may be substantially affected by the performance or nonperformance of the employee's official duties; or

v. Is an organization a majority of whose members are those identified in (i) through (iv) in this definition (e.g., a trade association whose members are primarily pharmaceutical companies) is a prohibited source.

B. Exceptions to the prohibition in Paragraph A are identified and described in 5 C.F.R. § 2635.204 and include, but are not limited to, the following:

1. Employees may accept unsolicited gifts, even if offered by a prohibited source, if the market value of the gift is $20 or less per occasion and no more than $50 from one source during a calendar year. This exception does not apply to gifts of cash or of investment interests such as stock, bonds, or certificates of deposit.

2. An employee may accept a gift given under circumstances which make it clear that the gift is motivated by a family relationship or personal friendship rather than the position of the employee. Relevant factors in making such a determination include the history of the relationship and whether the friend personally pays for the gift.

C. Even if an exception identified in Paragraph B, above, or 5 C.F.R. § 2635.204 applies to an employee, an employee shall not accept a gift if:

1. It is given in return for being influenced in the performance of an official act;

2. The employee solicits or coerces the offering of a gift;

3. The employee accepts gifts from any source on a basis so frequently that a reasonable person would be led to believe the employee is using his or her public office for private gain; or

**DEA SENSITIVE**

DEA SENSITIVE - DO NOT DISCLOSE

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration (DEA). Neither it nor its content may be disseminated outside of the DEA (or, if loaned outside of DEA, further disseminated) without the express written permission of the Office of Chief Counsel.

4. It is given in violation of applicable procurement policies regarding participation in vendor promotional training.

Example 1.  A friend who works for a prohibited source offers to buy a DEA employee a $15 lunch. At the time of the offer, the DEA employee has a $2 million dollar contract solicitation pending before her in which the prohibited source is one of the competing vendors. The employee should decline the lunch as someone may infer that the lunch is being offered in return for being influenced in the performance of an official act.

Example 2.  An Administrative Officer (AO) routinely deals with vendors who provide information about new company products. The meetings occur twice a month during lunchtime and the representatives provide sandwiches and a soda. The market value of these gifts to the AO is less than $6 per lunch and the aggregate value from any one representative is less than $50. The AO should either decline the lunches or pay for them.  A reasonable person could believe that he would be using his public office for private gain by accepting multiple gifts from vendors in a short time period.

D. Proper Disposition of Prohibited Gifts.

1. If an employee is offered a gift from a non-Federal source, to include local and state law enforcement agencies in excess of $20, he/she should consult with the Office of Chief Counsel, Ethics and Standards of Conduct Unit prior to, or as soon as practicable after, accepting the gift. If an employee is offered travel reimbursement from a non-federal source to a training conference or similar event, or from a foreign government to testify in a foreign court, the employee must consult with the Ethics and Standards of Conduct Unit prior to accepting the travel reimbursement.

2. In general, employees cannot accept a gift from a foreign government.   Under the Foreign Gifts Act (5 U.S.C. § 7342), a DEA employee may accept and retain a gift of minimal value tendered and received as a souvenir or mark of courtesy from a foreign official or government.  Minimal value is defined in 41 C.F.R. § 102-42.10. ("Minimal value" is $375 as of October 2016).  Because this amount is subject to regular adjustments, employees should consult the current version of this regulation to determine the definition of minimal value.  When it appears that to refuse a gift of more than minimal value would likely cause offense or embarrassment, or would otherwise adversely affect the foreign relations of the U.S., an employee may accept a tangible gift of more than minimal value.  Under these circumstances, the gift is deemed to have been accepted on behalf of the U.S. Gifts valued in excess of minimal value as defined by 41 C.F.R. § 102-42.10 are considered Government property and the Office of Administration, Property Management Unit (SAOP) will determine the disposition of such gifts.  Employees are required to report to their supervisor each occasion where gifts, decorations, or gratuities (including travel expenses) are received from foreign officials or governments which have an estimated value of $50 or more. This reporting requirement extends to gifts received by an employee's family members.  Supervisors will monitor the frequency of occasions when an employee has received gifts from a foreign government and should contact the Office of Chief Counsel, Ethics and

**DEA SENSITIVE**

DEA SENSITIVE - DO NOT DISCLOSE

**A-718**

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration (DEA). Neither it nor its content may be disseminated outside of the DEA (or, if loaned outside of DEA, further disseminated) without the express written permission of the Office of Chief Counsel.

Standards of Conduct Unit, for guidance in instances where an employee, or the employee's family, has received multiple gifts during a calendar year from a foreign government and/or where the nature or frequency of the gifts raises concern.

**2735.16 Gifts Between Employees**



# A-719

**United States v. John Costanzo Jr., 22 Cr. 281 (JPO)**


DATE:                                        07/04/2019


TIME:                                        14:02:41-14:31:05


INTERCEPTED LINE:                305-796-7463


INCOMING FROM:                    786-271-2480


PARTICIPANTS:                       JOHN CONSTANZO [JC]
                                               MANUEL RECIO [MR]


ABBREVIATIONS:

[U/I]
Unintelligible

[ph]
Phonetic rendering

[O/V]
Overlapping voices

GOVERNMENT
EXHIBIT
202A-T
22 Cr. 281 (JPO)

**A-720**

| NAME | TRANSCRIPTION |
|------|---------------|
| MR: | Right right so, John, who got indicted this past week or two? |
| JC: | We did Motta Dominguez and Lugo. That should excite a little bit, Gutierrez, but the next indictment which is now scheduled for the 25th will really...so I don't know if you want to make your move now or wait. |
| MR: | Yeah I think I'll make it now. |
| JC: | Good. And then you can screw with him a little bit, like hey listen...I'll give you what you can say. If you get a meeting, let me know and then I'll tell you what to say. |
| MR: | Okay yeah we're gonna meet with Boli tomorrow and see how it works out you know. I'm not holding my breath that Boli is gonna make it happen but let's see you know so. |

# A-721

**United States v. John Costanzo Jr., 22 Cr. 281 (JPO)**

DATE:                                    07/05/2019

TIME:                                    16:48:51-16:54:31

INTERCEPTED LINE:            305-796-7463

INCOMING FROM:               786-566-0085

PARTICIPANTS:                    MANUEL RECIO [MR]
                                            JOHN CONSTANZO [JC]
                                            LUIS GUERRA [LG]

ABBREVIATIONS:

[U/I]
Unintelligible

[ph]
Phonetic rendering

[O/V]
Overlapping voices

GOVERNMENT
EXHIBIT
203-T
22 Cr. 281 (JPO)

1

| **NAME** | **TRANSCRIPTION** |
|---|---|
| | [16:48:51 Recording Start] |
| JC: | Yo. |
| MR: | Yo, I'm here with Louie, Louie. |
| JC: | Oh yeah? |
| MR: | Yeah. |
| JC: | How you guys doing? |
| MR: | We're just planning our next couple months. |
| | |
| MR: | Alright, JC. Hey, what are you doing tonight? Hold on, hold on. |
| LG: | You don't love Louie no more? No love for Louie? |
| JC: | Dude, you know what, I fuckin' leave, you don't even say goodbye. |
| LG: | Oh, listen to me, listen to me. |
| JC: | You think I can't do anything for you anymore, I'm fuckin' done, dude. |
| LG: | Let me tell you, let me tell you, I remember clearly, you saying "Louie, I'll make it happen, tomorrow we're gonna go out you and me." I even sent you a little note, "Johnny, listen, what's going on?" I had a gift for you, Manny says, and you just fuckin' ignore me. I figured, oh my God, what is this? You forget that? Want me to |

| | |
|---|---|
| | show you the text? |
| JC: | Yeah, I forgot all that. |
| LG: | Yeah, I'll show you the text, the day before you left we were supposed to hang out, that was the deal, and I sent you a little text, I have it right here, I'll show Manny, "JC, how are you? I'm ready" and no, no, response. I'm like, man, JC doesn't love Louie anymore, doesn't love Louie anymore. |
| JC: | Listen, you better love me, because I'm going to be running this fucking thing pretty soon. |
| LG: | Okay, listen, so we're here scheming about how we're going to make money, money, money, so we're all on the same page. Hey man, listen, when are you coming back into town so we can actually see each other? |
| JC: | I'm flying in Thursday. |
| LG: | Yeah, Manny just told me, that's next Thursday. We're gonna be in Colombia on Thursday. Manny, don't forget. |
| JC: | Yeah, but, this week. Oh, Manny's, I thought Manny was going this weekend. |
| LG: | No no, today is Friday. Next Thursday Manny Recio will be on a flight to Colombia. He says he's flying out late, I don't know what that means. [Laughs] You have 20 minutes of Manny's time, John, I'm sorry. |
| JC: | Oh, how long is he gone for? |
| LG: | I think he comes back on Sunday. You come back on Sunday? |
| MR: | Sunday. |
| LG: | He comes back on Sunday. I leave Thursday morning and I come back on Sunday. We're gonna hopefully pick up a new case or whatever and we're gonna meet with the Muñoz (Muno Toros crew), so, it's good. |
| JC: | Alright. |

**A-724**

| | |
|---|---|
| LG: | Alright. |
| JC: | Sounds good. |
| LG: | Alright brother. Well listen, I guess we're not gonna see you on this trip, but the following one. |
| JC: | Alright. |
| LG: | Alright buddy. |
| JC: | You got it. |
| LG: | Got it. |
| | [Call ends at 16:54:31] |

## A-725

**United States v. John Costanzo Jr., 22 Cr. 281 (JPO)**

DATE:                                    07/16/2019

TIME:                                    16:27:48 – 16:31:05

INTERCEPTED LINE:            305-796-7463

INCOMING FROM:               786-566-0085

PARTICIPANTS:                    MANNY RECIO [MR]
                                            JOHN COSTANZO [JC]

ABBREVIATIONS:

[U/I]
Unintelligible

[ph]
Phonetic rendering

[O/V]
Overlapping voices

**GOVERNMENT EXHIBIT 207-T**
22 Cr. 281 (JPO)

1

| **NAME** | **TRANSCRIPTION** |
|---|---|
| | [16:27:48 Recording Start] |
| MR: | Oh yeah what's up |
| JC: | What's going on |
| MR: | When AAO tried to fly they pulled his visa |
| JC: | Ohh they did |
| MR: | Yeah |
| JC: | Yeah they're coming |
| MR: | Yeah |
| JC: | Right here. It's HSI they're coming. |
| MR: | Yeah |
| JC: | Is he freaked out? |
| MR: | Yeah he's freaked out |
| JC: | So where is he in the DR? |
| MR: | He's in the DR he can't fly in. Now his wife and family are here and um he's stuck there. I said dude you're gonna have to fix your problems man. You're gonna have to fix your problems |

| JC: | Yeah he should've listened to you months ago |
|---|---|
| MR: | Yeah that's what Dave just told him |
| JC: | They're coming. Yeah |
| MR: | So, I guess I guess um he wants to know how he can fix it now you know but uh I told him look I just got to New York I can't figure it out right now you know |
| JC: | Yeah well first he's needs to like hire you |
| MR: | Right |
| JC: | And then second uh, you know what would be a good contact to reach out to? Uh do you know Andre Bruno? |
| MR: | Yeah |
| JC: | 'Cause he's uhhh [U/I] I don't trust him but he can open up some doors. But I can have some guys like… they're very protective when they run their names and stuff |
| MR: | Right right |
| JC: | Um but if there's anything that benefits the DEA I would jump on it. I don't think I know it's not us I'm pretty sure |
| MR: | But you know um maybe if he's willing to cooperate you know what I'm saying |
| JC: | No yeah I mean that's number one why did that and number two they're probably going to sanction him |
| MR: | Yeah |

| JC: | His world is about to come crashing in |
|-----|----------------------------------------|
| MR: | Yeah. Yeah. Oh well. I just got to New York. It is H-O-T here. |
| JC: | Yeah it's hot here man. There's a huge heatwave it's gonna go hotter. What are you doing up there? You… |
|     | [Recording Ends] |

**A-729**

**United States v. John Costanzo Jr., 22 Cr. 281 (JPO)**

DATE:                                          08/30/2019

TIME:                                          13:48:26-13:55:13

INTERCEPTED LINE:                 305-796-7463

INCOMING FROM:                     786-271-2480

PARTICIPANTS:                         JOHN CONSTANZO [JC]
                                                  MANUEL RECIO [MR]

ABBREVIATIONS:

[U/I]
Unintelligible

[ph]
Phonetic rendering

[O/V]
Overlapping voices

GOVERNMENT
EXHIBIT
214-T
22 Cr. 281 (JPO)

1

| <u>NAME</u> | <u>TRANSCRIPTION</u> |
|---|---|
| MR: | So Louie went, uh out with Rogelio and Juancho [sp] last night. The rumor is that Dave bought you a Mercedes. |
| JC: | Bought me?! |
| MR: | Yeah, and that's why he has you in his back pocket. |
| JC: | Who said that? |
| MR: | That's what Rogelio and Juancho are saying. |
| JC: | Wait hold on, say that again? |
| MR: | That Dave Macey got you a Mercedes. That's why he has you in his back pocket. Because he bought you a Mercedes.<br><br>I'm like he doesn't even drive a Mercedes. |
| JC: | Yeah, why are they saying that? |
| MR: | They should say Porsche! |
| JC: | Why are they saying that? |
| MR: | I don't know, that's what they are saying. |
| JC: | Were they joking or were they being serious? |

| MR: | No, they're serious. Then Louie was like, "you see Manny… This is how they heard about this. They heard about this from Carolos Ramon. Carlos Ramon told them this. And Carlos supposedly is really good friends with Dave Macey. |
|-----|---|
| JC: | Did you correct them? |
| MR: | Yeah of course, yeah. And um, well I wasn't there but Louie corrected them. |
| JC: | Fucking [U/I] |
| | |
| JC: | So, I don't know man. It's fuckin disgusting. I don't want these guys breathing my name. |
| MR: | That's what I mean, you know? |
| JC: | [U/I] |
| MR: | That's why John, everything, everything has to be [U/I] from me because these guys are dangerous. You know? |
| JC: | Yeah |
| MR: | They'll put you in shit you're not involved in anything but they're fucking saying all this bullshit, you know? |
| JC: | Of course. |
| | |
| JC: | He can't like, mention, like, my name. These people are fucking animals |

| MR: | No, no, you know. |
|---|---|
| JC: | [U/I] |
| MR: | But anyway…I'm gonna change things with these two guys in a little bit, you know? Because I don't want them even mentioning you. You're fucking up at headquarters, you're about to be a fucking ASAC. You don't need these fucking guys fucking fucking that up. |
| JC: | Get those guys in line. |
| MR: | Cause all they want to do is, "I know John. Hire me." You know? Meanwhile John has nothing to do with the case. |
| JC: | Nothing |
| MR: | So you know, [laughs] you can't just put John in every case cause you know him. You know what I mean. They have to learn, you know. |
| JC: | Handle that, handle those fucking idiots. If not, I'm gonna, I'll scare the shit out of them. |
| MR: | All right, 100% John. |
| JC: | And Louie should be like screaming at the hills, like "What…are you crazy?" |
| MR: | He did. You gotta, I gotta give him credit, he did. You know? |
| JC: | Alright |
| MR: | And people are going to talk, so... |
| JC: | No, I don't care about that. But I don't want…those two guys, they're dangerous. |

**A-733**

| | |
|---|---|
| MR: | Yeah |
| JC: | Cause if they want a problem, I'll make a problem. I'll find people to put problems on them. |
| MR: | Correct |
| JC: | You know? And they should be lucky that they're breathing the air. |
| MR: | Yeah yeah yeah |
| | [Recording Ends] |

# A-734

**United States v. John Costanzo Jr., 22 Cr. 281 (JPO)**


DATE:                                    09/03/2019


TIME:                                    21:43:23 EDT - 21:46:20 EDT


INTERCEPTED LINE:                        305-796-7463


INCOMING FROM:                           786-271-2480


PARTICIPANTS:                            JOHN CONSTANZO [JC]
                                         MANUEL RECIO [MR]


ABBREVIATIONS:

[U/I]
Unintelligible

[ph]
Phonetic rendering

[O/V]
Overlapping voices



GOVERNMENT
EXHIBIT
217-T
22 Cr. 281 (JPO)

| NAME | TRANSCRIPTION |
|---|---|
| JC: | [U/I] The DEA made an additional arrest and seizure. Um…[U/I]…I'm gonna tweak that. |
| MR: | Okay. |
| JC: | Um…the DEA…that looks good. |
| MR: | Is that the Southern District of New York? |
| JC: | Yeah |
| MR: | Gotta add like a question or parentheses |
| JC: | Yup [O/V] so now at 15 did, um, [U/I] cooperate?…No…He didn't cooperate. I took it out. |
| MR: | Okay |
| JC: | Umm, March 2015, Ms. Herrera provided information, it's 2016. On March 2016, Ms. Herrera provided information about an individual named, um, blah blah blah and Comido, who were distributing drug, a drug in Miami, Florida called. 2 CD, club drug. 2 CD is [U/I] I'm waiting for the name of the person we arrested at the airport. |
| MR: | Ok. |
| JC: | If Luz knows it, we'll get it. Ok, so seventeen, you gotta reword it.<br><br>In April 2015, Ms. Herrera provided information on a DTO, operating in South Florida, which led to the arrest of several individuals. Ms. Herrera worked with SA Bryant of the DEA Miami Field Division and assisted the DEA in developing significant, a significant investigation into an organization who had established a significant importation distribution network, which spanned from Columbia into South Florida area. Ms. Herrera acted in an undercover capacity, agreed to wear a recording device during a meeting with |

|  | one of the members of the aforementioned DTO in Miami, Florida. Due to Ms. Herrera's efforts, she was able to negotiate the purchase of 3 kilograms of heroin. Ms. Herrera was able to infiltrate the DTO. |
|  | There's two things you're missing here. She turned over, uh, a million dollars, right, uh, and I'll word that, I'll word that [U/I], uh, I'll word that, let me fix that paragraph tonight. But she surrendered a million dollars…. |
| MR: | Make it look good John. |
| JC: | What? |
| MR: | Make it look good, it's 30 grand right here. |
| JC: | I'll, I'll, I'll, Alright…so then twenty-one. In 2015, agents of DEA Miami Field Division for… |
| MR: | You know the, the blender. |
| JC: | Oh, Vitamix, oh ok |
| MR: | Vitamix. |
| JC: | Gotta get one of those. Ok, all right, let me do this….let me clean it up then I'll send it back to you |
| MR: | All right Johnny. Thanks buddy. |
| JC: | Read it once or twice then wrap it up. |
| MR: | All right, very good. |



Instant Message Thread
Gio Costanzo 17862712480 (Gray)
David Macey 13054907027 (Green)

11/13/2018 12:55:00 PM(UTC-5) — 1500 for my service. Pinga

11/13/2018 12:55:00 PM(UTC-5) — John this is Marcos Rodriguez Porsche Service. The vehicle needed a power steering pump and belt tension all covered under warranty. It will need the six year service with belt that costs $1475+ tax the pump will be done Thursday

11/13/2018 1:15:30 PM(UTC-5) — Can't pick up only write. What do u think

Sucks ass. — 11/13/2018 1:26:35 PM(UTC-5)

Text him you were thinking of selling the car soon. What can you deduct without making the car unsafe or void the warranty — 11/13/2018 1:27:29 PM(UTC-5)

11/13/2018 1:28:00 PM(UTC-5) — Fuck it I am gonna have him do it.

Of course you are — 11/13/2018 1:28:11 PM(UTC-5)

11/13/2018 1:28:26 PM(UTC-5) — Lol. Just made 2500 fuck it

**GOVERNMENT EXHIBIT 317**
22 Cr. 281 (JPO)

Instant Message Thread
Gio Costanzo 17862712480 (Gray)
David Macey 13054907027 (Green)

Ask him what the warranty work would have cost.

11/13/2018 1:28:54
PM(UTC-5)

It will make you feel better

11/13/2018 1:30:55
PM(UTC-5)

**A-739**

WhatsApp Chat Thread
Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)
System Message (Blue)



5/31/2019 9:18:34 AM(UTC-4)    🔒 Messages and calls are end-to-end encrypted. No one outside of this chat, not even WhatsApp, can read or listen to them. Tap to learn more

Up and running    5/31/2019 9:18:34 AM(UTC-4)

5/31/2019 9:31:08 AM(UTC-4)    Nice

5/31/2019 9:31:15 AM(UTC-4)    Telegram

5/31/2019 9:33:08 AM(UTC-4)    Can you look at Gilberto Hernández

5/31/2019 9:34:15 AM(UTC-4)    Cédula ▮▮▮463
Dob ▮▮▮1979

...

GOVERNMENT
EXHIBIT
318
22 Cr. 281 (JPO)

Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)
System Message (Blue)



DIEGO FERNANDO COCA
DOB: ███/77
Aka: "Platino"

6/4/2019 3:24:45 PM(UTC-4)

Ok let me c if anyone is in if not it will b mananan
6/4/2019 3:35:34 PM(UTC-4)

Luz should be in
6/4/2019 3:35:56 PM(UTC-4)

Ok
6/4/2019 3:36:41 PM(UTC-4)

This guy wants to hire me
6/4/2019 3:36:53 PM(UTC-4)

On it
6/4/2019 3:37:02 PM(UTC-4)

Paul Cohen
6/4/2019 4:09:51 PM(UTC-4)

Can you run Jorge Arrango aka Pelusa?
6/6/2019 10:53:28 AM(UTC-4)



Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)

6/14/2019 3:08:58 PM(UTC-4) — Omg we landed the client

6/14/2019 3:09:04 PM(UTC-4) — Huge guy

Dr o Colombia — 6/14/2019 3:09:16 PM(UTC-4)

6/14/2019 3:09:22 PM(UTC-4) — DR

Yeah Dave called — 6/14/2019 3:09:33 PM(UTC-4)

6/14/2019 3:09:36 PM(UTC-4) — He is going to cooperate

Sounds great — 6/14/2019 3:09:38 PM(UTC-4)

6/14/2019 3:10:08 PM(UTC-4) — Now Johnny O is trying to meddle

Heard — 6/14/2019 3:10:15 PM(UTC-4)

6/14/2019 3:10:15 PM(UTC-4) — ☹

...

U make it to Colombia — 6/14/2019 3:11:55 PM(UTC-4)

Is everything lined up — 6/14/2019 3:12:32 PM(UTC-4)



Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)
System Message (Blue)

6/14/2019 3:16:03 PM(UTC-4) — Yes

6/14/2019 3:16:11 PM(UTC-4) — All is good

Sweet — 6/14/2019 3:16:17 PM(UTC-4)

B careful — 6/14/2019 3:16:24 PM(UTC-4)

· · ·

6/20/2019 1:53:08 PM(UTC-4) — DIEGO FERNANDO COCA
DOB: ████/77
Aka: "Platino"

6/20/2019 1:53:47 PM(UTC-4) — Can u look into case file and tell me about this guy

6/20/2019 1:54:00 PM(UTC-4) — Paul C has the case

6/20/2019 2:09:09 PM(UTC-4) — Missed Voice Call

· · ·



Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)

6/21/2019 3:10:15 PM(UTC-4) — Hey I sent u an email

6/21/2019 1:41:34 PM(UTC-4) — Can u forward it to Nick

Papo I didn't get anything send me the info try jbtmg30@yahoo.com — 6/21/2019 5:27:04 PM(UTC-4)

Spoke with nic — 6/21/2019 5:27:07 PM(UTC-4)

He is ready — 6/21/2019 5:27:12 PM(UTC-4)

...

6/22/2019 9:31:14 AM(UTC-4) — Just sent it

K — 6/22/2019 9:31:49 AM(UTC-4)

Sent it — 6/22/2019 9:39:28 AM(UTC-4)

...

Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)

| | |
|---|---|
| 7/2/2019 3:23:34 PM(UTC-4) | We just got to casa de campo |

Papo coming in next Thursday
7/5/2019 11:20:06 AM(UTC-4)

| | |
|---|---|
| 7/5/2019 11:26:13 AM(UTC-4) | Awesome |
| 7/5/2019 11:26:21 AM(UTC-4) | What time |

Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)



7/9/2019 11:49:52 AM(UTC-4) — Hey anything on the above

Standby — 7/9/2019 11:50:07 AM(UTC-4)

Papo u have a don — 7/9/2019 12:11:58 PM(UTC-4)

Dob — 7/9/2019 12:12:03 PM(UTC-4)

7/9/2019 12:19:24 PM(UTC-4) — No

I was just notified I am in your old pod — 7/9/2019 2:32:59 PM(UTC-4)

FYI nothing yet on — 7/9/2019 2:33:16 PM(UTC-4)

7/9/2019 2:34:54 PM(UTC-4) — Awesome

Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)



7/11/2019 9:01:59 AM(UTC-4) — Hey can you see if there is anything in the CBP system for Eudo Carruyo-Perozo

7/11/2019 10:49:50 PM(UTC-4) — Loco is 8/6

Ok — 7/12/2019 10:04:05 AM(UTC-4)

7/12/2019 10:57:03 AM(UTC-4) — Attachment: 98763aba-1145-48d7-b144-44606168c3ba.jpg

7/12/2019 10:57:28 AM(UTC-4) — Can u see if this guy is or was an informant

7/12/2019 4:05:52 PM(UTC-4) — John anything on this

7/12/2019 4:10:28 PM(UTC-4) — John if you can get me this quick it would be great

...

**A-747**



Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)

| | |
|---|---|
| Yoooo anything g in number | 7/13/2019 3:19:01 PM(UTC-4) |
| 7/13/2019 3:27:35 PM(UTC-4) ??? | |
| Telephone number u get one | 7/13/2019 3:27:58 PM(UTC-4) |
| 7/13/2019 3:34:27 PM(UTC-4) Not tracking | |
| 7/13/2019 3:34:31 PM(UTC-4) 🙂 | |
| Juan was suppose to give us a number for 1 million pick up. What's wrong with u u ok | 7/13/2019 3:35:24 PM(UTC-4) |
| 7/13/2019 3:35:31 PM(UTC-4) Ok | |
| Holland | 7/13/2019 3:35:33 PM(UTC-4) |
| Ring a bell | 7/13/2019 3:35:37 PM(UTC-4) |
| 7/13/2019 3:35:43 PM(UTC-4) yes | |
| Ah ok | 7/13/2019 3:35:52 PM(UTC-4) |
| Any move meant | 7/13/2019 3:35:57 PM(UTC-4) |
| Movement | 7/13/2019 3:36:06 PM(UTC-4) |

Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)



7/13/2019 3:36:11 PM(UTC-4) — Let me see

7/13/2019 3:36:21 PM(UTC-4) — Just got out of Picota

Ok — 7/13/2019 3:36:27 PM(UTC-4)

7/13/2019 3:40:53 PM(UTC-4) — John anything on this

7/13/2019 3:41:12 PM(UTC-4) — Attachment: 90ee2794-335c-49d2-9516-0d661978e556.jpg

Nothing pops — 7/13/2019 3:41:38 PM(UTC-4)

7/13/2019 3:41:39 PM(UTC-4) — Is it negative?

7/13/2019 3:41:42 PM(UTC-4) — Ok

Y — 7/13/2019 3:41:44 PM(UTC-4)

When u back — 7/13/2019 3:41:53 PM(UTC-4)

7/13/2019 3:41:58 PM(UTC-4) — Tomorrow

7/13/2019 3:42:03 PM(UTC-4) — Let's meet



Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)

How was the attorney — 7/13/2019 3:42:06 PM(UTC-4)

What time u get in I can pick u up — 7/13/2019 3:42:17 PM(UTC-4)

7/13/2019 3:42:27 PM(UTC-4) — She's in the hospital

Chica — 7/13/2019 3:42:28 PM(UTC-4)

7/13/2019 3:42:33 PM(UTC-4) — 😔

Wow u destroyed her — 7/13/2019 3:42:37 PM(UTC-4)

7/13/2019 3:42:52 PM(UTC-4) — Didn't meet her

Pinga — 7/13/2019 3:42:58 PM(UTC-4)

7/13/2019 3:43:13 PM(UTC-4) — She got food poisoning

Wow — 7/13/2019 3:43:21 PM(UTC-4)

What time u land — 7/13/2019 3:43:34 PM(UTC-4)

Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)



Going to c Dave now — 7/13/2019 3:43:57 PM(UTC-4)

Push that pick up I have everything lined up — 7/13/2019 3:44:26 PM(UTC-4)

7/13/2019 3:44:44 PM(UTC-4) — Saw Fernando at picota with Jay

How was that — 7/13/2019 3:52:06 PM(UTC-4)

U guys need to all sit down — 7/13/2019 3:52:20 PM(UTC-4)

7/13/2019 3:52:36 PM(UTC-4) — I was cordial

7/13/2019 3:52:46 PM(UTC-4) — Shook his hand

Attachment: 758b1167-7cf0-reda-bd18-6fd58daf85bb.opus — 7/13/2019 3:52:54 PM(UTC-4)

Attachment: a10df0e5-354d-4c59-a3ce-25c0c59c1332.opus — 7/13/2019 3:53:19 PM(UTC-4)

7/13/2019 3:56:39 PM(UTC-4) — Who u said that to

7/13/2019 3:56:41 PM(UTC-4) — Dave

Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)



Attachment: d0c14009-ee22-477c-896f-dc02503ee248.opus
7/13/2019 3:57:19 PM(UTC-4)

Hey can you get me a phone number in Holland. We have to provide the number
7/13/2019 4:00:45 PM(UTC-4)

Pinga ok I will call now
7/13/2019 4:01:14 PM(UTC-4)

Sorry
7/13/2019 4:01:28 PM(UTC-4)

Is an encrypted number that they r requesting
7/13/2019 4:01:53 PM(UTC-4)

No they also want a token
7/13/2019 4:02:26 PM(UTC-4)

Hey I can't give u that info not ethical but if your client wants to talk I will put them with the right people
7/14/2019 12:40:25 PM(UTC-4)

Ok
7/14/2019 12:41:02 PM(UTC-4)

• • •

Send me the fincin
8/8/2019 9:54:36 AM(UTC-4)

Adam Pollack
███-4313
███/36
Bank of America acct number ███9880
Originor Chemicals
Bank of America
███████2247
8/8/2019 12:29:56 PM(UTC-4)

Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC 786-566-0085@s.whatsapp.net (Green)
System Message (Blue)



8/11/2019 8:08:44 PM(UTC-4) — Attachment: 09f78d82-c2e9-482d-8863-

Is that a new client — 8/11/2019 8:30:21 PM(UTC-4)

8/11/2019 8:31:01 PM(UTC-4) — Call me

8/11/2019 8:55:01 PM(UTC-4) — Attachment: d49fa1ff-2c84-4c06-9a81-c5a93831aebb.jpg

8/12/2019 9:03:30 AM(UTC-4) — Anything?

...

8/28/2019 4:50:34 PM(UTC-4) — Attachment: 7700d442-c3ab-429c-a939-384ed3c545b3.jpg

? — 8/28/2019 5:16:49 PM(UTC-4)

8/28/2019 5:22:36 PM(UTC-4) — Call me today

8/28/2019 5:22:40 PM(UTC-4) — Tonight

8/28/2019 5:24:05 PM(UTC-4) — Missed Voice Call

K — 8/28/2019 5:24:14 PM(UTC-4)



Native Chat Thread
David Macey 305-490-7027(Gray)
Gio Costanzo 786-281-2480(Green)

3/3/2019 5:10:52 PM(UTC+0) — Swing by when your done with manny. Good pool day.

3/3/2019 5:11:31 PM(UTC+0) — I'm going to take the family out to lunch. Be back around 2:00

Ok balls deep in packing I will cig if I can break — 3/3/2019 5:14:10 PM(UTC+0)

3/3/2019 7:37:37 PM(UTC+0) — Yo

3/3/2019 7:38:04 PM(UTC+0) — Have Juan here want to confirm the job details. About to pay him

GOVERNMENT
EXHIBIT
336
22 Cr. 281 (JPO)

WhatsApp Chat Thread
David Macey 305-490-7027@s.whatsapp.net (Gray)
JC (Green)

3/12/2015 10:01:51 AM(UTC-4)
So I'm about to push hard to make that mueble phone call happen. I'll keep you posted

K be cautious of what u or ur peps say while on he phones.
3/12/2015 10:09:26 AM(UTC-4)

3/12/2015 10:14:00 AM(UTC-4)
Got it. Juanky is flying down to make it happen

Mueble in custody go to work
3/30/2015 5:20:28 PM(UTC-4)

3/30/2015 7:29:49 PM(UTC-4)
I guess he won't be able to enjoy Cartagena.

4/21/2015 1:15:52 PM(UTC-4)
Talking to Nick about a meeting in early May in Bogota, maybe are timing can work out. Also update on Andres when we can talk next

4/21/2015 8:23:51 PM(UTC-4)
I Heard The daughter interviewed 10 attorneys! I can't believe with my name being thrown around I don't even get a call. Strange? Supposedly she contracted one of them today.

4/21/2015 8:35:08 PM(UTC-4)
On to the next one.

Had to cancel tonight gonna get more info manana
4/21/2015 8:35:56 PM(UTC-4)

GOVERNMENT
EXHIBIT
337
22 Cr. 281 (JPO)

David Macey 305-490-7027@s.whatsapp.net (Gray)
JC (Green)



4/22/2015 6:41:52 PM(UTC-4)
... Who got the case?

Not sure yet
4/22/2015 6:42:18 PM(UTC-4)

4/22/2015 6:42:51 PM(UTC-4)
Really, I heard it was a done deal

4/23/2015 2:34:52 PM(UTC-4)
Attachments:
c29d85da7971243a0cc160b1b794af87.jpg

About to close the deal for u
4/24/2015 9:05:08 PM(UTC-4)

4/24/2015 9:14:25 PM(UTC-4)
Close the deal or not, the thought and effort puts you off the chart. Your the man. Won't forget.

Carlos called her did good.
4/24/2015 9:19:39 PM(UTC-4)

At dinner still working on it.
4/24/2015 9:19:50 PM(UTC-4)

They r bitching u r to expensive
4/24/2015 9:20:36 PM(UTC-4)

Working
4/24/2015 9:20:41 PM(UTC-4)

4/24/2015 9:22:24 PM(UTC-4)
Tonight I will start working on a statute in your honor

David Macey 305-490-7027@s.whatsapp.net (Gray)
JC (Green)



Lol
4/24/2015 9:22:37 PM(UTC-4)

Lou is working hard for u right now
4/24/2015 9:23:36 PM(UTC-4)

4/24/2015 9:43:23 PM(UTC-4)
I just finished a poem about you and Lou.

Lol they will call I need to coach u up. Manana
4/24/2015 9:46:01 PM(UTC-4)

4/27/2015 7:55:21 AM(UTC-4)
Let me know when I can learn the ways of the Jedi.

Getting a flight to bogota to sharpen my Jedi skills. U should get a call this week if u haven't already.
4/27/2015 8:14:04 PM(UTC-4)

5/5/2015 10:54:49 PM(UTC-4)
Hey buddy, in bogota all week. What's up with you?

Working hard for u guys. Just spoke with nico heard things went well
5/5/2015 10:55:43 PM(UTC-4)

5/5/2015 10:56:04 PM(UTC-4)
Heading to Machos tomorrow. I'll give you a full report

With mubles daughter right now at the sentencing call u after
5/13/2015 3:00:16 PM(UTC-4)

David Macey 305-490-7027@s.whatsapp.net (Gray)
JC (Green)



Pushed till November worked out good. Muble still doesn't have Attny she said she was going to interview u his extradition is in should be here in the next few months she stated he was going to fight it
5/13/2015 10:11:14 PM(UTC-4)

K
5/13/2015 10:11:22 PM(UTC-4)

8/3/2015 2:02:22 PM(UTC-4)
By the way, back in Miami. I'm making reservations for that place in MB for 8/13. After a Novacento head start.

8/3/2015 2:02:37 PM(UTC-4)
I'll invite pagan too

9/2/2015 6:22:26 PM(UTC-4)
Juan Carlos Rios
CC # ████ 483
Jucarija@icloud.com
Tel: 011 57 313 352 9423

9/2/2015 8:20:19 PM(UTC-4)
I need the service

9/2/2015 8:20:19 PM(UTC-4)
My friend good evening can jhon do 2

I will entertain this tomorrow
5/13/2015 3:00:16 PM(UTC-4)

9/2/2015 8:46:21 PM(UTC-4)
That's from chuck norris. The Haiti issue. I told him you probably won't do anything until he's signed.

9/2/2015 8:46:59 PM(UTC-4)
Juan carlos. Don't do anything or at least no heavy lifting until the check clears.

**A-758**



Telegram Chat Thread
Jc 713-578-845 (Green)
Manny Recio 707-911-750 (Gray)

| | |
|---|---|
| Guillermo Fuentes is involved | 2/19/2019 10:25:26 AM(UTC-5) |
| 2/19/2019 10:26:18 AM(UTC-5) — Nice | |
| Why else | 2/19/2019 10:26:29 AM(UTC-5) |
| 2/19/2019 10:26:42 AM(UTC-5) — I just need case agent in DC | |
| 2/19/2019 10:27:13 AM(UTC-5) — Call me and give me a summary on his NADDIS | |
| Outgoing Call duration (in seconds): 117 | 2/19/2019 10:29:55 AM(UTC-5) |
| Outgoing Call duration (in seconds): 189 | 2/19/2019 10:33:16 AM(UTC-5) |
| Cancelled Call duration (in seconds): 0 | 2/19/2019 10:33:21 AM(UTC-5) |
| Outgoing Call duration (in seconds): 181 | 2/19/2019 10:36:29 AM(UTC-5) |
| Cancelled Call duration (in seconds): 0 | 2/19/2019 10:36:35 AM(UTC-5) |
| 2/19/2019 10:36:48 AM(UTC-5) — I'll get you a decision before noon | |
| Thanks | 2/19/2019 10:37:30 AM(UTC-5) |
| Joshua cliff ▮▮▮▮ 0608 | 2/19/2019 10:37:57 AM(UTC-5) |

GOVERNMENT EXHIBIT 339
22 Cr. 281 (JPO)

Jc 713-578-845 (Green)
Manny Recio 707-911-750 (Gray)



Call Fuentes first
2/19/2019 10:38:08 AM(UTC-5)

Nothing on karen Trujillo Suarez
2/19/2019 10:40:24 AM(UTC-5)

Mara Hewitt ▮▮▮▮ 7487. Atlanta contact for German
2/19/2019 10:44:54 AM(UTC-5)

2/19/2019 10:45:27 AM(UTC-5)
Great

Telegram Chat Thread
Manny Recio 707-911-750 (Gray)
Jc 713-578-845 (Green)



5/6/2019 2:42:59 PM(UTC-4)
Please, Verify this name Francisco Ameliach

5/6/2019 2:43:15 PM(UTC-4)
Can you quickly run this name?

Standby
5/6/2019 3:31:44 PM(UTC-4)

Doing it now
5/6/2019 3:31:49 PM(UTC-4)

5/6/2019 3:36:19 PM(UTC-4)
Ok

Kind of old 2015 stuff related to sandy G's case
5/6/2019 3:41:19 PM(UTC-4)

Vz high end guy
5/6/2019 3:41:49 PM(UTC-4)

Retired minister of National Assembly
5/6/2019 3:42:11 PM(UTC-4)

Why can this guy come in
5/6/2019 3:42:23 PM(UTC-4)

Old stuff
5/6/2019 3:42:30 PM(UTC-4)

5/6/2019 4:12:29 PM(UTC-4)
What was it about

5/6/2019 4:12:37 PM(UTC-4)
The case?

No just case info
5/6/2019 4:42:35 PM(UTC-4)

GOVERNMENT
EXHIBIT
343
22 Cr. 281 (JPO)

Manny Recio 707-911-750 (Gray)
Jc 713-578-845 (Green)

Was connected to the Carvajal case

5/6/2019 4:42:59 PM(UTC-4)

Loosely

5/6/2019 4:43:12 PM(UTC-4)



Telegram Chat Thread
Manny Recio 707-911-750 (Gray)
Jc 713-578-845 (Green)

5/7/2019 4:59:02 PM(UTC-4)  Alirio trujillo

5/7/2019 4:59:09 PM(UTC-4)  Can you look up

5/7/2019 4:59:23 PM(UTC-4)  Potential new client for David

Ok
5/7/2019 7:42:22 PM(UTC-4)

5/8/2019 9:36:13 AM(UTC-4)  Can you also run this guy?

5/8/2019 9:36:19 AM(UTC-4)  Carlos Arturo salazar benavides cc ███ ███594

5/8/2019 9:46:47 AM(UTC-4)  Let me know what u find

Trujillo is Colombian case Nate clement son
and randy ballman guillermo Fuentes was
the former agent may want to talk to him
first  standby
5/8/2019 10:49:09 AM(UTC-4)

Salazar case agent is Sam Bonner ███
5104. The guy was picked up on a paw in
Panama
5/8/2019 10:56:45 AM(UTC-4)

5/8/2019 10:57:26 AM(UTC-4)  Bonner is where

Dallas
5/8/2019 10:57:55 AM(UTC-4)

5/8/2019 10:58:23 AM(UTC-4)  Is there anything in the system about the cases

**GOVERNMENT EXHIBIT**
**344**
22 Cr. 281 (JPO)

Manny Recio 707-911-750 (Gray)
Jc 713-578-845 (Green)



Both Colombian move a lot of weight very limited
5/8/2019 10:58:58 AM(UTC-4)

5/8/2019 10:59:29 AM(UTC-4)
Bonner works in colombia

No ballad
5/8/2019 10:59:35 AM(UTC-4)

Dallas
5/8/2019 10:59:37 AM(UTC-4)

5/8/2019 10:59:43 AM(UTC-4)
Ok

5/8/2019 11:01:05 AM(UTC-4)
Awesome

Telegram Chat Thread
Manny Recio 707-911-750 (Gray)
Jc 713-578-845 (Green)

5/13/2019 10:04:30 AM(UTC-4)
Antonio Mischella

5/13/2019 10:04:35 AM(UTC-4)
Venezolano

Pulling in now standby
5/13/2019 10:04:42 AM(UTC-4)

5/13/2019 10:05:12 AM(UTC-4)
He is hiding in bogota because VZ is after him

5/13/2019 10:05:19 AM (UTC-4)
Big oil guy

5/13/2019 10:05:33 AM (UTC-4)
He wants to cooperate

Confirm the spelling
5/13/2019 10:14:15 AM (UTC-4)

5/13/2019 10:15:22 AM(UTC-4)
Attachment: thumb_9357eb3b-afc2-4740-a286-9377c77f0e33.jpg 

5/13/2019 10:26:06 AM(UTC-4)
He's huge

5/13/2019 10:26:27 AM(UTC-4)
Gotta be a Guerra case

Ok looking into it but nothing right now
5/13/2019 12:09:41 PM(UTC-4)

**GOVERNMENT EXHIBIT 345**
22 Cr. 281 (JPO)

Telegram Chat Thread
Manny Recio 707-911-750 (Gray)
Jc 713-578-845 (Green)

5/13/2019 12:10:26
PM(UTC-4)     I have a chance to get him

5/13/2019 12:10:57
PM(UTC-4)     Just need to know if he could help Billy

Outgoing Call duration (in seconds): 82     5/13/2019 7:15:00
PM(UTC-4)

Hector Zavala mora     5/13/2019 7:15:19
PM(UTC-4)

Go     5/13/2019 7:15:21
PM(UTC-4)

Telegram Chat Thread
Manny Recio 707-911-750 (Gray)
Jc 713-578-845(Green)

John I need your help trying to see if you could help me find any of these guys. You looked before and you said the names were to vague but David is placing a lot of pressure on me.

Jason Jesus Palacio Gomez
His number is 3173999567 (maybe we can run it)

Adrian Manyoma (arrested on a boat on 4/10)

Antonio Obando aka Mátala

Yair Caicedo Quiñonez aka chino

Jorge Mayorga-Flores
Normas Castillo

5/14/2019 6:56:23 PM(UTC-4)

John u there
5/15/2019 11:12:11 AM(UTC-4)

santiago díaz medina
████ 1971
as: ████ 7445
alex's house: ████████ miami, fl. 33137
5/15/2019 11:12:16 AM(UTC-4)

Can u also run this for Dave
5/15/2019 11:12:16 AM(UTC-4)

Oh shit Thai just through
5/15/2019 3:28:19 PM(UTC-4)

GOVERNMENT
EXHIBIT
347
22 Cr. 281 (JPO)



Manny Recio 707-911-750 (Gray)
Jc 713-578-845(Green)

Palacio Gomez is brian smith
5/15/2019 3:33:52 PM(UTC-4)

Palacio Gomez ran loads to Costa Rica
5/15/2019 3:35:31 PM(UTC-4)

Manyoma agent is Robert lukens of Miami looks like he was arrested Romain is his boss
5/15/2019 3:39:02 PM(UTC-4)

Luis Fernando Agudelo Lloreda
D.O.B : ███████ 1963
5/15/2019 3:45:37 PM(UTC-4)
Also need this guy

**A-768**



WhatsApp Chat Thread
Manny Recio 305-796-7463@s.whatsapp.net (Gray)
JC (Green)

11/27/2018
7:30:58 AM(UTC-5)
John can you look into Edwin Rincón
Venezuela?

K
11/27/2018
7:31:32 AM(UTC-5)

11/27/2018
5:32:51 PM(UTC-5)
Esteban Samayoa. Can u look into this

Johnny 3 thing:

1. Esteban Samayoa - is he in Naddis

2. Edwin Rincón- immigration status

3. Victor eduardo Lopez Cuellar
/78 - immigration status
11/29/2018
9:35:56 AM(UTC-5)

K on way in
11/29/2018
9:37:33 AM(UTC-5)

Still waiting on that info should have it by
manana
11/29/2018
5:50:49 PM(UTC-5)

Edwin is a Visa Overstay
11/29/2018
6:41:51 PM(UTC-5)

Attachment: 4d78cb30-9d4f-49eb-87d4-
a921c0d13728.jpg
11/29/2018
6:42:20 PM(UTC-5)

Papo that is from my guy
11/29/2018
6:42:53 PM(UTC-5)

GOVERNMENT
EXHIBIT
349
22 Cr. 281 (JPO)

WhatsApp Chat Thread

Manny Recio 305-796-7463@s.whatsapp.net (Gray)

JC (Green)

| | |
|---|---|
| 12/9/2018 10:40:14 AM(UTC-5) | Enrique Portocarrero Castillo |
| 12/9/2018 10:40:44 AM(UTC-5) | Let me know about this guy |
| 12/9/2018 10:40:52 AM(UTC-5) | He goes by Porto |
| 12/9/2018 10:41:13 AM(UTC-5) | And Minota could do him |

Ok — 12/9/2018 10:41:26 AM(UTC-5)

| | |
|---|---|
| 12/10/2018 8:11:35 AM(UTC-5) | can you get me the two things this morning? Porto and Mary |

Yeah — 12/10/2018 8:12:45 AM(UTC-5)

| | |
|---|---|
| 12/10/2018 8:13:07 AM(UTC-5) | Thanks |

GOVERNMENT
EXHIBIT
351
22 Cr. 281 (JPO)

**A-770**

Native Chat Thread
David Macey 305-490-7027 (Gray)
Gio Costanzo 786-271-2480



4/14/2019 7:33:19
PM(UTC-4)

First failure you could not change your
ticket on American Airlines to New York

4/14/2019 7:33:30
PM(UTC-4)

Second failure could not make any
plans

4/14/2019 7:34:22
PM(UTC-4)

Therefore, I ad to come through like I
always do so that Mr. PalMeri would not be
disappointed. The tickets have bee
purchased as I indicated

GOVERNMENT
EXHIBIT
355
22 Cr. 281 (JPO)



**Telegram Chat Thread - DELETED**
Johnny Costanzo 713578845 (Gray)
Manuel Recio 707911750 (Green)

Can u look up perlaza — 4/26/2019 10:05:50 AM(UTC-4)

4/26/2019 10:09:22 AM(UTC-4) — I did

4/26/2019 10:09:24 AM(UTC-4) — Hold on

4/26/2019 10:09:24 AM(UTC-4) — Hold on

4/26/2019 10:44:58 AM(UTC-4) — Gonna b Courtney and jeff no one really owns him

4/26/2019 10:45:16 AM(UTC-4) — Colombia is going to be Nate and randy

Ok — 4/26/2019 10:45:50 AM(UTC-4)

He wants to turn himself in — 4/26/2019 10:46:09 AM(UTC-4)

Why wouldn't Lui know that Castro is involved — 4/26/2019 10:46:38 AM(UTC-4)

Is there an indictment? — 4/26/2019 10:47:00 AM(UTC-4)

**GOVERNMENT EXHIBIT 362D**
22 Cr. 281 (JPO)

**WhatsApp Chat Thread - DELETED**

Johnny Costanzo 7865660085 (Gray)

Manuel Recio 3057967463 (Green)

DIEGO FERNANDO COCA
DOB: ███/77
Aka: "Platino"

6/20/2019 1:53:08 PM(UTC-4)

Can u look into case file and tell me about this guy

6/20/2019 1:53:47 PM(UTC-4)

GOVERNMENT
EXHIBIT
363B
22 Cr. 281 (JPO)

Telegram Chat Thread
Manny Recio 707-911-750 (Gray)
Johnny Costanzo 713-578-845 (Green)



Papo what the fuck is going on
2/27/2019 8:37:57 PM(UTC-5)

The Tumaco guy is afraid to cooperate and decided against moving forward and Prado doesn't want Dave but wants me
2/27/2019 8:41:57 PM(UTC-5)

Wow
2/27/2019 8:55:53 PM(UTC-5)

Ok now I understand. JM for life
2/27/2019 8:56:09 PM(UTC-5)

GOVERNMENT
EXHIBIT
364
22 Cr. 281 (JPO)

**A-774**

# Invoice

EBCO International of Miami
P.O. Box 331633
Coconut Grove, FL 33233

| Bill To |
| --- |
| Global Legal Consulting |
| Manuel A Recio |
| 8306 Mills Dr 229 |
| Miami,FL 33183 |

| Date | Invoice No. | P.O. Number | Terms | Project |
| --- | --- | --- | --- | --- |
| 11/12/18 | 421 | | Due on receipt | |

| Item | Description | Quantity | Rate | Amount |
| --- | --- | --- | --- | --- |
| Investigation | Investigative services | | 2,500.00 | 2,500.00 |

Please remit to EBCO International of Miami, Inc. PO Box 331633, Coconut Grove, FL 33233

| | |
| --- | --- |
| Subtotal | $2,500.00 |
| Sales Tax | $0.00 |
| Total | $2,500.00 |

GOVERNMENT
EXHIBIT
367
22 Cr. 281 (JPO)

Native Chat Thread
Johnny Costanzo 786-271-2480 (Green)
Manuel Recio 305-796-7463

Attachment: IMG_1154.jpeg

4/16/2019 6:40:58
PM(UTC-4)

3rd base 5 rows up

Attachment: IMG_1156.jpeg

4/16/2019 6:48:43
PM(UTC-4)



GOVERNMENT
EXHIBIT
385
22 Cr. 281 (JPO)

WhatsApp Chat Thread
Johnny Costanzo 786-271-2480@s.whatsapp.net (Green)
Manny R 305-796-7463@whatsapp.net (Gray)

We about to own Mexico

10/15/2019 2:55:12 PM(UTC-4)

Nic is in

10/15/2019 2:55:15 PM(UTC-4)

10/15/2019 2:56:37 PM(UTC-4)

Really!!!!!!!!

GOVERNMENT
EXHIBIT
386
22 Cr. 281 (JPO)

**A-777**



**DADE COUNTY FEDERAL**
C R E D I T   U N I O N

```
Dade County Federal Credit Union
Jackson Memorial Hosp. Branch
1801 NW 9th Ave
Miami FL 33136
Inquiries Call:          305-471-5080


Acct XXXXXX9701      PAGAN III,EDWIN
Eff: 01/03/20        Date: 01/03/20
Tlr: 3083                      3:23pm
_____

Withdraw from  REGULAR SHARE 0001
Prev Bal:            104,651.72
Amount:               20,003.00
New Bal:              84,648.72
Seq:                   1060844

Acct XXXXXX9701
Avail Bal S0001       84,643.72
_____


Check Printing Fee        -3.00
Check Disbursed      -20,000.00
SUSANA RUEDA
Ref number:          0000095010
```

Authorized by

```
ID Source:
☐ Drv Lic _____
☐ SigCard
☐ Known
☐ Other   _____
```

**GOVERNMENT EXHIBIT**
**401A**
22 Cr. 281 (JPO)

SDNY_0040519





*** TWENTY THOUSAND DOLLARS AND 00 CENTS ***

01/03/20

$20,000.00

PAY

TO THE ORDER OF

EXACTLY 20,000 Dollars 00 Cents

*SUSANA RUEDA*

DADE COUNTY FEDERAL CREDIT UNION
THIS CHECK VOID AFTER 90 DAYS

AUTHORIZED SIGNATURE ACCEPTED BY DRAWER/DRAWEE
TWO SIGNATURES REQUIRED OVER $5,000

**CASHIER'S CHECK**

SDNY_0040520

## A-779

| | |
|---|---|
| ACCOUNT NO. | ████-518-8 |
| STATEMENT PERIOD FROM: | 04/01/2019 |
| TO: | 04/30/2019 |

**GLOBAL LEGAL CONSULTING LLC**
**8306 MILLS DRIVE**
**# 229**
**MIAMI, FL  33183**

PAGE          1 of 5

---

### TYPE OF ACCOUNT... Advantage Business Checking

| Balance Last Statement | We Have Added Number Deposits/Credits | We Have Subtracted Number Checks/Debits | Ending Balance |
|---|---|---|---|
| $ 1,402.30 | 10    $ 57,736.50 | 38    $ 45,443.66 | $ 13,695.14 |

| Items Enclosed | Minimum Balance | Average Balance | Average Available Balance |
|---|---|---|---|
| 10 | $ 7,445.14 | $ 16,923.21 | $ 14,932.83 |

### CHECKS

| CHECK NO | DATE | AMOUNT | CHECK NO | DATE | AMOUNT |
|---|---|---|---|---|---|
| 1024 | 04/04/2019 | $450.00 | 1030 | 04/25/2019 | $250.00 |
| 1027* | 04/12/2019 | $1,500.00 | 1031 | 04/29/2019 | $500.00 |
| 1029* | 04/23/2019 | $10,000.00 | 1032 | 04/30/2019 | $250.00 |

\* - denotes missing check number in sequence

### OTHER DEBITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 04/01/2019 | $100.00 | EFT Debit<br>UCBBP:TB9CERPX:CITICARDS |
| 04/01/2019 | $36.50 | ACH Withdrawal<br>INTUIT PYMT SOLN TRAN FEE |
| 04/01/2019 | $42.30 | ACH Withdrawal<br>INTUIT PYMT SOLN TRAN FEE |
| 04/01/2019 | $500.00 | ACH Withdrawal<br>CITI CARD ONLINE PAYMENT |
| 04/01/2019 | $500.00 | ACH Withdrawal<br>AMEX EPAYMENT ACH PMT |
| 04/01/2019 | $500.00 | ACH Withdrawal<br>AMEX EPAYMENT ACH PMT |
| 04/03/2019 | $282.52 | EFT Debit<br>UCBBP:OB2CGR6N:STAPLES - COMMERCIAL |
| 04/03/2019 | $29.98 | ACH Withdrawal<br>INTUIT PYMT SOLN TRAN FEE |
| 04/03/2019 | $500.00 | ACH Withdrawal<br>CITI CARD ONLINE PAYMENT |
| 04/03/2019 | $1,000.00 | ACH Withdrawal<br>affirm.com Payme AFFIRM.COM |
| 04/04/2019 | $665.48 | ACH Withdrawal<br>AMEX EPAYMENT ACH PMT |
| 04/04/2019 | $1,000.00 | ACH Withdrawal |

**A-780**

| | | |
|---|---|---|
| **ACCOUNT NO.** | | ██████-518-8 |
| **STATEMENT PERIOD FROM:** | | 04/01/2019 |
| **TO:** | | 04/30/2019 |

**GLOBAL LEGAL CONSULTING LLC**
**8306 MILLS DRIVE**
**# 229**
**MIAMI, FL 33183**

PAGE    2 of 5

## ━━━ OTHER DEBITS ━━━

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| | | CITI CARD ONLINE PAYMENT |
| 04/04/2019 | $1,505.49 | ACH Withdrawal |
| | | AMEX EPAYMENT ACH PMT |
| 04/04/2019 | $4,000.00 | ACH Withdrawal |
| | | CHASE CREDIT CRD EPAY |
| 04/08/2019 | $935.88 | ACH Withdrawal |
| | | CITI CARD ONLINE PAYMENT |
| 04/08/2019 | $2,000.00 | ACH Withdrawal |
| | | CHASE CREDIT CRD EPAY |
| 04/12/2019 | $31.99 | ACH Withdrawal |
| | | AMEX EPAYMENT ACH PMT |
| 04/12/2019 | $3,000.00 | ACH Withdrawal |
| | | CHASE CREDIT CRD EPAY |
| 04/15/2019 | $290.08 | EFT Debit |
| | | UCBBP:RBNC2R3Q:CHRYSLER CAPITAL |
| 04/15/2019 | $390.15 | EFT Debit |
| | | UCBBP:GBGCNREQ:VERIZON WIRELESS |
| 04/15/2019 | $485.63 | EFT Debit |
| | | UCBBP:HBJCDR3Q:STAPLES - COMMERCIAL |
| 04/15/2019 | $4,000.00 | ACH Withdrawal |
| | | IRS USATAXPYMT |
| 04/17/2019 | $2,061.28 | ACH Withdrawal |
| | | CITI CARD ONLINE PAYMENT |
| 04/23/2019 | $75.00 | ACH Withdrawal |
| | | AMEX EPAYMENT ACH PMT |
| 04/23/2019 | $111.65 | ACH Withdrawal |
| | | CITI CARD ONLINE PAYMENT |
| 04/23/2019 | $500.00 | ACH Withdrawal |
| | | CHASE CREDIT CRD EPAY |
| 04/23/2019 | $2,500.00 | ACH Withdrawal |
| | | CITI CARD ONLINE PAYMENT |
| 04/24/2019 | $34.99 | ACH Withdrawal |
| | | CAPITAL ONE MOBILE PMT |
| 04/24/2019 | $175.00 | Debit Card Transaction |
| | | 744-MICHAEL KORS(DFA) MIAMI FL |
| | | Terminal ID: 0060 Serial #: 000248489 |
| 04/29/2019 | $239.74 | ACH Withdrawal |
| | | AMEX EPAYMENT ACH PMT |
| 04/29/2019 | $2,000.00 | ACH Withdrawal |
| | | CHASE CREDIT CRD EPAY |

USCB000037

# A-781

| | |
|---|---|
| ACCOUNT NO. | ▋-518-8 |
| STATEMENT PERIOD FROM: | 04/01/2019 |
| TO: | 04/30/2019 |

**GLOBAL LEGAL CONSULTING LLC**
**8306 MILLS DRIVE**
**# 229**
**MIAMI, FL  33183**

PAGE      3 of 5

## OTHER DEBITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 04/29/2019 | $3,000.00 | ACH Withdrawal |
| | | CITI CARD ONLINE PAYMENT |

## DEPOSITS

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 04/01/2019 | $7,111.50 | 04/12/2019 | $15,000.00 | | |
| 04/04/2019 | $5,400.00 | 04/16/2019 | $7,000.00 | | |

## OTHER CREDITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 04/01/2019 | $1,250.00 | ACH Deposit |
| | | INTUIT PYMT SOLN DEPOSIT |
| 04/01/2019 | $1,450.00 | ACH Deposit |
| | | INTUIT PYMT SOLN DEPOSIT |
| 04/02/2019 | $6,500.00 | ACH Deposit |
| | | US CENTURY BANK P2PBILLPAY |
| | | ID: D MACEY GLOBAL LEGAL CONSULTIN |
| | | Trace Number: 051400503021260 |
| 04/03/2019 | $1,025.00 | ACH Deposit |
| | | INTUIT PYMT SOLN DEPOSIT |
| 04/15/2019 | $6,500.00 | ACH Deposit |
| | | US CENTURY BANK P2PBILLPAY |
| | | ID: D MACEY GLOBAL LEGAL CONSULTIN |
| | | Trace Number: 051400501684567 |
| 04/30/2019 | $6,500.00 | ACH Deposit |
| | | US CENTURY BANK P2PBILLPAY |
| | | ID: D MACEY GLOBAL LEGAL CONSULTIN |
| | | Trace Number: 051400509537128 |

## DAILY BALANCE INFORMATION

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 03/31/2019 | 1,402.30 | 04/08/2019 | 10,090.65 | 04/23/2019 | 13,644.87 |
| 04/01/2019 | 9,535.00 | 04/12/2019 | 20,558.66 | 04/24/2019 | 13,434.88 |
| 04/02/2019 | 16,035.00 | 04/15/2019 | 21,892.80 | 04/25/2019 | 13,184.88 |
| 04/03/2019 | 15,247.50 | 04/16/2019 | 28,892.80 | 04/29/2019 | 7,445.14 |
| 04/04/2019 | 13,026.53 | 04/17/2019 | 26,831.52 | 04/30/2019 | 13,695.14 |

USCB000038

A-782

| | |
|---|---|
| ACCOUNT NO. | ████-518-8 |
| STATEMENT PERIOD FROM: | 04/01/2019 |
| TO: | 04/30/2019 |

**GLOBAL LEGAL CONSULTING LLC**
**8306 MILLS DRIVE**
**# 229**
**MIAMI, FL  33183**

PAGE        4 of 5

**Our privacy notice has been updated. You can view our privacy notice by visiting our
website www.uscentury.com. If you wish to have a copy mailed to you, call 305-715-5200.**

USCB000039

# A-783

GLOBAL LEGAL CONSULTING LLC

DEPOSIT TICKET

U.S. CENTURY BANK

04/01/2019    $7,111.50

---

GLOBAL LEGAL CONSULTING LLC

DEPOSIT TICKET
4/4/19

U.S. CENTURY BANK

5400 00
5400.00

04/04/2019    $5,400.00

---

GLOBAL LEGAL CONSULTING LLC

DEPOSIT TICKET
4/12/19

U.S. CENTURY BANK

15,000 00
15000.00

04/12/2019    $15,000.00

---

GLOBAL LEGAL CONSULTING LLC

DEPOSIT TICKET
4/16/19

U.S. CENTURY BANK

7000 00
7000.00

04/16/2019    $7,000.00

---

GLOBAL LEGAL CONSULTING LLC                                    1024

DATE 4/2/19

PAY TO THE
ORDER OF    FDACS                              $ 450.00

four hundred fifty                            DOLLARS

U.S. CENTURY BANK

FOR A190005?

⑈001024⑈                                5188⑈

04/04/2019    1024    $450.00

---

GLOBAL LEGAL CONSULTING LLC                                    1027

DATE 4/11/19

PAY TO THE
ORDER OF    Maria Recio                        $ 1,500.00

One Thousand five hundred 00/100             DOLLARS

U.S. CENTURY BANK

FOR

⑈001027⑈                                5188⑈

04/12/2019    1027    $1,500.00

---

GLOBAL LEGAL CONSULTING LLC                                    1029

DATE 4/17/19

PAY TO THE
ORDER OF    JEM Solutions                      $ 10,000.00

Ten Thousand 00/100                           DOLLARS

U.S. CENTURY BANK

FOR

⑈001029⑈                                5188⑈

04/23/2019    1029    $10,000.00

---

GLOBAL LEGAL CONSULTING LLC                                    1030

DATE 2/23/19

PAY TO THE
ORDER OF    Maria Recio                        $ 250.00

two hundred fifty 00/100                      DOLLARS

U.S. CENTURY BANK

FOR

⑈001030⑈                                5188⑈

04/25/2019    1030    $250.00

---

GLOBAL LEGAL CONSULTING LLC                                    1031

DATE 4/22/19

PAY TO THE
ORDER OF    Cash                              $ 500.00

five hundred 00/100                           DOLLARS

U.S. CENTURY BANK

FOR

⑈001031⑈                                5188⑈

04/29/2019    1031    $500.00

---

GLOBAL LEGAL CONSULTING LLC                                    1032

DATE 4/29/19

PAY TO THE
ORDER OF    Maria Recio                        $ 250.00

two hundred fifty 00/100                      DOLLARS

U.S. CENTURY BANK

FOR

⑈001032⑈                                5188⑈

04/30/2019    1032    $250.00

USCB000040

**A-784**

| | | |
|---|---|---|
| | ACCOUNT NO. | ▇-518-8 |
| | STATEMENT PERIOD FROM: | 05/01/2019 |
| | TO: | 05/31/2019 |

**GLOBAL LEGAL CONSULTING LLC**
**8306 MILLS DRIVE**
**# 229**
**MIAMI, FL 33183**

PAGE    1 of 4

## TYPE OF ACCOUNT... Advantage Business Checking

| Balance Last Statement | We Have Added Number Deposits/Credits | We Have Subtracted Number Checks/Debits | Ending Balance |
|---|---|---|---|
| $ 13,695.14 | 8    $ 47,464.00 | 26    $ 31,550.55 | $ 29,608.59 |

| Items Enclosed | Minimum Balance | Average Balance | Average Available Balance |
|---|---|---|---|
| 10 | $ 1,257.58 | $ 7,322.66 | $ 6,242.37 |

### CHECKS

| CHECK NO | DATE | AMOUNT | CHECK NO | DATE | AMOUNT |
|---|---|---|---|---|---|
| 1033 | 05/01/2019 | $4,200.00 | 1037* | 05/23/2019 | $2,500.00 |
| 1034 | 05/13/2019 | $250.00 | 1038 | 05/29/2019 | $250.00 |
| 1035 | 05/17/2019 | $4,200.00 | | | |

\* - denotes missing check number in sequence

### OTHER DEBITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 05/01/2019 | $90.00 | ACH Withdrawal COMENITY PAY JT PHONE PYMT |
| 05/02/2019 | $500.00 | ACH Withdrawal CHASE CREDIT CRD EPAY |
| 05/02/2019 | $2,000.00 | ACH Withdrawal AMEX EPAYMENT ACH PMT |
| 05/02/2019 | $3,000.00 | ACH Withdrawal CITI CARD ONLINE PAYMENT |
| 05/10/2019 | $1,000.00 | EFT Debit UCBBP:TB8CZ28G:VOLKSWAGEN CREDIT |
| 05/13/2019 | $307.91 | ACH Withdrawal AMEX EPAYMENT ACH PMT |
| 05/14/2019 | $466.97 | ACH Withdrawal VZ WIRELESS VE VZW WEBPAY |
| 05/15/2019 | $217.92 | EFT Debit UCBBP:LBFCS2MI:MATTHEW BENDER & CO., INC |
| 05/20/2019 | $438.78 | ACH Withdrawal CITI CARD ONLINE PAYMENT |
| 05/20/2019 | $1,400.00 | ACH Withdrawal CAPITAL ONE MOBILE PMT |
| 05/20/2019 | $2,000.00 | ACH Withdrawal CITI CARD ONLINE PAYMENT |
| 05/20/2019 | $2,365.98 | ACH Withdrawal |

USCB000041

**A-785**

|  |  |
|---|---|
| ACCOUNT NO. | ▮▮▮-518-8 |
| STATEMENT PERIOD FROM: | 05/01/2019 |
| TO: | 05/31/2019 |

**GLOBAL LEGAL CONSULTING LLC**
**8306 MILLS DRIVE**
**# 229**
**MIAMI, FL  33183**

PAGE       2 of 4

## OTHER DEBITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
|  |  | CHASE CREDIT CRD EPAY |
| 05/22/2019 | $2,000.00 | ACH Withdrawal |
|  |  | CHASE CREDIT CRD EPAY |
| 05/28/2019 | $28.53 | ACH Withdrawal |
|  |  | INTUIT PYMT SOLN TRAN FEE |
| 05/30/2019 | $10.99 | ACH Withdrawal |
|  |  | AMEX EPAYMENT ACH PMT |
| 05/30/2019 | $57.68 | ACH Withdrawal |
|  |  | AMEX EPAYMENT ACH PMT |
| 05/30/2019 | $1,000.00 | ACH Withdrawal |
|  |  | CHASE CREDIT CRD EPAY |
| 05/31/2019 | $73.62 | ACH Withdrawal |
|  |  | CAPITAL ONE MOBILE PMT |
| 05/31/2019 | $88.38 | ACH Withdrawal |
|  |  | CITI CARD ONLINE PAYMENT |
| 05/31/2019 | $103.79 | ACH Withdrawal |
|  |  | CITI CARD ONLINE PAYMENT |
| 05/31/2019 | $3,000.00 | ACH Withdrawal |
|  |  | CHASE CREDIT CRD EPAY |

## DEPOSITS

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 05/01/2019 | $2,000.00 | 05/21/2019 | $4,000.00 | 05/30/2019 | $23,989.00 |
| 05/10/2019 | $2,000.00 | 05/28/2019 | $1,500.00 |  |  |

## OTHER CREDITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 05/15/2019 | $6,500.00 | ACH Deposit |
|  |  | US CENTURY BANK P2PBILLPAY |
|  |  | ID: D MACEY GLOBAL LEGAL CONSULTIN |
|  |  | Trace Number: 051400504210541 |
| 05/28/2019 | $975.00 | ACH Deposit |
|  |  | INTUIT PYMT SOLN DEPOSIT |
| 05/30/2019 | $6,500.00 | ACH Deposit |
|  |  | US CENTURY BANK P2PBILLPAY |
|  |  | ID: D MACEY GLOBAL LEGAL CONSULTIN |
|  |  | Trace Number: 051400500490390 |

## DAILY BALANCE INFORMATION

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 04/30/2019 | 13,695.14 | 05/02/2019 | 5,905.14 | 05/13/2019 | 6,347.23 |
| 05/01/2019 | 11,405.14 | 05/10/2019 | 6,905.14 | 05/14/2019 | 5,880.26 |

USCB000042

# A-786

ACCOUNT NO. ▮▮▮▮-518-8
STATEMENT PERIOD FROM: **05/01/2019**
TO: **05/31/2019**

**GLOBAL LEGAL CONSULTING LLC**
**8306 MILLS DRIVE**
**# 229**
**MIAMI, FL  33183**

PAGE       3 of 4

## DAILY BALANCE INFORMATION

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 05/15/2019 | 12,162.34 | 05/22/2019 | 3,757.58 | 05/30/2019 | 32,874.38 |
| 05/17/2019 | 7,962.34 | 05/23/2019 | 1,257.58 | 05/31/2019 | 29,608.59 |
| 05/20/2019 | 1,757.58 | 05/28/2019 | 3,704.05 | | |
| 05/21/2019 | 5,757.58 | 05/29/2019 | 3,454.05 | | |

**Our privacy notice has been updated. You can view our privacy notice by visiting our**
**website www.uscentury.com. If you wish to have a copy mailed to you, call 305-715-5200.**

# A-787

Account: ████5188
Page: 4 of 4



GLOBAL LEGAL CONSULTING LLC
5500 MILLS DRIVE # 209
MIAMI, FL 33183

DEPOSIT TICKET

U.S. CENTURY BANK

$2,000 C0

$ 2,000.00

05/01/2019 $2,000.00

---

1034
GLOBAL LEGAL CONSULTING LLC
5500 MILLS DRIVE # 209
MIAMI, FL 33183
DATE 5/12/19
PAY TO THE ORDER OF Maria Recio        $ 250.00
two hundred fifty 00/100        DOLLARS
U.S. CENTURY BANK
FOR
#001034#        5188#

05/13/2019   1034   $250.00

---

U.S. CENTURY BANK
DEPOSIT TICKET
For Global Legal Consulting
Date 5-10-19
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

5188   $ 2000.00

05/10/2019   $2,000.00

---

1035
GLOBAL LEGAL CONSULTING LLC
5500 MILLS DRIVE # 209
MIAMI, FL 33183
DATE 5/15/19
PAY TO THE ORDER OF Manuel Recio        $ 4,200
Four thousand two hundred 00/100        DOLLARS
U.S. CENTURY BANK
FOR
#001035#        5188#

05/17/2019   1035   $4,200.00

---

U.S. CENTURY BANK
DEPOSIT TICKET
For
Date 5/21/19
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

5188   $ 4000.00

05/21/2019   $4,000.00

---

1037
GLOBAL LEGAL CONSULTING LLC
5500 MILLS DRIVE # 209
MIAMI, FL 33183
DATE 5/20/19
PAY TO THE ORDER OF Manuel Recio        $ 2,500.00
Two Thousand five hundred 00/100        DOLLARS
U.S. CENTURY BANK
FOR
#001037#        5188#

05/23/2019   1037   $2,500.00

---

U.S. CENTURY BANK
DEPOSIT TICKET
For Global legal consulting
Date
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

5188   $ 1500.00

05/28/2019   $1,500.00

---

1038
GLOBAL LEGAL CONSULTING LLC
5500 MILLS DRIVE # 209
MIAMI, FL 33183
DATE 5/28/19
PAY TO THE ORDER OF Maria Recio        $ 250.00
two hundred fifty 00/100        DOLLARS
U.S. CENTURY BANK
FOR
#001038#        5188#

05/29/2019   1038   $250.00

---

U.S. CENTURY BANK
DEPOSIT TICKET
For Global Legal consulting
Date 5/30/19
DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

5188   $ 23,989.00

05/30/2019   $23,989.00

---

1033
GLOBAL LEGAL CONSULTING LLC
5500 MILLS DRIVE # 209
MIAMI, FL 33183
DATE 5/20/19
PAY TO THE ORDER OF Manuel Recio        $ 4,200.00
Four thousand two hundred 00/100        DOLLARS
U.S. CENTURY BANK
FOR 2nd April
#001033#        5188#

05/01/2019   1033   $4,200.00

## Electronic Articles of Organization
### For
## Florida Limited Liability Company

L18000236522
FILED 8:00 AM
October 05, 2018
Sec. Of State
crico

### Article I

The name of the Limited Liability Company is:

GLOBAL LEGAL CONSULTING LLC

### Article II

The street address of the principal office of the Limited Liability Company is:

8306 MILLS DRIVE
#229
MIAMI, FL. US  33183

The mailing address of the Limited Liability Company is:

8306 MILLS DRIVE
#229
MIAMI, FL. US  33183

### Article III

Other provisions, if any:

THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE
IN ANY LAWFUL ACTIVITY FOR WHICH A LIMITED LIABILITY
COMPANY MAY BE ORGANIZED IN THIS STATE.

### Article IV

The name and Florida street address of the registered agent is:

MANUEL A RECIO
8306 MILLS DRIVE
#229
MIAMI, FL.  33183

Having been named as registered agent and to accept service of process for the above stated limited
liability company at the place designated in this certificate, I hereby accept the appointment as registered
agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes
relating to the proper and complete performance of my duties, and I am familiar with and accept the
obligations of my position as registered agent.

Registered Agent Signature:  MANUEL A. RECIO

**GOVERNMENT
EXHIBIT
440A**
22 Cr. 281 (JPO)

## Article V

The name and address of person(s) authorized to manage LLC:

Title: MGR
MANUEL A RECIO
8306 MILLS DRIVE, #229
MIAMI, FL. 33183

**L18000236522**
**FILED 8:00 AM**
**October 05, 2018**
**Sec. Of State**
crico

## Article VI

The effective date for this Limited Liability Company shall be:

10/01/2018

Signature of member or an authorized representative

Electronic Signature: MANUEL A. RECIO

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true. I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

USCB000013

**Account: [redacted]5188**
**Page: 3 of 3**

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183

DEPOSIT TICKET
DATE 11/13/2018
CURRENCY ▸
COIN ▸
CHECKS ▸ 5000 00
TOTAL FROM OTHER SIDE ▸
$ 5000.00
U.S. CENTURY BANK

[redacted]5188 11

11/13/2018 $5,000.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183

DEPOSIT TICKET
DATE 11/19/18
CURRENCY ▸ 2000 00
COIN ▸
CHECKS ▸
TOTAL FROM OTHER SIDE ▸
$ 2000.00
U.S. CENTURY BANK

[redacted]5188 11

11/20/2018 $2,000.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183

DEPOSIT TICKET
DATE 11/26/2018
CURRENCY ▸ 1500 00
COIN ▸
CHECKS ▸ 3500 00
TOTAL FROM OTHER SIDE ▸
$ 5000.00
U.S. CENTURY BANK

[redacted]5188 11

11/27/2018 $5,000.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1001

DATE 11/14/18
PAY TO THE ORDER OF Ebco International of Miami $ 2,500.00
two thousand five hundred 00/100 DOLLARS
U.S. CENTURY BANK
FOR Invoice # 421

⑈001001⑈ [redacted]5188

11/19/2018 1001 $2,500.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1002

DATE 11/19/2018
PAY TO THE ORDER OF Manuel Recio $ 1,000.00
One thousand 00/100 DOLLARS
U.S. CENTURY BANK
FOR

⑈001002⑈ [redacted]5188

11/20/2018 1002 $1,000.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1003

DATE 11/26/18
PAY TO THE ORDER OF Cash $ 1,500.00
One thousand five hundred 00/100 DOLLARS
U.S. CENTURY BANK
FOR

⑈001003⑈ [redacted]5188

11/26/2018 1003 $1,500.00

GOVERNMENT EXHIBIT 440C
22 Cr. 281 (JPO)

USCB000020

**Account: [redacted]5188**
**Page: 5 of 5**

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183

DEPOSIT TICKET

CURRENCY 4800 00
CHECKS 2311 50
$ 7111.50

U.S. CENTURY BANK

[redacted]5188

04/01/2019 $7,111.50

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1029

DATE 4/17/19

PAY TO THE ORDER OF JEM Solutions $ 10,000.00
ten thousand 00/100 DOLLARS

U.S. CENTURY BANK

FOR

⑈001029⑈ [redacted]5188

04/23/2019 1029 $10,000.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183

DEPOSIT TICKET
DATE 4/4/19

CHECKS 5400 00
$ 5400.00

U.S. CENTURY BANK

[redacted]5188

04/04/2019 $5,400.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1030

DATE 4/23/19

PAY TO THE ORDER OF Maria Recio $ 250.00
two hundred fifty 00/100 DOLLARS

U.S. CENTURY BANK

FOR

⑈001030⑈ [redacted]5188

04/25/2019 1030 $250.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183

DEPOSIT TICKET
DATE 4/12/19

CHECKS 15,000 00
$ 15000.00

U.S. CENTURY BANK

[redacted]5188

04/12/2019 $15,000.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1031

DATE 4/28/19

PAY TO THE ORDER OF Cash $ 500.00
five hundred 00/100 DOLLARS

U.S. CENTURY BANK

FOR

⑈001031⑈ [redacted]5188

04/29/2019 1031 $500.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183

DEPOSIT TICKET
DATE 4/16/19

CHECKS 7000 00
$ 7000.00

U.S. CENTURY BANK

[redacted]5188

04/16/2019 $7,000.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1032

DATE 4/29/19

PAY TO THE ORDER OF Maria Recio $ 250.00
two hundred fifty 00/100 DOLLARS

U.S. CENTURY BANK

FOR

⑈001032⑈ [redacted]5188

04/30/2019 1032 $250.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1024

DATE 4/2/19

PAY TO THE ORDER OF FDACS $ 450.00
four hundred fifty DOLLARS

U.S. CENTURY BANK

FOR A1900057

⑈001024⑈ [redacted]5188

04/04/2019 1024 $450.00

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1027

DATE 4/11/19

PAY TO THE ORDER OF Maria Recio $ 1,500.00
One thousand five hundred 00/100 DOLLARS

U.S. CENTURY BANK

FOR

⑈001027⑈ [redacted]5188

04/12/2019 1027 $1,500.00

GOVERNMENT EXHIBIT
440D
22 Cr. 281 (JPO)

# US Century Bank

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1035
DATE 5/15/19
PAY TO THE ORDER OF Manuel Recio $ 4,200
four thousand two hundred 00/100 DOLLARS
U.S. CENTURY BANK
FOR
⑈001035⑈ ⑆[redacted]5188⑈

05/17/2019 1035 $4,200.00
5255176994709

Security Features exceed industry standards and include: ORIGINAL DOCUMENT — Chemical Wash Detection Box — COLOR INSIDE THIS BOX SHOULD BE WHITE — CHECK HERE IF MOBILE DEPOSIT

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1039
DATE 5/31/19
PAY TO THE ORDER OF Manuel Recio $ 4,200
four thousand two hundred 00/100 DOLLARS
U.S. CENTURY BANK
FOR
⑈001039⑈ ⑆[redacted]5188⑈

06/03/2019 1039 $4,200.00
5255177027859

ORIGINAL DOCUMENT — Chemical Wash Detection Box — COLOR INSIDE THIS BOX SHOULD BE WHITE — CHECK HERE IF MOBILE DEPOSIT

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1037
DATE 5/20/19
PAY TO THE ORDER OF Manuel Recio $ 2,500.00
two thousand five hundred 00/100 DOLLARS
U.S. CENTURY BANK
FOR
⑈001037⑈ ⑆[redacted]5188⑈

05/23/2019 1037 $2,500.00
5255177008842

ORIGINAL DOCUMENT — Chemical Wash Detection Box — COLOR INSIDE THIS BOX SHOULD BE WHITE — CHECK HERE IF MOBILE DEPOSIT

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1040
DATE 6/3/19
PAY TO THE ORDER OF Maria Recio $ 250.00
two hundred fifty 00/100 DOLLARS
U.S. CENTURY BANK
FOR
⑈001040⑈ ⑆[redacted]5188⑈

06/04/2019 1040 $250.00
5255177033946

ORIGINAL DOCUMENT — Maria A. Recio

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1038
DATE 5/28/19
PAY TO THE ORDER OF MARIA Recio $ 250.00
two hundred fifty 00/100 DOLLARS
U.S. CENTURY BANK
FOR
⑈001038⑈ ⑆[redacted]5188⑈

05/29/2019 1038 $250.00
5255177018251

ORIGINAL DOCUMENT — Maria Recio

GLOBAL LEGAL CONSULTING LLC
8306 MILLS DRIVE # 229
MIAMI, FL 33183
1041
DATE 6/3/19
PAY TO THE ORDER OF JGM Solutions $ 10,750.00
ten thousand seven hundred fifty 00/100 DOLLARS
U.S. CENTURY BANK
FOR INVOICE # 102
⑈001041⑈ ⑆[redacted]5188⑈

06/06/2019 1041 $10,750.00
5255177041689

GOVERNMENT EXHIBIT 440E
22 Cr. 281 (JPO)

USCB000058

NC2812 - 2-part  •  NC3812 - 3-part           adams·          carbonless invoice

JEM SOLUTIONS INC

INVOICE NO. *1 01*

**Invoice**

INVOICE DATE *4/17/19*

CUSTOMER ORDER NUMBER

SOLD TO: MANNY RECIO

SHIP TO:

| SALESPERSON | SHIPPED VIA | TERMS | F.O.B. |
|---|---|---|---|
| | | | |

| QTY ORDERED | QTY SHIPPED | DESCRIPTION | UNIT | AMOUNT |
|---|---|---|---|---|
| 4-17-19 | | INVESTMENT OF RISK MANAGEMENT COMPANY | | 10,000 — |
| | | | | |

**GOVERNMENT EXHIBIT 503**
22 Cr. 281 (JPO)

NC2812 - 2-part  •  NC3812 - 3-part           adams          carbonless invoice

JEM SOLUTIONS INC

| | |
|---|---|
| INVOICE NO. | 102 |
| INVOICE DATE | 6/3/19 |
| CUSTOMER ORDER NUMBER | |

**Invoice**

| SOLD TO: MANNY RECIO | SHIP TO: |
|---|---|

| SALESPERSON | SHIPPED VIA | TERMS | F.O.B. |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| QTY ORDERED | QTY SHIPPED | DESCRIPTION | UNIT | AMOUNT |
|---|---|---|---|---|
| 6/3/19 | | SERVICES FOR JOHNNY GROBMAN CASE | | 10,750 — |

**GOVERNMENT EXHIBIT 504**
22 Cr. 281 (JPO)



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 22, 2023

**VIA EMAIL & HAND DELIVERY**
ATTN: Custodian of Records
Global Legal Consulting LLC
8306 Mills Drive
#229
Miami, FL 33183

      Re:    Grand Jury Subpoena

To whom it may concern:

      Please be advised that the accompanying grand jury subpoena has been issued in connection with an official criminal investigation of a suspected felony being conducted by a federal grand jury. The Government hereby requests that you voluntarily refrain from disclosing the existence of the subpoena to any third party. While you are under no obligation to comply with our request, we are requesting you not to make any disclosure in order to preserve the confidentiality of the investigation and because disclosure of the existence of this investigation might interfere with and impede the investigation.

      **If you intend to disclose the existence of this subpoena to a third party, please let me know before making any such disclosure.**

      Thank you for your cooperation in this matter.

      Sincerely,

      DAMIAN WILLIAMS
      United States Attorney
      Southern District of New York

By: _____
      Sarah Mortazavi
      Assistant United States Attorney
      Southern District of New York
      212-637-2520

GOVERNMENT
EXHIBIT
520
22 Cr. 281 (JPO)

Grand Jury Subpoena

# United States District Court
## SOUTHERN DISTRICT OF NEW YORK

TO:    ATTN: Custodian of Records
        Global Legal Consulting LLC
        8306 Mills Drive
        Miami, FL 33183

GREETINGS:

WE COMMAND YOU that all and singular business and excuses being laid aside, you appear and attend before the GRAND JURY of the people of the United States for the Southern District of New York, at the United States Courthouse, 40 Foley Square, Room 220, in the Borough of Manhattan, City of New York, New York, in the Southern District of New York, at the following date, time and place:

Appearance Date:    March 7, 2023        Appearance Time:   10:00 a.m.

to testify and give evidence in regard to alleged violations of:

        Title 18, United States Code, Sections 3, 201, 371, 1512, and 1956

and not to depart the Grand Jury without leave thereof, or of the United States Attorney, and that you bring with you and produce at the above time and place the following:

### PLEASE SEE ATTACHED RIDER

**PERSONAL APPEARANCE IS REQUIRED UNLESS EXCUSED BY THE UNITED STATES ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK. PLEASE SEE THE ATTACHED RIDER.**

DATED:    New York, New York
          February 22, 2023

*Damian Williams* 18 SM

**DAMIAN WILLIAMS**
*United States Attorney for the*
*Southern District of New York*

Sarah Mortazavi
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007

**RIDER**
**(Grand Jury Subpoena to Global Legal Consulting LLC, USAO reference No. 2018R01437)**

<u>**Instructions and Definitions:**</u>

- This subpoena calls for the production of certain documents and communications (as defined below) in your possession, custody, or control.

- This subpoena covers all responsive documents wherever they may be found, including on computers, email accounts, iCloud accounts, servers, cellphones, and other personal electronic devices.

- "Documents" refers to any and all documents and records, in whatever form kept, including, but not limited to, writings, emails, text messages, messages sent through "apps" or social media accounts, drawings, graphs, charts, calendar entries, photographs, audio or visual recordings, images, and other data or data compilations, and includes materials on both paper and electronic form.

- "Concerning or regarding" means related to in any way.

- Where possible, please produce the records requested herein in electronic form (native format where necessary to view the material in its full scope) in a manner that is OCR-searchable, and with all available electronic metadata.

- This subpoena <u>does not</u> call for the production of any documents protected by a valid claim of privilege, although any responsive document over which privilege is being asserted must be preserved. Any documents withheld on grounds of privilege must be specifically identified on a privilege log with descriptions sufficient to identify their dates, authors, recipients, and general subject matter.

## <u>MATERIALS TO BE PRODUCED</u>

Please provide all non-privileged records and communications in the possession, custody or control of Global Legal Consulting LLC (the "Company") or any president, principal, employee, contractor, agent, or associate of the Firm ("Company Members"), in the following categories:

1. Documents sufficient to reflect the Company's document retention policy between October 2018 to the present.

2. Documents sufficient to identify the dates, times, and means of communication between any Company Member and the Specified Individuals listed below in Request Number 9 for the time period between October 2018 to the present, including but not limited to dates of phone conversations, text messages, WhatsApp chat messages, Signal chat messages, and in-person meetings.

3. Any and all documents, including but not limited to correspondence, tickets, ticket information, copies of passports indicating travel stamps, reflecting international or domestic travel by any Company Member from October 2018 to January 1, 2021.

4.  Documents sufficient to identify all bank accounts used or controlled by the Company and/or Manuel Recio between October 2018 to the present. This includes all accounts used to send and/or receive, and hold, funds in connection with the work of the Company, including but not limited to bank accounts held in the name of the Company or any Company Members, and all accounts used by Manuel Recio in his personal capacity.

5.  Any and all communications between any Company Member and Drug Enforcement Administration ("DEA") Special Agent John Costanzo, Jr. between November 10, 2018 to the present, including communications sent to one or more third parties and meant to be forwarded to Agent Costanzo and communications forwarded from one or more third parties that originated with Agent Costanzo.

6.  Documents sufficient to identify the names and contact information of all Company Members employed by the Company between October 2018 to the present.

7.  Any and all agreements, contracts, or retention letters between the Company and/or any Company Members and: (i) David Macey; (ii) David W. Macey P.A.; (iii) Luis Guerra; (iv) The Guerra Law Firm, P.A.; (v) Edwin Pagan III; (vi) JEM Solutions Inc.; (vii) John Costanzo Sr.; (viii) Ebco International of Miami, Inc.; and/or (ix) any other law firm, including but not limited to any executed Kovel agreements.

8.  Documents sufficient to identify the identities and contact information for any clients of the Company.

9.  Correspondence with or concerning any of the following individuals (the "Specified Individuals"), including but not limited to retention letters and/or agreements and billing invoices relevant to services the Company provided:

    a.  Adrian Manyoma
    b.  Adriana Maribel Ortega
    c.  Ahmad Gebara
    d.  Aler Baldomero Samayoa Recinos
    e.  Alirio Trujillo
    f.  Allesandro Bazzoni
    g.  Antonino Butachi
    h.  Antonio Muschella Venezolano
    i.  Antonio Obando
    j.  Ayudelo
    k.  Beatriz Lopez
    l.  Beatriz Hurtado
    m.  Bilal Gebara
    n.  Carlos Arturo Salazar Benvides
    o.  Carlos Julio Ramirez Montoya
    p.  Cesar E. Peralta
    q.  Chacon
    r.  Dalbelto Rincon
    s.  Daniel Escobar
    t.  Dario
    u.  Dario Alonso Gomez Rivera

| | |
|---|---|
| v. | Diana Molina |
| w. | Don Niko |
| x. | Dubias a/k/a Dublas Enrique Arbelaez-Alvarez |
| y. | Edgar Marval |
| z. | Edward Goucher |
| aa. | Edwin Benigno Barrera Salguero |
| bb. | Edwin Jose Rincon |
| cc. | Edwin Molina |
| dd. | Enrique Portocarrero Castillo |
| ee. | Esteban Samayoa |
| ff. | Fernando Guatemala |
| gg. | Fernando Londono Quiza |
| hh. | Francisco Ameliach |
| ii. | Francisco d'Agostino |
| jj. | German Alfredo Cortez Melgar |
| kk. | Gilberto Hernandez |
| ll. | Gordon (Last Name Unknown) |
| mm. | Guillermo Fuentes |
| nn. | Hader Cuero-Valencia |
| oo. | Hector Antonio Villar-Sierra |
| pp. | Hector Nunez Troyano |
| qq. | Hernan Gonzales Suarez |
| rr. | Hugo Enrique Sanes Saavedra |
| ss. | Isabel Gonzales-Lopez |
| tt. | Jason Jesus Palacio Gomez |
| uu. | Jerson Triana |
| vv. | Jennifer Colorado Alba |
| ww. | Jesus Alirio Trujillo Alvarez |
| xx. | Jesus Ricardo Patron Sanchez |
| yy. | Jesus Veroes |
| zz. | Jeyson Jeovany Forbes Porter |
| aaa. | Jorge Arango a/k/a Pelusa |
| bbb. | Jorge Eliecer Arango Cordona |
| ccc. | Jorge Mayorga-Flores |
| ddd. | Jose Abad Heredia Prado |
| eee. | Jose Fernando Orozco |
| fff. | José Geidin Castro Chillambo |
| ggg. | Jose Rafael Sosa-Mendez |
| hhh. | Juan Carlos Rios |
| iii. | Juan de Jesus Rincon Rojas |
| jjj. | Juan Jose Santisteban Gomez |
| kkk. | Kiki Jaramillo |
| lll. | Ligio a/k/a Liglo Giraldo Belalcazar |
| mmm. | Luis Fernando Agudelo Lloreda |
| nnn. | Marco Antonio Flores Moreno |
| ooo. | Maria Gabriela Pineda Penaloza |
| ppp. | Maria Juliana |
| qqq. | Mario Julio Rivero |
| rrr. | Marla Karamedin |
| sss. | Marlon Geovanni Canelas Rodriguez |

| | |
|---|---|
| ttt. | Martin Avendano |
| uuu. | Martin Bala |
| vvv. | Mario Antonio Rodriguez Espinoza |
| www. | Matias Alvarez Tabares |
| xxx. | Mauro Alexander Ariza |
| yyy. | Michael Jerson Chavez Fino |
| zzz. | Miguel Mejia Munera |
| aaaa. | Minota |
| bbbb. | Mueble |
| cccc. | Nate Clemon Trujillo |
| dddd. | Nini Usuga |
| eeee. | Normas Castillo |
| ffff. | Paola Tapiero Portilla |
| gggg. | Pedro Antonio Becerra Cardenas |
| hhhh. | Rafael Enrique Noguera Avello |
| iiii. | Ramon Antonio Del Rosario Puentes |
| jjjj. | Rony Alejander Caballero Martinez |
| kkkk. | Ruben Dario Torres |
| llll. | Santiago Diaz Medina |
| mmmm. | Victor Eduardo Lopez Cuellar |
| nnnn. | Villota |
| oooo. | Waldir Edu Sanchez Llamosa |
| pppp. | Walter Alexander del Nogal Marquez |
| qqqq. | Walter Arizala Vernaza |
| rrrr. | Washington Perlaza Orobio |
| ssss. | Wilfredo Querales Mendoza |
| tttt. | Wilson Andres Crespo Zapata |
| uuuu. | Yair Caicedo Quinonez |

**Please provide records in electronic format if possible.**

Please forward the above-requested information to:

United States Attorney's Office
Southern District of New York
ATTN: Sheb Swett
1 Saint Andrews Plaza
New York, NY 10007
sebastian.swett@usdoj.gov

## Declaration of Custodian of Records

Pursuant to 28 U.S.C. § 1746, I, the undersigned, hereby declare:

My name is ___Manuel Recio___.
(name of declarant)

I am a United States citizen and I am over eighteen years of age. I am the custodian of records of the business named below, or I am otherwise qualified as a result of my position with the business named below to make this declaration.

I am in receipt of a Grand Jury Subpoena, dated February 22, 2023 and signed by Assistant United States Attorney Sarah Mortazavi, requesting specified records of the individual named below. Pursuant to Rules 902(11) and 803(6) of the Federal Rules of Evidence, I hereby certify that the records provided herewith and in response to the Subpoena:

(1) were made at or near the time of the occurrence of the matters set forth in the records, by, or from information transmitted by, a person with knowledge of those matters;

(2) were kept in the course of regularly conducted business activity; and

(3) were made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___7/20/2023___.
(date)

_____
(signature of declarant)

___Manuel Recio___
(name and title of declarant)

___Global Legal Consulting___
(name of business)

___8306 Mills Drive #209___
(business address)

___Miami, Fl 33183___

Definitions of terms used above:
As defined in Fed. R. Evid. 803(6), "record" includes a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses. The term "business" as used in Fed. R. Evid. 803(6) and the above declaration includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

A-802

Court Subpoena

# United States District Court
## SOUTHERN DISTRICT OF NEW YORK

TO:    ATTN: Custodian of Records
Global Legal Consulting LLC
8306 Mills Drive
#229
Miami, FL 33183

GREETINGS:

WE COMMAND YOU that all and singular business and excuses being laid aside, you appear and attend before the United States District Court for the Southern District of New York, 40 Foley Square, in the Borough of Manhattan, City of New York, New York, in the Southern District of New York, at the following date, time and place:

Appearance Date:    October 23, 2023        Appearance Time:  9:00 a.m.
Appearance Place:    Courtroom 706
to testify and give evidence in the following matter:

**United States v. John Costanzo Jr. and Manuel Recio, 22 Cr. 281 (JPO)**

and not to depart the Court without leave thereof, or of the United States Attorney.

### PLEASE SEE ATTACHED RIDER.

N.B.:   Personal appearance may not be required if the requested documents are: (1) produced on or before the appearance date to Special Agent John Hubbard, Federal Bureau of Investigation, New York Office, 26 Federal Plaza, New York, NY 10278, telephone: 646-265-9411, email address: jwhubbard@fbi.gov; and (2) accompanied by an executed copy of the attached Declaration of Custodian of Records.

Failure to attend and produce any items hereby demanded will constitute contempt of court and will subject you to civil sanctions and criminal penalties, in addition to other penalties of the Law.

DATED:  New York, New York
        August 28, 2023

/s/
DAMIAN WILLIAMS
*United States Attorney for the*
*Southern District of New York*

/s/
Mathew Andrews
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Telephone:   212-637-6526
Email: mathew.andrews@usdoj.gov



GOVERNMENT
EXHIBIT
528
22 Cr. 281 (JPO)

**A-803**

**RIDER**

(Trial Subpoena to Global Legal Consulting LLC, dated August 28, 2023)

Ref. No. 22 Cr. 281 (JPO)

**Instructions and Definitions:**

- This subpoena calls for the production of certain documents and communications (as defined below) in your possession, custody, or control.

- This subpoena covers all responsive documents wherever they may be found, including on computers, email accounts, iCloud accounts, servers, cellphones, and other personal electronic devices.

- "Documents" refers to any and all documents and records, in whatever form kept, including, but not limited to, writings, emails, text messages, messages sent through "apps" or social media accounts, drawings, graphs, charts, calendar entries, photographs, audio or visual recordings, images, and other data or data compilations, and includes materials on both paper and electronic form.

- "Concerning or regarding" means related to in any way.

- Where possible, please produce the records requested herein in electronic form (native format where necessary to view the material in its full scope) in a manner that is OCR-searchable, and with all available electronic metadata.

- This subpoena <u>does not</u> call for the production of any documents protected by a valid claim of privilege, although any responsive document over which privilege is being asserted must be preserved. Any documents withheld on grounds of privilege must be specifically identified on a privilege log with descriptions sufficient to identify their dates, authors, recipients, and general subject matter.

**Materials to be Produced:**

- All documents, communications, or other records related to the November 12, 2018 invoice attached hereto as Exhibit A.

- All documents, communications, or other records related to the April 17, 2019 invoice attached hereto as Exhibit B.

- All documents, communications, or other records related to the June 3, 2019 invoice attached hereto as Exhibit C.

Exhibit A

**A-805**

EBCO International of Miami
P.O. Box 331633
Coconut Grove, FL 33233

# Invoice

| Bill To |
|---|
| Global Legal Consulting |
| Manuel A Recio |
| 8306 Mills Dr 229 |
| Miami,FL 33183 |

| Date | Invoice No. | P.O. Number | Terms | Project |
|---|---|---|---|---|
| 11/12/18 | 421 | | Due on receipt | |

| Item | Description | Quantity | Rate | Amount |
|---|---|---|---|---|
| Investigation | Investigative services | | 2,500.00 | 2,500.00 |

Please remit to EBCO International of Miami, Inc. PO Box 331633, Coconut Grove, FL 33233

| | |
|---|---|
| Subtotal | $2,500.00 |
| Sales Tax | $0.00 |
| Total | $2,500.00 |

SDNY_0155185_R

# Exhibit B

NC2812 - 2-part  •  NC3812 - 3-part  adams  carbonless invoice

JEM SOLUTIONS INC

| | |
|---|---|
| INVOICE NO. | *1 01* |
| INVOICE DATE | 4/17/19 |
| CUSTOMER ORDER NUMBER | |

**Invoice**

| SOLD TO: MANNY RECIO | SHIP TO: |
|---|---|

| SALESPERSON | SHIPPED VIA | TERMS | F.O.B. |
|---|---|---|---|

| QTY ORDERED | QTY SHIPPED | DESCRIPTION | UNIT | AMOUNT |
|---|---|---|---|---|
| 4-17-19 | | INVESTMENT OF RISK MANAGEMENT COMPANY | | 10,000 — |

Exhibit C

NC2812 - 2-part • NC3812 - 3-part    adams   carbonless invoice

JEM SOLUTIONS INC

INVOICE NO.   102

**Invoice**

INVOICE DATE   6/3/19

CUSTOMER ORDER NUMBER

SOLD TO: MANNY RECIO

SHIP TO:

| SALESPERSON | SHIPPED VIA | TERMS | F.O.B. |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| QTY ORDERED | QTY SHIPPED | DESCRIPTION | UNIT | AMOUNT |
|---|---|---|---|---|
| 6/3/19 | | SERVICES FOR JOHNNY GROBMAN CASE | | 10,750 — |

**A-810**

Declaration of Custodian of Records

Pursuant to 28 U.S.C. § 1746, I, the undersigned, hereby declare:

My name is _____.
                                    (name of declarant)

I am a United States citizen and I am over eighteen years of age. I am the custodian of records of the business named below, or I am otherwise qualified as a result of my position with the business named below to make this declaration.

I am in receipt of a Trial Subpoena, dated August 28, 2023, and signed by Assistant United States Attorney Mathew Andrews, requesting specified records of the business named below. Pursuant to Rules 902(11) and 803(6) of the Federal Rules of Evidence, I hereby certify that the records provided herewith and in response to the Subpoena:

(1) were made at or near the time of the occurrence of the matters set forth in the records, by, or from information transmitted by, a person with knowledge of those matters;

(2) were kept in the course of regularly conducted business activity; and

(3) were made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____.
                          (date)

_____
(signature of declarant)

_____
(name and title of declarant)

_____
(name of business)

_____
(business address)

Definitions of terms used above:
As defined in Fed. R. Evid. 803(6), "record" includes a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses. The term, "business" as used in Fed. R.

Evid. 803(6) and the above declaration includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

### Declaration of Custodian of Records

Pursuant to 28 U.S.C. § 1746, I, the undersigned, hereby declare:

My name is ___Manuel Recio_____.
             (name of declarant)

    I am a United States citizen and I am over eighteen years of age. I am the custodian of records of the business named below, or I am otherwise qualified as a result of my position with the business named below to make this declaration.

    I am in receipt of a Trial Subpoena, dated August 28, 2023, and signed by Assistant United States Attorney Mathew Andrews, requesting specified records of the business named below. Pursuant to Rules 902(11) and 803(6) of the Federal Rules of Evidence, I hereby certify that the records provided herewith and in response to the Subpoena:

    (1) were made at or near the time of the occurrence of the matters set forth in the records, by, or from information transmitted by, a person with knowledge of those matters;

    (2) were kept in the course of regularly conducted business activity; and

    (3) were made by the regularly conducted business activity as a regular practice.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___October 23, 2023_____.
           (date)

_____
(signature of declarant)

Custodian of Records_____
(name and title of declarant)

Global Legal Consulting, LLC_____
(name of business)

8306 Mills Dive, #229, Miami, FL 33183_____
(business address)

Definitions of terms used above:
As defined in Fed. R. Evid. 803(6), "record" includes a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses. The term, "business" as used in Fed. R. Evid. 803(6) and the above declaration includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**GOVERNMENT
EXHIBIT
530**
22 Cr. 281 (JPO)

# Documents Responsive to Request #1:

All documents, communications, or other records related to the November 12, 2018 invoice.

**A-814**

EBCO International of Miami
P.O. Box 331633
Coconut Grove, FL 33233

# Invoice

| Bill To |
|---|
| Global Legal Consulting |
| Manuel A Recio |
| 8306 Mills Dr 229 |
| Miami,FL 33183 |

| Date | Invoice No. | P.O. Number | Terms | Project |
|---|---|---|---|---|
| 11/12/18 | 421 | | Due on receipt | |

| Item | Description | Quantity | Rate | Amount |
|---|---|---|---|---|
| Investigation | Investigative services | | 2,500.00 | 2,500.00 |

Please remit to EBCO International of Miami, Inc. PO Box 331633, Coconut Grove, FL 33233

| | |
|---|---|
| Subtotal | $2,500.00 |
| Sales Tax | $0.00 |
| Total | $2,500.00 |

# A-815

Account: � 5188



**GLOBAL LEGAL CONSULTING LLC**

1001

DATE 11/14/18

PAY TO THE ORDER OF *Ebco International of Miami* | $ 2,500.00

*two thousand five hundred* 00/100 DOLLARS

U.S. CENTURY BANK

FOR *Invoice # 421*

⑆001001⑆ ▇ 5188⑆

11/19/2018   1001   $2,500.00

USCB000020

**Local User <00008020-001C54E90250003A_files_full.zip>** 11/14/2018 8:49:47 PM

Thanks

**Local User <00008020-001C54E90250003A_files_full.zip>** 11/15/2018 3:29:31 PM

John can u run Moreno and USA D&D

**Johnny Costanzo (+17862712480)** 11/15/2018 3:29:49 PM

Yeah

**Local User <00008020-001C54E90250003A_files_full.zip>** 11/15/2018 3:30:42 PM

I'm sure Edgar Marval is in some investigation

**Johnny Costanzo (+17862712480)** 11/15/2018 6:42:26 PM

▮▮▮▮▮▮▮

**Johnny Costanzo (+17862712480)** 11/15/2018 7:10:08 PM

Aqui

**Johnny Costanzo (+17862712480)** 11/15/2018 7:24:53 PM



https://www.delvepoint.com/

**Johnny Costanzo (+17862712480)**                    11/15/2018 7:44:33 PM

Arbelardo delaespreilla

**Local User <00008020-001C54E90250003A_files_full.zip>** 11/16 /2018 2:23:12 AM

Call me when you're free

**Local User <00008020-001C54E90250003A_files_full.zip>** 11/18 /2018 7:39:35 PM

Find out if Lui wants to meet later

**Johnny Costanzo (+17862712480)**                    11/18/2018 7:39:56 PM

K

**Local User <00008020-001C54E90250003A_files_full.zip>** 11/19 /2018 2:11:10 PM

Víctor eduardo Lopez Cuellar

**Local User <00008020-001C54E90250003A_files_full.zip>** 11/19 /2018 2:11:30 PM

Cedula ███490

**Local User <00008020-001C54E90250003A_files_full.zip>** 11/19 /2018 4:12:12 PM

DOB ██-78

**A-818**

**From:** "customerservice@delvepoint.com" <customerservice@delvepoint.com>
**Subject:** Your Delvepoint Account Number & Username
**To:** "recio@globallegalconsulting.net" <recio@globallegalconsulting.net>
**Sent:** Friday, November 16, 2018 3:00:16 AM

Manuel Recio,

You'll need your account number and username to log into Delvepoint. To protect your account, we are sending your password in a separate email from other login details. Please head over to https://delvepoint.com and login with the account number and username provided below.

Account Number: **D71096**

Username: **mannyarecio**

If you have any questions, we're here to help! Call Customer Care at 1.866.945.1667 or email us at customerservice@delvepoint.com. You can also view our on-boarding video online.

Thanks,
Delvepoint
---
UDT Group, LLC
2341-A Hansen Court
Tallahassee, FL 32301
866.945.1667
.

# Documents Responsive to Request #2:

All documents, communications, or other records related to the April 17, 2019 invoice.

**A-820**

**Edwin Pagan (+13052181251)**  2/11/2019 5:18:06 PM

Gm boss can you bring all your PI materials this week at dinner whenever that is

**Local User <00008020-001C54E90250003A_files_full.zip>** 2/11/
2019
6:05:11 PM

Yes

**Edwin Pagan (+13052181251)**                    2/11/2019 6:07:20 PM ✓

Thank you

**Local User <00008020-001C54E90250003A_files_full.zip>** 2/11/2019 6:08:22 PM ↗

Send me ur email

**Edwin Pagan (+13052181251)**                    2/11/2019 6:09:27 PM ✓

Eddiefgm6@msn.com

**Edwin Pagan (+13052181251)**                    3/9/2019 3:44:39 AM ✓

Didn't get a chance to thank u for dinner thanks

**Local User <00008020-001C54E90250003A_files_full.zip>** 3/9/2019 3:47:09 AM ↗

No problem my brother

**Edwin Pagan (+13052181251)**                    3/9/2019 3:47:31 AM ✓

Just saw Alonzo mourning and Todd Hurley

**Local User <00008020-001C54E90250003A_files_full.zip>** 3/9/2019 3:48:10 AM ↗

Omg 😔

**Edwin Pagan (+13052181251)**                    3/9/2019 3:48:23 AM ✓

Yup

OB
SIG.OK

**GLOBAL LEGAL CONSULTING LLC**
8306 MILLS DRIVE # 229
MIAMI, FL 33183

1029

63-1539/670

DATE 4/17/19

PAY TO THE
ORDER OF    JEM Solutions                                   $ 10,000.00

tEN thousand 00/100                                         DOLLARS

**U.S. CENTURY BANK**
Coral Gables Branch
396 Alhambra Circle Suite 100
Coral Gables, Florida 20134

FOR _____

⑈0010 29⑈ ⑊          5188⑈

3781910770

3781910773

For Dep only

REQUEST 00000000008268930    10000.00
20190422 000003781910773+
ACCT ████████5188+
REQUESTOR U750007
24827519  03/15/2021 Research 24827650

Summons and Subpoenas Department
D1111-016
Charlotte NC 28201

SDNY_0045300

# Documents Responsive to Request #3:

All documents, communications, or other records related to the June 3, 2019 invoice.

**GLOBAL LEGAL CONSULTING LLC**
8306 MILLS DRIVE # 229
MIAMI, FL 33183

1041

DATE 6/3/19

PAY TO THE
ORDER OF    JGM Solutions                    $ 10,750.00

ten thousand seven hundred fifty 00/100 ___ DOLLARS

U.S. CENTURY BANK
Coral Gables Branch
395 Altamira Circle Suite 100
Coral Gables, Florida 33134

FOR   INVOICE # 102

⑈001041⑈ ⑆ ▮▮▮▮▮▮▮ 5188⑈

3486661103

REQUEST 00000000008268930    10750.00
20190605 000003486661103+
ACCT ▮▮▮▮▮▮▮5188+
REQUESTOR U750007
24827519  03/15/2021 Research 24827650

Summons and Subpoenas Department
D1111-016
Charlotte NC 28201

**Summary Chart of Financial Transactions and Communications**
**Among David Macey, John Costanzo, Sr., Edwin Pagan III, Manuel Recio, and John Costanzo, Jr.**

| Date | Event | Exhibit / Exhibit # |
|---|---|---|
| 10/5/18 | Manuel Recio incorporates Global Legal Consulting ("GLC") | U.S. Century Bank Records / GX 440A |
| 11/10/18 | Manuel Recio retires from the Drug Enforcement Administration ("DEA") | DEA Records / GX 101 |
| 11/12/18 | Invoice dated 11/12/18 states EBCO International of Miami ("EBCO") has billed GLC (Manuel Recio) for $2,500 in "investigative services" | Recio Phone / GX 367 |
| 11/12/18 | David Macey writes $5,000 check to GLC (Manuel Recio) | U.S. Century Bank Records / GX 440B |
| 11/13/18 | GLC (Manuel Recio) deposits $5,000 check from David Macey into GLC's bank account | U.S. Century Bank Records / GX 440B |
| 11/13/18 | Text Conversation Between John Costanzo, Jr. and David Macey<br><br>Costanzo:   1500 for my service. Pinga<br>Costanzo:   John this is Marcos Rodriguez Porsche Service. The vehicle needed a power steering pump and belt tension all covered under warranty. It will need the six year service with belt that costs $1475+ tax the pump will be done Thursday<br>Costanzo:   Can't pick up only write. What do u think<br>Macey:   Sucks ass.<br>Macey:   Text him you were thinking of selling the car soon. What can you deduct without making the car unsafe or void the warranty<br>Costanzo:   Fuck it I am gonna have him do it.<br>Macey:   Of course you are<br>Costanzo:   Lol. I just made 2500 fuck it<br>Macey:   Ask him what the warrant work would have cost.<br>Macey:   It will make you feel better. | Costanzo Phone-1 / GX 317 |

A-825

GOVERNMENT EXHIBIT 701

22 Cr. 281 (JPO)

| Date | Description | Source / Exhibit |
|---|---|---|
| 11/14/18 | GLC (Manuel Recio) writes $2,500 check to EBCO (John Costanzo, Sr.) | U.S. Century Bank Records / GX 440C |
| 11/20/18 | John Costanzo, Jr. deposits $1,500 in cash into his Wells Fargo bank account | Wells Fargo Records / GX 412A |
| 1/27/19-1/28/19 | Text Conversation Between John Costanzo, Jr. and Edwin Pagan III<br><br>Costanzo: Working on names for our company gonna send u a list tell me which one gives u movement<br>Pagan: jEM can be ur acronym then whatever word u wanna use jEM solutions, jEM risk managers whatever<br>Costanzo: Jem Solutions<br>Costanzo: I like it | JEM Solutions Records / GX 507<br><br>Not on Costanzo Phone-1 |
| 1/31/19 | Edwin Pagan III incorporates JEM Solutions | JEM Solutions Records / GX 502 |
| 2/14/19 | Text Conversation Between John Costanzo, Jr. and Edwin Pagan III<br><br>Pagan: Login<br>User name-epagan6<br>Password-eddiefgm6<br>Costanzo: Liked "Login<br>User name-epagan6<br>Password-eddiefgm6" | Costanzo Phone-1 / GX 357 |
| 4/4/19 | Text Conversation Between John Costanzo, Jr. and Edwin Pagan III<br><br>Costanzo: What is the exact name of the company<br>Pagan: JEM solutions inc sorry fell asleep | Costanzo Phone-1 / GX 358 |

| 4/4/19 | Telegram Conversation Between John Costanzo, Jr. and Manuel Recio<br><br>Costanzo:   JEM solutions inc is the company<br>Recio:   BTW here is JMs cut on a Mexican case<br>  So it's significant | Recio Phone / GX 362C |
|---|---|---|
| 4/17/19 | Manuel Recio writes $10,000 check to JEM Solutions (Edwin Pagan III) | U.S. Century Bank Records / GX 440D |
| 4/17/19 | Invoice dated 4/17/19 from JEM Solutions (Edwin Pagan III) to Manuel Recio describes the $10,000 payment as "Investment of Risk Management Company" | JEM Solutions Records / GX 503<br><br>Not in Global Legal Consulting Records |
| 4/22/19 | Text Conversation Between John Costanzo, Jr. and Edwin Pagan III<br><br>Pagan:   Deposit made.<br>Pagan:   Done with banks. 100k Wells , 100k boa , he only had 40k at<br>  Citibank<br>Costanzo:   Nice. | Costanzo Phone-1 / GX 358<br><br>Not in JEM Solutions Records |
| 6/3/19 | Manuel Recio writes $10,750 check to JEM Solutions (Edwin Pagan III) | U.S. Century Bank Records / GX 440E |
| 6/3/19 | Invoice dated 6/3/19 from JEM Solutions (Edwin Pagan III) to Manuel Recio describes the $10,750 payment as "Services for Johnny Grobman Case" | JEM Solutions Records / GX 504<br><br>Not in Global Legal Consulting Records |

| Date | Description | Source |
|------|-------------|--------|
| 7/4/19 | Text Conversation Between John Costanzo, Jr. and Edwin Pagan III<br><br>Costanzo: Just got a ticket with jem. Will need access to ur place to leave something we got over the weekend FYI talk when I c u | Costanzo Phone-1 / GX 358 |
| 7/4/19 | John Costanzo, Jr. purchases $1,108.61 round-trip ticket from Washington, DC to Miami on July 11, 2019 and July 14, 2019 using JEM Solutions bank account | American Airlines Records / GX 510A<br><br>Wells Fargo Records / GX 481 |
| 8/27/19 | John Costanzo, Jr. purchases $1,118.59 ticket from Miami to Washington, DC using JEM Solutions bank account | American Airlines Records / GX 510B<br><br>Wells Fargo Records / GX 481 |
| 10/4/19 | John Costanzo, Jr. purchases $1,168.59 round-trip ticket from DC to Miami using JEM Solutions bank account | American Airlines Records / GX 510C<br><br>Wells Fargo Records / GX 481 |
| 12/3/19 | Susana Rueda wires $20,000 to the law firm, Markus/Moss, on Behalf of John Costanzo, Jr. | Region's Bank Records / GX 453A<br><br>Markus/Moss Records / GX 533, 534 |

| 1/3/20 | Edwin Pagan III writes $20,000 check to Susan Rueda | Dade County Federal Credit Union Records / GX 401A |
|--------|---|---|

**A-830**

## Summary Chart of John Costanzo Jr. NADDIS Searches

| Request Date and Time | Requestor | Name Run in NADDIS | NADDIS Search Date and Time |
|---|---|---|---|
| 11/13/2018 11:51 AM | Manuel Recio | Marco Antonio Flores Moreno | 11/15/2018 10:38 AM |
| 11/14/2018 03:48 PM | Manuel Recio | Edgar Marval | 11/15/2018 10:31 AM |
| 11/27/2018 07:30 AM | Manuel Recio | Edwin Rincón Venezuela | 11/29/2018 10:39 AM |
| 11/27/2018 05:32 PM | Manuel Recio | Esteban Samayoa | 11/29/2018 10:38 AM |
| 11/29/2018 09:35 AM | Manuel Recio | Víctor Eduardo Lopez Cuellar | 11/29/2018 10:47 AM |
| 12/09/2018 10:40 AM | Manuel Recio | Enrique Portocarrero Castillo | 12/10/2018 10:13 AM |
| 02/19/2019 10:40 AM | Manuel Recio | Karen Trujillo Suarez | 02/19/2019 10:39 AM |
| 02/25/2019 09:35 PM | Manuel Recio | Dalbelto Rincón | 02/26/2019 10:41 AM |
| 04/28/2019 10:08 AM | Manuel Recio | Paola Tapiero Portilla | 04/30/2019 01:19 PM |
| 04/28/2019 10:08 AM | Manuel Recio | Ligio Giraldo Belalcazar | 04/30/2019 01:17 PM |
| 05/07/2019 04:59 PM | Manuel Recio | Alirio Trujillo | 5/8/2019 10:42 AM |
| 05/08/2019 09:36 AM | Manuel Recio | Carlos Arturo Salazar Benavides | 05/08/2019 10:54 AM |
| 05/13/2019 10:04 AM | Manuel Recio | Antonio Muschella Venezolano | 05/13/2019 10:14 AM |
| 05/14/2019 06:56 PM | Manuel Recio | Jason Jesus Palacio Gomez | 05/15/2019 03:33 PM |
| 05/15/2019 11:12 AM | Manuel Recio | Santiago Díaz Medina | 05/15/2019 03:43 PM |
| 05/14/2019 06:56 PM | Manuel Recio | Adrian Manyoma | 05/15/2019 03:43 PM |
| 05/14/2019 06:56 PM | Manuel Recio | Antonio Obando aka Mátala | 05/15/2019 03:39 PM |
| 05/27/2019 12:22 PM | Manuel Recio | Jeyson Jeovany Forbes Porter | 5/28/2019 11:21 AM Ran by Edwin Pagan |
| 05/27/2019 12:22 PM | Manuel Recio | Hernán Gonzales Suárez | 5/28/2019 11:23 AM Ran by Edwin Pagan |
| 08/07/2019 03:20 PM | David Macey | Francisco D Agostino | 08/07/2019 04:48 PM |
| 11/11/2019 03:39 PM | Manuel Recio | Rony Alejander Caballero Martinez | 11/12/2019 11:22 AM |
| 11/11/2019 03:39 PM | Manuel Recio | Aler Baldomero Samayoa Recinos | 11/12/2019 11:24 AM |
| 11/11/2019 03:39 PM | Manuel Recio | Edwin Benigno | 11/12/2019 11:25 AM |

Source: GXs 102, 103, 114, 115, 339, 341, 344, 345, 347, 349, 351, 354, 396, 1001, 1003, & 1020



GOVERNMENT EXHIBIT 704A-2

22 Cr. 281 (JPO)

## Summary Chart of John Costanzo Jr. NADDIS Searches and Subsequent Phone Calls

| Request Date and Time | Requestor | Name Run in NADDIS | NADDIS Search Date and Time | Date and Time of Next Phone Call |
|---|---|---|---|---|
| 11/13/2018 11:51 AM | Manuel Recio | Marco Antonio Flores Moreno | 11/15/2018 10:38 AM | 11/15/2018 10:49 AM via Phone |
| 11/14/2018 03:48 PM | Manuel Recio | Edgar Marval | 11/15/2018 10:31 AM | 11/15/2018 10:49 AM via Phone |
| 11/27/2018 07:30 AM | Manuel Recio | Edwin Rincón Venezuela | 11/29/2018 10:39 AM | 11/29/2018 10:39 AM via Whatsapp |
| 11/27/2018 05:32 PM | Manuel Recio | Esteban Samayoa | 11/29/2018 10:38 AM | 11/29/2018 10:39 AM via Whatsapp |
| 11/29/2018 09:35 AM | Manuel Recio | Víctor Eduardo Lopez Cuellar | 11/29/2018 10:47 AM | 11/29/2018 10:39 AM (duration 10 minutes) via Whatsapp |
| 12/09/2018 10:40 AM | Manuel Recio | Enrique Portocarrero Castillo | 12/10/2018 10:13 AM | 12/10/2018 10:41 AM via Phone |
| 02/19/2019 10:40 AM | Manuel Recio | Karen Trujillo Suarez | 02/19/2019 10:39 AM | 02/19/2019 at 10:36 AM (duration 3 minutes) via Telegram |
| 02/25/2019 09:35 PM | Manuel Recio | Dalbelto Rincón | 02/26/2019 10:41 AM | 02/26/2019 10:49 AM via Phone |
| 04/28/2019 10:08 AM | Manuel Recio | Paola Tapiero Portilla | 04/30/2019 01:19 PM | 4/30/2019 08:42 PM via Phone |
| 04/28/2019 10:08 AM | Manuel Recio | Ligio Giraldo Belalcazar | 04/30/2019 01:17 PM | 4/30/2019 08:42 PM via Phone |
| 05/07/2019 04:59 PM | Manuel Recio | Alirio Trujillo | 5/8/2019 10:42 AM | 5/10/2019 04:46 PM via Phone |
| 05/08/2019 09:36 AM | Manuel Recio | Carlos Arturo Salazar Benavides | 05/08/2019 10:54 AM | 5/10/2019 04:46 PM via Phone |
| 05/13/2019 10:04 AM | Manuel Recio | Antonio Muschella Venezolano | 05/13/2019 10:14 AM | 5/16/2019 02:51 PM via Phone |
| 05/14/2019 06:56 PM | Manuel Recio | Jason Jesus Palacio Gomez | 05/15/2019 03:33 PM | 5/16/2019 02:51 PM via Phone |
| 05/15/2019 11:12 AM | Manuel Recio | Santiago Diaz Medina | 05/15/2019 03:43 PM | 5/16/2019 02:51 PM via Phone |
| 05/14/2019 06:56 PM | Manuel Recio | Adrian Manyoma | 05/15/2019 03:43 PM | 5/16/2019 02:51 PM via Phone |
| 05/14/2019 06:56 PM | Manuel Recio | Antonio Obando aka Mátala | 05/15/2019 03:39 PM | 5/16/2019 02:51 PM via Phone |
| 05/27/2019 12:22 PM | Manuel Recio | Jeyson Jeovany Forbes Porter | 5/28/2019 11:21 AM Ran by Edwin Pagan | 05/28/2019 03:49 PM via Phone |
| 05/27/2019 12:22 PM | Manuel Recio | Hernán Gonzales Suárez | 5/28/2019 11:23 AM Ran by Edwin Pagan | 05/28/2019 03:49 PM via Phone |
| 08/07/2019 03:20 PM | David Macey | Francisco D Agostino | 08/07/2019 04:48 PM | 8/7/2019 06:23 PM via Phone) (Macey to Costanzo) |
| 11/11/2019 03:39 PM | Manuel Recio | Rony Alejandro Caballero Martinez | 11/12/2019 11:22 AM | 11/12/2019 08:06 PM via Phone |
| 11/11/2019 03:39 PM | Manuel Recio | Aler Baldomero Samayoa Recinos | 11/12/2019 11:24 AM | 11/12/2019 08:06 PM via Phone |
| 11/11/2019 03:39 PM | Manuel Recio | Edwin Benigno | 11/12/2019 11:25 AM | 11/12/2019 08:06 PM via Phone |

Source: GXs 102, 103, 114, 115, 320, 339, 341, 344, 345, 347, 349, 351, 354, 360, 396, 901A, 1001, 1003, & 1020

GOVERNMENT EXHIBIT 704B-2
22 Cr. 281 (JPO)

**A-832**

| | | | | |
|---|---|---|---|---|
| **Schedule for JEM Solutions Bank Account From Account Inception to November 18, 2019**<br>**Total number of Transactions: 11** | | | | |
| **Date** | **Credit Amount** | **Debit Amount** | **Balance** | **Description** |
| | | | $ - | Beginning Balance |
| 2/14/2019 | $100.00 | | $100.00 | Etransfer IN Branch/Store - From Checking 13700 N Kendall Dr Miami FL 3433 |
| 2/26/2019 | | $36.19 | $63.81 | Harland Clarke Check/Acc. ███ █ ████ 5482 Jem Solutions Inc |
| 4/22/2019 | $10,000.00 | | $10,063.81 | Deposit |
| 4/26/2019 | | $2,000.00 | $8,063.81 | Online Transfer to Jem Solutions Inc Business Market Rate Savings xxxxx0661 Ref #Ib065JI7W4 on 04/26/19 |
| 4/30/2019 | | $14.00 | $8,049.81 | Monthly Service Fee |
| 6/5/2019 | $10,750.00 | | $8,799.81 | Edeposit IN Branch/Store 06/05/19 03:37:02 Pm 100 Crandon |
| 7/8/2019 | | $1,108.61 | $17,691.20 | Purchase authorized on 07/04 American Air001236 Fort Worth |
| 7/12/2019 | $1,600.00 | | $19,291.20 | Deposit |
| 8/29/2019 | | $1,118.59 | $18,172.61 | Purchase authorized on 08/27 American Air001237 Fort Worth |
| 8/29/2019 | | $178.60 | $17,994.01 | Purchase authorized on 08/27 American Air001065 Fort Worth |
| 10/7/2019 | | $1,168.59 | $16,825.42 | Purchase authorized on 10/04 American Air001238 Fort Worth |

**GOVERNMENT**
**EXHIBIT**
**705**
22 Cr. 281 (JPO)

Instant Messages Thread
Manny Recio 13057967463 (Gray)
Johnny Costanzo 17862712480 (Green)

11/10/2019 3:41:18
PM(UTC-5)

Attachment: dcbee28e-5035-4ae0-8a7e-
e3e808dcf57a.jpg

11/11/2019 3:39:41
PM(UTC-5)

Attachment: 8c07a92d-9e9a-402d-b35d-
299e23ecd45d.jpg

11/11/2019 3:40:13
PM(UTC-5)

John tomorrow let me know about this guy

K

11/11/2019 3:40:22
PM(UTC-5)

Papo

11/12/2019 11:30:53
AM(UTC-5)

Edwin benigno agents are Arron Padgett this
guy is affiliated with transporte Indios
Barrera get u the agents number

11/12/2019 11:32:14
AM(UTC-5)

Aler is Peter Maher (Memphis)  Good friend
with the gs "nugget" Pete's number is 571
362 2278. I believe u talked to him in other
shit before also SOD Brent wood has a piece.
The rest of the targets nada

11/12/2019 11:36:03
AM(UTC-5)

A-833

**GOVERNMENT
EXHIBIT
1020**
22 Cr. 281 (JPO)

Instant Messages Thread
Manny Recio 13057967463 (Gray)
Johnny Costanzo 17862712480 (Green)

Johnny what about the guy in the picture

11/12/2019 8:21:07
PM(UTC-5)

Nothing need more identifiers

11/12/2019 8:31:19
PM(UTC-5)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                           :

UNITED STATES OF AMERICA       :    **STIPULATION**

               - v. -            :    (Cell Site Data)

JOHN COSTANZO JR., and      :    22 Cr. 281 (JPO)
MANUEL RECIO,               :

          Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      IT IS HEREBY STIPULATED AND AGREED by and between the UNITED STATES

OF AMERICA, by DAMIAN WILLIAMS, United States Attorney for the Southern District of

New York; Mathew Andrews, Emily Deininger, and Sheb Swett, Assistant United States

Attorneys, of counsel; and JOHN COSTANZO JR., the defendant, by and through the consent of

his attorneys Marc L. Mukasey, Torrey K. Young, and Stephanie Guaba, Esq., and MANUEL

RECIO, the defendant, by and through the consent of his attorneys, Amber Donner and Ronald

Gainor, Esq., that Federal Bureau of Investigation ("FBI") Special Agent Richard V.C. Busick

would testify as follows:

      1.      Special Agent Busick is a member of the Cellular Analysis Support Team in the

FBI's New York Office and his responsibilities include analyzing call detail records and

historical cell site data.

      2.      Used in conjunction with call detail records, cell site data provides an

approximate location of a cell phone at the time that it initiates a call.

      3.      An analysis of cell site data and call detail records for phone number (305) 796-

7463 (the "7463 Phone"), show that user of the 7463 Phone placed the outgoing call that is

reflected in GX 207, which lasted approximately three minutes and twenty-four seconds, to

**GOVERNMENT
EXHIBIT
S1**
22 Cr. 281 (JPO)

phone number (786) 566-0085 at approximately 4:27 pm ET on July 16, 2019, from Manhattan,

New York.

    IT IS FURTHER STIPULATED AND AGREED that this Stipulation may be admitted in

evidence at trial.

Dated: New York, New York
      Oct. 21    , 2023

                        DAMIAN WILLIAMS
                        United States Attorney
                        Southern District of New York

By: _____

                        Mathew Andrews
                        Emily Deininger
                        Sheb Swett
                        Assistant United States Attorneys
                        Southern District of New York

                        _____
                        Marc L. Mukasey, Esq.
                        Torrey K. Young, Esq.
                        Stephanie Guaba, Esq.
                        Attorneys for John Costanzo Jr.

                        _____
                        Amber Donner, Esq.
                        Ronald Gainor, Esq.
                        Attorneys for Manuel Recio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                  :

UNITED STATES OF AMERICA       :    **STIPULATION**

         - v. -           :    (Email Records)

JOHN COSTANZO JR., and    :    22 Cr. 281 (JPO)
MANUEL RECIO,             :

           Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :X

IT IS HEREBY STIPULATED AND AGREED by and between the UNITED

STATES OF AMERICA, by DAMIAN WILLIAMS, United States Attorney for the Southern

District of New York; Mathew Andrews, Emily Deininger, and Sheb Swett, Assistant United

States Attorneys, of counsel; and JOHN COSTANZO JR., the defendant, by and through the

consent of his attorneys Marc L. Mukasey, Torrey K. Young, and Stephanie Guaba, Esq., and

MANUEL RECIO, the defendant, by and through the consent of his attorneys, Amber Donner

and Ronald Gainor, Esq., that:

      1.    Government Exhibits 301 through 303A are true and correct copies of records

maintained by Yahoo!Inc, an email service provider, for email account

mannyarecio@yahoo.com, used by Manuel Recio. Government Exhibit 303A is an attachment

to Government Exhibit 303.

      2.    Government Exhibits 310 and 311 are true and correct copies of records

maintained by Google, Inc., an email service provider, for email account

recio@globallegalconsulting.net, used by Manuel Recio.

**GOVERNMENT
EXHIBIT
S2**
22 Cr. 281 (JPO)

IT IS FURTHER STIPULATED AND AGREED that Government Exhibits 302

through 303A, 310, 311, and this Stipulation, may be admitted in evidence at trial.

Dated:      New York, New York
              Oct. 21    , 2023

                        DAMIAN WILLIAMS
                        United States Attorney
                        Southern District of New York

By:                      _____

                        Mathew Andrews
                        Emily Deininger
                        Sebastian Swett
                        Assistant United States Attorneys
                        Southern District of New York

                        _____
                        Marc L. Mukasey, Esq.
                        Torrey K. Young, Esq.
                        Stephanie Guaba, Esq.
                        Attorneys for John Costanzo

                        _____
                        Amber Donner, Esq.
                        Ronald Gainor, Esq.
                        Attorneys for Manuel Recio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                          :
UNITED STATES OF AMERICA                  :        **STIPULATION**
                                                          :
            - v. -                                    :        (Subpoena Returns)
                                                          :
JOHN COSTANZO JR., and             :        22 Cr. 281 (JPO)
MANUEL RECIO,                             :
                                                          :
            Defendants.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

            IT IS HEREBY STIPULATED AND AGREED by and between the UNITED

STATES OF AMERICA, by DAMIAN WILLIAMS, United States Attorney for the Southern

District of New York; Mathew Andrews, Emily Deininger, and Sebastian Swett, Assistant

United States Attorneys, of counsel; and JOHN COSTANZO JR., the defendant, by and through

the consent of his attorneys Marc L. Mukasey, Torrey K. Young, and Stephanie Guaba, Esq., and

MANUEL RECIO, the defendant, by and through the consent of his attorneys, Amber Donner

and Ronald Gainor, Esq., that:

            1.        Government Exhibit 500 is a grand jury subpoena dated March 19, 2021 (the

"JEM Subpoena") served on JEM Solutions Inc.

            2.        Government Exhibits 503 through 507 are excerpts of records produced in

response to the JEM Subpoena by JEM Solutions.

            3.        Government Exhibit 520 is a grand jury subpoena dated February 22, 2023 (the

"GLC Subpoena") served on Global Legal Consulting LLC.

            4.        Government Exhibits 522 through 524 are excerpts of records produced in

response to the GLC Subpoena by Global Legal Consulting LLC.

> **GOVERNMENT**
> **EXHIBIT**
> **S3**
> 22 Cr. 281 (JPO)

5.    Government Exhibit 527 is a copy of a court subpoena dated August 17, 2023

served on EBCO International of Miami, Inc (the "EBCO Trial Subpoena")

6.    Government Exhibit 529 of is a copy of records produced in response to a court

subpoena dated August 17, 2023 served on EBCO International of Miami, Inc (the "EBCO Trial

Subpoena").

[Intentionally Left Blank]

IT IS FURTHER STIPULATED AND AGREED that Government Exhibits 500, 503

through 507, 520, and 522 through 524, 527, and 529, and this Stipulation, may be received into

evidence at trial.

Dated:     New York, New York
           Oct. 21        , 2023

                              DAMIAN WILLIAMS
                              United States Attorney
                              Southern District of New York

             By:     _____

                     Mathew Andrews
                     Emily Deininger
                     Sebastian Swett
                     Assistant United States Attorneys
                     Southern District of New York


                     _____
                     Marc L. Mukasey, Esq.
                     Torrey K. Young, Esq.
                     Stephanie Guaba, Esq.
                     Attorneys for John Costanzo, Jr.


                     _____
                     Amber Donner, Esq.
                     Ronald Gainor, Esq.
                     Attorneys for Manuel Recio

Page 3 of 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                :

UNITED STATES OF AMERICA      :     **STIPULATION**

                                :

        - v. -               :     (Wiretap)

                                :

JOHN COSTANZO JR., and      :     22 Cr. 281 (JPO)
MANUEL RECIO,               :

                                :

        Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

      IT IS HEREBY STIPULATED AND AGREED by and between the UNITED STATES OF AMERICA, by DAMIAN WILLIAMS, United States Attorney for the Southern District of New York; Mathew Andrews, Emily Deininger, and Sheb Swett, Assistant United States Attorneys, of counsel; and JOHN COSTANZO JR., the defendant, by and through the consent of his attorneys Marc L. Mukasey, Torrey K. Young, and Stephanie Guaba, Esq., and MANUEL RECIO, the defendant, by and through the consent of his attorneys, Amber Donner and Ronald Gainor, Esq., that:

      1.     From July 2, 2019 through October 2, 2019, the Federal Bureau of Investigation ("FBI") conducted a court-authorized wiretap of cellphone number 305-796-7463, used by Manuel A. Recio (the "Recio Phone").

      2.     Government Exhibits 201 through 220 are audio files containing true and accurate excerpts of recordings of selected phone calls intercepted pursuant to the wiretaps of the Recio Phone.

      3.     Government Exhibits 201T through 220T are true and accurate transcripts of the corresponding audio file exhibits (that is, Government Exhibits 201 through 220). The dates, times, phone numbers, and voice attributions reflected on these transcripts are accurate.



GOVERNMENT
EXHIBIT
**S6**
22 Cr. 281 (JPO)

4.      Defense Exhibits JC-1002, JC-1004, JC-1006, JC-1008, JC-1010, JC-1012, JC-1014, JC-1016, JC-1022, MR 901, MR902, MR903, MR904, and MR905 are audio files containing true and accurate recordings of selected phone calls intercepted pursuant to the wiretaps of the Recio Phone.

5.      Defense Exhibits JC-1003, JC-1005, JC-1007, JC-1009, JC-1011, JC-1013, JC-1015, JC-1017, JC-1023, MR901T, MR902T, MR903T, MR904T, MR905T are true and accurate transcripts of the corresponding audio file exhibits. The dates, times, phone numbers, and voice attributions reflected on these transcripts are accurate.

6.      The content of each intercepted communication was recorded at the time of the communication, along with certain data relating to the communication, including the date and time of the communication, the duration of the communication, the phone numbers participating in the communication, and whether the communication was incoming or outgoing.  The recorded communications, along with the data relating to the communications, were transferred to a computer system under the custody and control of the FBI.

IT IS FURTHER STIPULATED AND AGREED that this Stipulation may be admitted in evidence at trial.

Dated:       New York, New York
                Oct. 23     , 2023

                                    DAMIAN WILLIAMS
                                    United States Attorney
                                    Southern District of New York

By:

Mathew Andrews
Emily Deininger
Sebastian Swett
Assistant United States Attorneys
Southern District of New York

Marc L. Mukasey, Esq.
Torrey K. Young, Esq.
Stephanie Guaba, Esq.
Attorneys for John Costanzo, Jr.

Amber Donner, Esq.
Ronald Gainor, Esq.
Attorneys for Manuel Recio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X
                    :

UNITED STATES OF AMERICA     :     **STIPULATION**

                    :

      - v. -            :     (Court Filings)

                    :

JOHN COSTANZO JR., and    :     22 Cr. 281 (JPO)
MANUEL RECIO,           :

                    :

        Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

        IT IS HEREBY STIPULATED AND AGREED by and between the UNITED

STATES OF AMERICA, by DAMIAN WILLIAMS, United States Attorney for the Southern

District of New York; Mathew Andrews, Emily Deininger, and Sheb Swett, Assistant United

States Attorneys, of counsel; and JOHN COSTANZO JR., the defendant, by and through the

consent of his attorneys Marc L. Mukasey, Torrey K. Young, and Stephanie Guaba, Esq., and

MANUEL RECIO, the defendant, by and through the consent of his attorneys, Amber Donner

and Ronald Gainor, Esq., that:

       1.    If called to testify, a representative from the United States District for the

Southern District of Florida would state that:

             a.    On February 28, 2017, a grand jury sitting in the United States

District Court for the Southern District of Florida issued an indictment in *United States v. Edison

Washington Prado Alava et al.*, 17-cr-20144, charging the defendants with conspiracy to

distribute cocaine.

             b.    On December 27, 2018, a grand jury sitting in the United States

District Court for the Southern District of Florida issued an indictment in *United States v. Johnny

Grobman et al.*, 18-cr-20989, charging Johnny Grobman and others with conspiracy to commit



**GOVERNMENT
EXHIBIT
S7**
22 Cr. 281 (JPO)

wire fraud, money laundering, and conspiracy to obtain by fraud and deception pre-retail medical products.

        c. On July 25, 2019, a grand jury sitting in the United States District Court for the Southern District of Florida issued an indictment in *Alex Nain Saab Moran and Alvaro Pulido Vargas*, 19-cr-20450, charging Alex Saab and others with conspiracy to commit money laundering and money laundering.

        d. On June 27, 2019, a grand jury sitting in the United States District Court for the Southern District of Florida issued an indictment in *United States v. Luis Alredo Motta Dominguez and Eustiquio Jose Lugo Gomez*, 19-cr-20388, charging Dominguez and Lugo with conspiracy to commit money laundering and money laundering.

        e. On February 7, 2019, a grand jury sitting in the United States District Court for the Southern District of Florida issued an indictment in *United States v. Cesar Emilio Peralta*, 17-cr-20412, charging Peralta with conspiracy to distribute a controlled substance, knowing or having reasonable cause to believe that the controlled substance would be unlawfully imported. The indictment was sealed until September 17, 2019.

        f. Hector Manuel Zavala Mora was arrested or surrendered on April 22, 2019. On April 23, 2019, the Honorable Alicia M. Otazo-Reyes, U.S.M.J. signed a criminal complaint in *United States v. Zavala Mora*, 19-cr-20408-JLK, filed in the United States District Court for the Southern District of Florida. An initial appearance as to Hector Manuel Zavala Mora was held on April 23, 2019.

    2. If called to testify, a representative from the United States District for the District of Puerto Rico would state that:

a. On November 28, 2018, a grand jury sitting in the United States District Court for the District of Puerto Rico issued an indictment in *United States v. Cesar Emilio Peralta-Adamez*, 18-cr-746, charging Peralta with conspiracy to import narcotics and manufacturing and distribution of narcotics for the purpose of unlawful importation. The indictment was sealed until November 12, 2019.

IT IS FURTHER STIPULATED AND AGREED that this Stipulation may be received into evidence at trial.

Dated: New York, New York

_Oct. 23_ , 2023

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: _____

Mathew Andrews
Emily Deininger
Sheb Swett
Assistant United States Attorneys
Southern District of New York

_____

Marc L. Mukasey, Esq.
Torrey K. Young, Esq.
Stephanie Guaba, Esq.
Attorneys for John Costanzo Jr.

_____

Amber Donner, Esq.
Ronald Gainor, Esq.
Attorneys for Manuel Recio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------- X
                         :

UNITED STATES OF AMERICA     :     **STIPULATION**
                         :

        - v. -           :     (Cellphone Extractions)
                         :

JOHN COSTANZO JR and      :     22 Cr. 281 (JPO)
MANUEL RECIO,              :
                         :

           Defendants.        :

------------------------------- X

       IT IS HEREBY STIPULATED AND AGREED by and between the UNITED

STATES OF AMERICA, by DAMIAN WILLIAMS, United States Attorney for the Southern

District of New York; Mathew Andrews, Emily Deininger, and Sheb Swett, Assistant United

States Attorneys, of counsel; and JOHN COSTANZO JR, the defendant, by and through the

consent of his attorneys Marc L. Mukasey, Torrey K. Young, and Stephanie Guaba, Esq., and

MANUEL RECIO, the defendant, by and through the consent of his attorneys, Amber Donner

and Ronald Gainor, Esq., that:

     1.     Government Exhibits 320 through 325A, 397, and 1030 to 1032 are authentic

copies of notes, call logs, and communications extracted from the cell phone assigned call

number 786-271-2480, used by John Costanzo ("Costanzo Phone-1"). Within these records:

         a.   Government Exhibit 320 is a call log from Costanzo Phone-1 from

April 28, 2015 to November 17, 2019.

         b.   Government Exhibit 321 contains communications sent via

iMessage between Costanzo Phone-1 and the cell phone assigned call number 305-796-7463,

used by Manuel Recio (the "Recio Phone"), between May 12, 2019 and October 28, 2019.

GOVERNMENT
EXHIBIT
S8
22 Cr. 281 (JPO)

c. Government Exhibit 322 contains communications sent via WhatsApp between Costanzo Phone-1 and the Recio Phone between October 27, 2018 and November 17, 2019.

d. Government Exhibits 323 contains communications sent via Telegram between Costanzo Phone-1 and the Recio Phone between February 19, 2019 and June 3, 2019.

e. Government Exhibit 324 is a note saved to Costanzo Phone-1 on or about May 26, 2019.

f. Government Exhibit 324A is an excerpt from the Contacts in Costanzo Phone-1.

g. Government Exhibit 325 contains visual depictions of excerpts of communications sent via TextNow between Costanzo Phone-1 and Jorge Hernandez Villazon between September 27, 2018 and May 6, 2019. Government Exhibit 325A contains images of attachments to GX 325.

h. Government Exhibit 397 contains communications sent via WhatsApp between Costanzo Phone-1 and the cell phone with call number 786-271-1852, used by Luis Guerra (the "Guerra Phone"). Government Exhibit 397B contains authentic visual depictions of communications excerpted from GX 397.

i. Government Exhibit 1030 contains communications, images, and attachments sent via WhatsApp between Costanzo Phone-1 and the Macey Phone, between January 28, 2015 and November 14, 2019.

j. Government Exhibit 1031 contains communications, images, and attachments sent via iMessage between Costanzo Phone-1 and the phone assigned call number

305-490-7027, used by David Macey (the "Macey Phone"), between November 2, 2018 and November 17, 2019.

      k.  Government Exhibit 1032 contains communications and attachments sent via iMessage between Costanzo Phone-1 and the cell phone assigned call number 305-218-1251, used by Edwin Pagan III (the "Pagan Phone"), between February 14, 2019 and November 11, 2019.

      l.  Government Exhibits 317, 319, 326 through 359, 1020, 1025, 1026, and 1028 are authentic visual depictions of communications and metadata excerpted from GX 321, GX 322, GX 323, GX 1030, GX 1031, or GX 1032. Government Exhibits 325A, GX 325B, GX 330A, GX 333A, GX 333B, GX 335A, GX 335B, GX 349A, GX 354A, GX 1020A, GX 1020B, GX 1026A, GX 1026B, GX 1026C, and GX 1028A are authentic visual depictions of attachments to the corresponding Government Exhibit.

    2.  Government Exhibits 360, 361, 362, 363, 367, 397, 1029, and 1034 contain call logs, communications, and documents extracted from the Recio Phone. Within these records:

      a.  Government Exhibit 360 is a call log from the Recio Phone from October 9, 2018 to November 17, 2019.

      b.  Government Exhibits 361 contains communications sent via iMessage between Costanzo Phone-1 and the Recio Phone between October 9, 2018 and October 28, 2019.

      c.  Government Exhibit 362 contains communications sent via Telegram between Costanzo Phone-1 and the Recio Phone between February 19, 2019 and June 3, 2019.

d. Government Exhibit 363 contains communications sent via WhatsApp between the cell phone with call number 786-566-0085 ("Costanzo Phone-2") and the Recio Phone between May 31, 2019 and August 28, 2019.

e. Government Exhibit 367 is a document saved on the Recio Phone. There is no communication saved on the Recio Phone transmitting the document to the Recio Phone. The metadata for Government Exhibit 367 reflects a filename of "Invoice (No. 421) from EBCO International of Miami_1.pdf" and a date created of November 12, 2018.

f. Government Exhibit 1029 contains communications and attachments sent via WhatsApp between Costanzo Phone-1 and the Recio Phone, between November 27, 2018 to November 17, 2019.

g. Government Exhibit 1034 through 1034C contains communications and attachments sent via WhatsApp between the Recio Phone, Costanzo Phone-1, and the Guerra Phone.

h. Government Exhibits 318, 364 through 366, and 368 through 379, 382 through 396, 397A, 1001 through 1019, 1021 through 1024, and 1027 are authentic visual depictions of communications and metadata excerpted from GX 361, GX 362, GX 363, or GX 1029. Government Exhibits 368A, GX 370A, GX 374A, GX 375A, GX 385A, GX 385B, and GX 395A are authentic visual depictions of attachments to the corresponding Government Exhibit.

i. Government Exhibit 380 contains authentic visual depictions of communications and metadata from an excerpt of iMessage communications between the Recio Phone and the Macey Phone.

j.    Government Exhibit 381 contains authentic visual depictions of communications and metadata from an excerpt of WhatsApp communications between the Recio Phone and the Macey Phone.

3.    Defense Exhibits as follows are excerpts of call logs and communications extracted from the Recio Phone:

a.    Defendant Manuel Recio's Exhibits 104 and 105 excerpts of visual depictions of WhatsApp messages between Jorge Hernandez Villazon and the Recio Phone.

b.    Defendant Manuel Recio's Exhibits 125 through 126 are excerpts of visual depictions of WhatsApp messages between the Recio Phone and Costanzo Phone-1.

c.    Defendant Manuel Recio's Exhibit 127 contains an attachment sent via WhatsApp from the Recio Phone to Costanzo Phone-1.

d.    Defendant Manuel Recio's Exhibit 130 are excerpts of visual depictions of WhatsApp messages between the Recio Phone and Costanzo Phone-2.

e.    Defendant Manuel Recio's Exhibits 133 through 136 are excerpts of visual depictions of WhatsApp messages between the Recio Phone and the cell phone assigned call number 571-355-5909 (the "Lucas Phone").

f.    Defendant Manuel Recio's Exhibits 137, 137a, 137aT, 138, 138T, 139, 139T, 140, 140T, 141, 141T, 142, 142a, 142aT, 142b, 142bT, 142c, 142cT, 142T, 143 and 143T excerpts of visual depictions of messages and voicemails and sent via WhatsApp between the Recio Phone and the cell phone assigned call number 809-789-3268 (the "Peralta Phone").

g.    Defendant Manuel Recio's Exhibit 152 are excerpts of visual depictions of WhatsApp messages between the Recio Phone and the cell phone assigned call number 954-444-1804 (the "Lukens Phone").

h. Defendant Manuel Recio's Exhibit 154 are excerpts of visual depictions of WhatsApp messages between Costanzo Phone-1 and the Recio Phone.

i. Defendant Manuel Recio's Exhibits 201, 201a, 202 and 203 are excerpts of visual depictions of text messages and attachments between the Recio Phone and the Lukens Phone.

j. Defendant Manuel Recio's Exhibits 205 and 206 are excerpts of visual depictions of text messages between Costanzo Phone-1 and the Recio Phone.

k. Defendant Manuel Recio's Exhibit 207 are excerpts of visual depictions of iMessages between the Recio Phone and a cell phone assigned call number 469-992-9939, used by "Guillermo Fuentes."

l. Defendant Manuel Recio's Exhibit 211 and 212 are excerpts of visual depictions of iMessages between the Recio Phone and a cell phone assigned call number 305-219-9131, used by "Daniel Aleman."

m. Defendant Manuel Recio's Exhibit 213 are excerpts of visual depictions of iMessages between the Recio Phone and a cell phone assigned call number 954-461-0381, used by "Joshua Passman."

n. Defendant Manuel Recio's Exhibit 216 are excerpts of visual depictions of iMessages between the Recio Phone and a cell phone assigned call number 602-471-4143, used by "Joshua Cluff."

o. Defendant Manuel Recio's Exhibit 217 are excerpts of visual depictions of iMessages between the Recio Phone and the Pagan Phone.

p. Defendant Manuel Recio's Exhibit 218 are excerpts of visual depictions of iMessages between the Recio Phone and a cell phone assigned call number 214-882-5595, used by "Robert Nedeau."

q. Defendant Manuel Recio's Exhibits 219 through 221 are excerpts of visual depictions of iMessages between the Recio Phone and a cell phone assigned call number 954-410-0844, used by "Jeremy Youngblood."

r. Defendant Manuel Recio's Exhibits 222 through 225 are excerpts of visual depictions of iMessages between the Recio Phone and a cell phone assigned call number 305-796-7710, used by "John Shine".

s. Defendant Manuel Recio's Exhibit 226 contains visual depictions of iMessages between the Recio Phone and the Lucas Phone.

t. Defendant Manuel Recio's Exhibits 227, 227a, 228 are excerpts of visual depictions of iMessages and attachments between the Recio Phone and a cell phone assigned call number 305-970-1620, used by "Paul Cohen".

u. Defendant Manuel Recio's Exhibit 229 are excerpts of visual depictions of iMessages between a cell phone assigned call number 917-435-3197, used by "James Lownes" and the Recio Phone.

v. Defendant Manuel Recio's Exhibit 230 are excerpts of visual depictions of WhatsApp messages between Costanzo Phone-1 and the Recio Phone.

[Page Intentionally Left Blank]

IT IS FURTHER STIPULATED AND AGREED that this Stipulation may be admitted in evidence at trial.

Dated:     New York, New York
           Oct. 23, , 2023

                              DAMIAN WILLIAMS
                              United States Attorney
                              Southern District of New York

           By:     _____

                              Mathew Andrews
                              Emily Deininger
                              Sheb Swett
                              Assistant United States Attorneys
                              Southern District of New York


                              _____

                              Marc L. Mukasey, Esq.
                              Torrey K. Young, Esq.
                              Stephanie Guaba, Esq.
                              Attorneys for John Costanzo Jr.


                              _____

                              Amber Donner, Esq.
                              Ronald Gainor, Esq.
                              Attorneys for Manuel Recio

**A-858**



**Analysis of Banking Transactions during November / December 2018**

Account Name: Global Legal Consulting
Bank: US Century Bank
Acct #: 5188
Source: GX 440

| Date | Beg Balance | Checks/Other Debits | Deposits/Other Credits | End Balance |
|---|---|---|---|---|
| 10/31/2018 | 500.00 | | | 500.00 |
| 11/13/2018 | 500.00 | | 5,000.00 | 5,500.00 |
| 11/16/2018 | 5,500.00 | 2,500.00 | | 3,000.00 |
| 11/19/2018 | 3,000.00 | | 2,000.00 | 5,000.00 |
| 11/20/2018 | 5,000.00 | 1,000.00 | | 4,000.00 |
| 11/23/2018 | 4,000.00 | 696.83 | | 3,303.17 |
| 11/26/2018 | 3,303.17 | 1,667.27 | | 1,635.90 |
| 11/27/2018 | 1,635.90 | | 5,000.00 | 6,635.90 |
| 11/28/2018 | 6,635.90 | 1,000.00 | | 5,635.90 |

Account Name: EBCO International of Miami
Bank: Wells Fargo bank
Acct #: x8835
Source: DX JC-742

| Date | Beg Balance | Checks/Other Debits | Deposits/Other Credits | End Balance |
|---|---|---|---|---|
| 10/31/2018 | 547.40 | | | 547.40 |
| 11/14/2018 | 547.40 | | | 547.40 |
| 11/15/2018 | 547.40 | | 2,500.00 | 3,047.40 |
| 11/19/2018 | 3,047.40 | 1,800.00 | 500.00 | 1,747.40 |
| 11/28/2018 | 1,747.40 | 498.00 | | 1,249.40 |
| 12/1/2018 | 1,249.40 | | | 1,249.40 |
| 12/10/2018 | 1,249.40 | 155.37 | | 1,094.03 |
| 12/20/2018 | 1,094.03 | 541.26 | | 552.77 |
| 12/31/2018 | 552.77 | | | 552.77 |

DEFENSE
EXHIBIT
**JC-2621**
22-cr-281 (JPO)

# A-859

Account Name: EBCO International of Miami
Bank: Wells Fargo bank
Acct #: x8835
Source: DX JC-742

| Date | Description | Beg Balance | Deposits/ Other Credits | Checks/ Other Debits | End Balance |
|---|---|---|---|---|---|
| 11/14/2018 | | 547.40 | | | 547.40 |
| 11/15/2018 | Mobile deposit | 547.40 | 2,500.00 | | 3,047.40 |
| 11/19/2018 | Umberto Bonavi invoice | 3,047.40 | 500.00 | | 3,547.40 |
| 11/19/2018 | Citi Card payment | 3,547.40 | | 1,800.00 | 1,747.40 |
| 11/28/2018 | Hmfusa.com | 1,747.40 | | 498.00 | 1,249.40 |
| 12/10/2018 | Transamerica Ins | 1,249.40 | | 155.37 | 1,094.03 |
| 12/20/2018 | Bmwfinancial | 1,094.03 | | 541.26 | 552.77 |
| 12/31/2018 | | 552.77 | | | 552.77 |

A-860



**Analysis of Edwin Pagan III and Edwin Pagan Romero Bank Accounts Summary**
**Dade County Federal Credit Union #██9701**
**January 1, 2018 - January 31, 2020**
**Source: DX JC-768A, DX JC-769, DX JC-1318**

Acct Type
*Share 0001*

| | | | | | |
|---|---|---|---|---|---|
| **Beginning Balance** | | | | | $88,800 |
| **Total Deposits** | | | | | |
| Coral Gables Pay | | | #54 | $5,800 | |
| Checks pre 1/17/2019 | | | #8 | $23,776 | |
| Checks post 1/17/2019 | | | | | |
| 5/9/2019 | check | Sanchez Vadillo IOTA | $2,492 | | |
| | check | Sanchez Vadillo IOTA | $6,108 | | |
| 5/23/2019 | check | Mid-Delta Corp | $175 | | |
| | check | Bank of America | $2,279 | | |
| 6/13/2019 | check | Alda and Jorge Hernandez | $7,000 | | |
| | check | Village of Key Biscayne | $850 | | |
| 8/30/2019 | check | Central Express Services | $2,493 | | |
| 11/4/2019 | check | Central Express Services | $1,265 | | |
| 12/9/2019 | check | City of Coral Gables | $271 | | |
| | | | #6 | $22,933 | |
| Deposit | | | #4 | $6,160 | |
| Deposit Rev Mail | | | #1 | $10 | |
| Dividends | | | #8 | $718 | |
| | | | | $59,397 | |
| **Other Credits** | | | | | |
| Transfers from share 0002 | | | #2 | $15,261 | |
| **Total Deposits and Credits** | | | | | $74,658 |
| **Total Withdrawals** | | | | | |
| Return Mail Fee | | | #2 | $10 | |
| Withdrawal | | | #2 | $5,525 | |
| Withdrawal by check | | | #2 | $73,009 | |
| Withdrawal safe deposit | | | #2 | $50 | |
| | | | | $78,594 | |
| **Total Checks and Debits** | | | | | $78,594 |
| **Ending Balance** | | | | | $84,864 |

DEFENSE
EXHIBIT
**JC-2622**
22-cr-281 (JPO)



**Analysis of Edwin Pagan III and Edwin Pagan Romero Bank Accounts Detail**

**Dade County Federal Credit Union #███9701**

**January 1, 2018 - January 31, 2020**

Source: DX JC-768A, DX JC-769, DX JC-1318

| Date | Beg. Balance | Deposits/Other Credits | Checks/Other Debits | End. Balance | Description |
|------|-------------|------------------------|---------------------|--------------|-------------|
| 1/11/2018 | $88,800 | $107.41 | | $88,907 | Deposit Coral Gables Pay |
| 1/24/2018 | $88,907 | $107.41 | | $89,015 | Deposit Coral Gables Pay |
| 1/31/2018 | $89,015 | | | $89,015 | |
| 2/7/2018 | $89,015 | $107.41 | | $89,122 | Deposit Coral Gables Pay |
| 2/7/2018 | $89,122 | $2,151.00 | | $91,273 | Deposit by check |
| 2/21/2018 | $91,273 | $107.41 | | $91,380 | Deposit Coral Gables Pay |
| 2/28/2018 | $91,380 | | $5 | $91,375 | Return mail fee |
| 3/7/2018 | $91,375 | $107.41 | | $91,483 | Deposit Coral Gables Pay |
| 3/9/2018 | $91,483 | $1,051.00 | | $92,534 | Deposit by check |
| 3/21/2018 | $92,534 | $107.41 | | $92,641 | Deposit Coral Gables Pay |
| 3/31/2018 | $92,641 | | $5 | $92,636 | Return mail fee |
| 3/31/2018 | $92,636 | $67.06 | | $92,703 | Dividend |
| 4/4/2018 | $92,703 | $107.41 | | $92,811 | Deposit Coral Gables Pay |
| 4/16/2018 | $92,811 | $2,600.00 | | $95,411 | Deposit by check |
| 4/16/2018 | $95,411 | $6,261.00 | | $101,672 | Transfer share 0002 |
| 4/16/2018 | $101,672 | $10.00 | | $101,682 | Deposit Rev Mail |
| 4/18/2018 | $101,682 | $107.41 | | $101,789 | Deposit Coral Gables Pay |
| 4/30/2018 | $101,789 | | | $101,789 | |
| 5/2/2018 | $101,789 | $107.41 | | $101,896 | Deposit Coral Gables Pay |
| 5/16/2018 | $101,896 | $107.41 | | $102,004 | Deposit Coral Gables Pay |
| 5/21/2018 | $102,004 | $2,573.77 | | $104,578 | Deposit by check |
| 5/31/2018 | $104,578 | $107.41 | | $104,685 | Deposit Coral Gables Pay |
| 6/12/2018 | $104,685 | $2,200.00 | | $106,885 | Deposit by check |
| 6/13/2018 | $106,885 | $107.41 | | $106,992 | Deposit Coral Gables Pay |
| 6/27/2018 | $106,992 | $107.41 | | $107,100 | Deposit Coral Gables Pay |
| 6/30/2018 | $107,100 | $76.37 | | $107,176 | Dividend |
| 7/9/2018 | $107,176 | $2,200.00 | | $109,376 | Deposit by check |
| 7/11/2018 | $109,376 | $107.41 | | $109,484 | Deposit Coral Gables Pay |
| 7/25/2018 | $109,484 | $107.41 | | $109,591 | Deposit Coral Gables Pay |
| 7/31/2018 | $109,591 | | | $109,591 | |
| 8/8/2018 | $109,591 | $107.41 | | $109,698 | Deposit Coral Gables Pay |
| 8/21/2018 | $109,698 | $8,500.00 | | $118,198 | Deposit by check |
| 8/21/2018 | $118,198 | | $3,003 | $115,195 | Withdrawal by check |
| 8/21/2018 | $115,195 | | $5,500 | $109,695 | Withdrawal |
| 8/22/2018 | $109,695 | $107.41 | | $109,803 | Deposit Coral Gables Pay |
| 8/31/2018 | $109,803 | | | $109,803 | |
| 9/1/2018 | $109,803 | | $25 | $109,778 | Withdrawal safe deposit |
| 9/5/2018 | $109,778 | $107.41 | | $109,885 | Deposit Coral Gables Pay |
| 9/20/2018 | $109,885 | $107.41 | | $109,993 | Deposit Coral Gables Pay |
| 9/30/2018 | $109,993 | $110.40 | | $110,103 | Dividend |

**A-862**

**Analysis of Edwin Pagan III and Edwin Pagan Romero Bank Accounts Detail**
**Dade County Federal Credit Union #███9701**
**January 1, 2018 - January 31, 2020**
Source: DX JC-768A, DX JC-769, DX JC-1318

| Date | Beg. Balance | Deposits/Other Credits | Checks/Other Debits | End. Balance | Description |
|---|---|---|---|---|---|
| 10/3/2018 | $110,103 | $107.41 | | $110,211 | Deposit Coral Gables Pay |
| 10/17/2018 | $110,211 | $107.41 | | $110,318 | Deposit Coral Gables Pay |
| 10/31/2018 | $110,318 | $107.41 | | $110,425 | Deposit Coral Gables Pay |
| 11/14/2018 | $110,425 | $107.41 | | $110,533 | Deposit Coral Gables Pay |
| 11/28/2018 | $110,533 | $107.41 | | $110,640 | Deposit Coral Gables Pay |
| 11/30/2018 | $110,640 | | | $110,640 | |
| 12/10/2018 | $110,640 | $2,500.00 | | $113,140 | Deposit by check |
| 12/12/2018 | $113,140 | $107.41 | | $113,248 | Deposit Coral Gables Pay |
| 12/26/2018 | $113,248 | $107.41 | | $113,355 | Deposit Coral Gables Pay |
| 12/31/2018 | $113,355 | $112.01 | | $113,467 | Dividend |
| 1/9/2019 | $113,467 | $107.41 | | $113,574 | Deposit Coral Gables Pay |
| 1/17/2019 | $113,574 | | $50,003 | $63,571 | Withdrawal by check |
| 1/23/2019 | $63,571 | $107.41 | | $63,679 | Deposit Coral Gables Pay |
| 1/31/2019 | $63,679 | | | $63,679 | |
| 2/6/2019 | $63,679 | $107.41 | | $63,786 | Deposit Coral Gables Pay |
| 2/21/2019 | $63,786 | $107.41 | | $63,894 | Deposit Coral Gables Pay |
| 2/28/2019 | $63,894 | | | $63,894 | |
| 3/6/2019 | $63,894 | $107.41 | | $64,001 | Deposit Coral Gables Pay |
| 3/20/2019 | $64,001 | $107.41 | | $64,108 | Deposit Coral Gables Pay |
| 3/31/2019 | $64,108 | $71.69 | | $64,180 | Dividend |
| 4/3/2019 | $64,180 | $107.41 | | $64,288 | Deposit Coral Gables Pay |
| 4/17/2019 | $64,288 | $107.41 | | $64,395 | Deposit Coral Gables Pay |
| 4/30/2019 | $64,395 | | | $64,395 | |
| 5/1/2019 | $64,395 | $107.41 | | $64,502 | Deposit Coral Gables Pay |
| 5/9/2019 | $64,502 | $8,599.92 | | $73,102 | Deposit by check |
| 5/9/2019 | $73,102 | $600.00 | | $73,702 | Deposit |
| 5/9/2019 | $73,702 | $900.00 | | $74,602 | Deposit |
| 5/15/2019 | $74,602 | $107.41 | | $74,710 | Deposit Coral Gables Pay |
| 5/23/2019 | $74,710 | $2,453.75 | | $77,163 | Deposit by check |
| 5/23/2019 | $77,163 | $9,000.00 | | $86,163 | Transfer share 0002 |
| 5/29/2019 | $86,163 | $107.41 | | $86,271 | Deposit Coral Gables Pay |
| 5/31/2019 | $86,271 | | | $86,271 | |
| 6/12/2019 | $86,271 | $107.41 | | $86,378 | Deposit Coral Gables Pay |
| 6/13/2019 | $86,378 | $7,850.00 | | $94,228 | Deposit by check |
| 6/26/2019 | $94,228 | $107.41 | | $94,336 | Deposit Coral Gables Pay |
| 6/30/2019 | $94,336 | $76.70 | | $94,412 | Dividend |
| 7/10/2019 | $94,412 | $107.41 | | $94,520 | Deposit Coral Gables Pay |
| 7/24/2019 | $94,520 | $107.41 | | $94,627 | Deposit Coral Gables Pay |
| 7/31/2019 | $94,627 | | | $94,627 | |
| 8/6/2019 | $94,627 | $4,650.00 | | $99,277 | Deposit |
| 8/7/2019 | $99,277 | $107.41 | | $99,385 | Deposit Coral Gables Pay |
| 8/21/2019 | $99,385 | $107.41 | | $99,492 | Deposit Coral Gables Pay |
| 8/30/2019 | $99,492 | $2,493.01 | | $101,985 | Deposit by check |
| 8/31/2019 | $101,985 | | | $101,985 | |
| 9/1/2019 | $101,985 | | $25 | $101,960 | Withdrawal safe deposit |
| 9/4/2019 | $101,960 | $107.41 | | $102,067 | Deposit Coral Gables Pay |

# A-863

**Analysis of Edwin Pagan III and Edwin Pagan Romero Bank Accounts Detail**
**Dade County Federal Credit Union #████9701**
**January 1, 2018 - January 31, 2020**
Source: DX JC-768A, DX JC-769, DX JC-1318

| Date | Beg. Balance | Deposits/Other Credits | Checks/Other Debits | End. Balance | Description |
|------|------|------|------|------|------|
| 9/18/2019 | $102,067 | $107.41 | | $102,175 | Deposit Coral Gables Pay |
| 9/30/2019 | $102,175 | $99.25 | | $102,274 | Dividend |
| 10/2/2019 | $102,274 | $107.41 | | $102,381 | Deposit Coral Gables Pay |
| 10/16/2019 | $102,381 | $107.41 | | $102,489 | Deposit Coral Gables Pay |
| 10/30/2019 | $102,489 | $107.41 | | $102,596 | Deposit Coral Gables Pay |
| 10/31/2019 | $102,596 | | | $102,596 | |
| 11/4/2019 | $102,596 | $1,265.38 | | $103,862 | Deposit by check |
| 11/14/2019 | $103,862 | $107.41 | | $103,969 | Deposit Coral Gables Pay |
| 11/27/2019 | $103,969 | $107.41 | | $104,077 | Deposit Coral Gables Pay |
| 11/30/2019 | $104,077 | | | $104,077 | |
| 12/9/2019 | $104,077 | $271.00 | | $104,348 | Deposit by check |
| 12/9/2019 | $104,348 | $10.00 | | $104,358 | Deposit |
| 12/9/2019 | $104,358 | | $25 | $104,333 | Withdrawal |
| 12/11/2019 | $104,333 | $107.41 | | $104,440 | Deposit Coral Gables Pay |
| 12/24/2019 | $104,440 | $107.41 | | $104,547 | Deposit Coral Gables Pay |
| 12/31/2019 | $104,547 | $104.39 | | $104,652 | Dividend |
| 1/3/2020 | $104,652 | | $20,003 | $84,649 | Withdrawal by check |
| 1/8/2020 | $84,649 | $107.41 | | $84,756 | Deposit Coral Gables Pay |
| 1/22/2020 | $84,756 | $107.41 | | $84,864 | Deposit Coral Gables Pay |
| 1/31/2020 | $84,864 | | | $84,864 | |

**A-864**

**Analysis of Edwin Pagan III and Edwin Pagan Romero Bank Accounts Detail**
**Dade County Federal Credit Union #█9701**
**January 1, 2018 - January 31, 2020**
Source: DX JC-768A, DX JC-769, DX JC-1318

| Date | Beg. Balance | Deposits/Other Credits | Checks/Other Debits | End. Balance | Description |
|------|------|------|------|------|------|

**Share Draft Checking #0002**

| Date | Beg. Balance | Deposits/Other Credits | Checks/Other Debits | End. Balance | Description |
|------|------|------|------|------|------|
| 1/31/2018 | $201 | | | $201 | |
| 2/28/2018 | $201 | | | $201 | |
| 3/9/2018 | $201 | $6,261.00 | | $6,462 | IRS Treasury |
| 3/31/2018 | $6,462 | $0.41 | | $6,462 | Dividend |
| 4/16/2018 | $6,462 | | $6,261 | $201 | Transfer to Share 0001 |
| 4/30/2018 | $201 | $0.27 | | $201 | Dividend |
| 5/31/2018 | $201 | | | $201 | |
| 6/30/2018 | $201 | | | $201 | |
| 7/31/2018 | $201 | | | $201 | |
| 8/31/2018 | $201 | | | $201 | |
| 9/30/2018 | $201 | | | $201 | |
| 10/31/2018 | $201 | | | $201 | |
| 11/30/2018 | $201 | | | $201 | |
| 12/31/2018 | $201 | | | $201 | |
| 1/31/2019 | $201 | | | $201 | |
| 2/8/2019 | $201 | $8,831.00 | | $9,032 | IRS Treasury |
| 2/28/2019 | $9,032 | $0.78 | | $9,033 | Dividend |
| 3/31/2019 | $9,033 | $1.15 | | $9,034 | Dividend |
| 4/30/2019 | $9,034 | $1.11 | | $9,035 | Dividend |
| 5/23/2019 | $9,035 | | $9,000 | $35 | Transfer to Share 0001 |
| 5/31/2019 | $35 | $0.82 | | $36 | Dividend |
| 6/30/2019 | $36 | | | $36 | |
| 7/31/2019 | $36 | | | $36 | |
| 8/31/2019 | $36 | | | $36 | |
| 9/30/2019 | $36 | | | $36 | |
| 10/31/2019 | $36 | | | $36 | |
| 11/30/2019 | $36 | | | $36 | |
| 12/31/2019 | $36 | | | $36 | |
| 1/31/2020 | $36 | | | $36 | |

*Documents Reviewed:*
*Dade County Federal Credit Union #█701:*
*Source: DX JC-768A, DX JC-769, DX JC-1318*



**Analysis of John Costanzo, Jr. and JEM Solutions, Inc. Accounts**
**Wells Fargo Checking #2084, Wells Fargo Saving #1347,**
**Wells Fargo Checking #5630**
**For The Period April 23, 2019 - October 4, 2019**

**Wells Fargo Checking #2084 and Wells Fargo Saving #1347 (John Costanzo, Jr.)**

| Date | Payor | Vendor | Amounts($) |
|------|-------|--------|-----------:|
| 4/23/2019 | John Costanzo, Jr. | USAA Insurance | $326 |
| 5/29/2019 | John Costanzo, Jr. | USAA Insurance | 330 |
| 6/20/2019 | John Costanzo, Jr. | USAA Insurance | 1,324 |
| 7/24/2019 | John Costanzo, Jr. | USAA Insurance | 300 |
| 8/23/2019 | John Costanzo, Jr. | USAA Insurance | 499 |
| 9/17/2019 | John Costanzo, Jr. | USAA Insurance | 508 |
| | | Total | $3,287 |

**Wells Fargo Checking #5630 (JEM Solutions, Inc.)**

| Date Authorized | Date Posted | Description | Amounts($) |
|-----------------|-------------|-------------|-----------:|
| 7/4/2019 | 7/8/2019 | American Air Airfare | $1,109 |
| 8/27/2019 | 8/29/2019 | American Air Airfare | 1,119 |
| 10/4/2019 | 10/7/2019 | American Air Airfare | 1,169 |
| | | Total | $3,396 |

*Documents Reviewed:*
*Combined Wells Fargo Checking #2084 and Wells Fargo Savings #1347:*
*Source: DX JC-775-A, DX JC-1311-A*

> **DEFENSE**
> **EXHIBIT**
> **JC-2623**
> **22-cr-281 (JPO)**

O4OKCOSS

1          (Case called)

2          MR. SWETT:  Good morning, your Honor.  Sheb Swett and

3    Emily Deininger, on behalf of the United States.  We are joined

4    at counsel table by FBI Special Agent Delise Jeffrey.

5          THE COURT:  Good morning.

6          MR. MUKASEY:  Good morning, your Honor.  Marc Mukasey,

7    for the defendant, John Costanzo, who's seated to my right.  To

8    my immediate left is Stephanie Guaba.  To Mr. Costanzo's right

9    is Torrey Young and Mike Westfal.

10         THE COURT:  Good morning.

11         Today is the scheduled sentencing hearing in this

12    case.  Before we get to sentencing, there are pending motions

13    that I am going to rule on first.  Mr. Costanzo has filed a

14    motion for judgment of acquittal under Rule 29 of the Federal

15    Rules of Criminal Procedure, a motion for a new trial under

16    Rule 33, and a motion for dismissal of certain counts as

17    multiplicitous.

18         The legal standards that apply to these motions are

19    well known and, for the most part, undisputed.  I adopt the

20    parties' citations to those legal standards and will not repeat

21    the citations where they are undisputed.

22         First, the defendant moves for judgment of acquittal

23    on the ground that the evidence was insufficient to support the

24    jury's verdict of guilty on all the counts that apply to him.

25    To prevail on a motion under Rule 29, a defendant bears the

O4OKCOSS

1   heavy burden of showing that no rational trier of fact could

2   have found all of the elements of the crime beyond a reasonable

3   doubt.  In considering such a motion, the Court must review all

4   the evidence presented at trial in the light most favorable to

5   the government (that is, in favor of the jury's guilty

6   verdict), crediting every inference that the jury might have

7   drawn in favor of the government.

8           Viewing all the evidence in that light, I find that

9   the evidence was sufficient to support the jury's verdict.

10          First, there was substantial evidence that

11  Mr. Costanzo violated his lawful duties as a DEA agent by

12  providing confidential Drug Enforcement Administration

13  information to Mr. Recio.

14          Second, the evidence, taken as a whole, was sufficient

15  to allow the jury to find that he accepted payments in exchange

16  for providing that information.  This included several payments

17  during the time that the information was being provided that

18  went through a suspicious chain of entities and ended up in

19  some way connected to Costanzo.  The $2,500 payment was paid by

20  Recio by a GLC Global Legal Consulting to EBCO, Costanzo's

21  father's company.  This payment corresponded temporally with

22  Macey paying Recio $5,000 by check and Costanzo acknowledging

23  to Macey by text that he, Costanzo, had "just made $2,500."

24  Recio paid $20,750, again through GLC to JEM Solutions, an

25  entity jointly formed by Costanzo, Recio, and Pagan, whose bank

O4OKCOSS

1    account Costanzo had access to and used to book airline

2    flights.  A $50,000 payment was made via Pagan and Costanzo's

3    father for a down payment on a townhouse purchased by

4    Mr. Costanzo.  Like the other payments, this payment was

5    concealed while ultimately ending up benefiting Mr. Costanzo.

6    The jury was entitled to find that and other evidence of

7    concealment to be circumstantial evidence of consciousness of

8    guilt on the part of those involved.  In fact, Pagan's

9    testimony about his supposed "investment" in the townhouse was

10   lacking in credibility, to say the least, and certainly

11   permitted the same inference.  Similar to that $50,000 payment

12   was Pagan's payment of $20,000 to Mr. Costanzo's girlfriend as

13   repayment for a lawyer's retainer.  And, finally, Macey made

14   payments to Costanzo in the form of tickets to a Yankees game

15   and a $5,000 direct payment to Costanzo's contractor.

16         To be sure, the evidence linking to the payments to

17   the provision of confidential DEA information was largely

18   circumstantial, and much of the defendant's challenge boils

19   down to pointing to a lack of direct evidence of a quid pro quo

20   bribery scheme.  But direct evidence is not required.  As

21   jurors are routinely instructed, a guilty verdict can be

22   properly based entirely on circumstantial evidence, as long as

23   all the evidence is sufficient to permit a reasonable trier of

24   fact to find guilt beyond a reasonable doubt.

25         Here, the totality of the evidence — the timing of the

O4OKCOSS

1    payments in relation to the provision of information, the

2    circumstances of the payments, including their circuitous

3    routes through other entities, the defendant's communications

4    with others in the scheme, including the references to making

5    money and being partners, and the substantial evidence of

6    concealment — together provides sufficient evidence to support

7    guilt beyond a reasonable doubt.

8            On the issue of venue, I also find that the evidence

9    was sufficient to support the jury's finding on each count by a

10   preponderance of the evidence.  The jury could properly find

11   that the July 16, 2019 call from Recio placed in the Southern

12   District of New York to Costanzo — in which Costanzo provided

13   confidential information regarding an arrest and mentioned the

14   potential DEA angle for getting involved — was in furtherance

15   of the bribery scheme and the conspiracy.  The jury also could

16   have reasonably inferred that the trip to the Southern District

17   of New York and Macey's payment for Costanzo and Palmeri to

18   attend a Yankees game was a bribe payment and/or part of an

19   effort to develop sources to obtain further confidential DEA

20   information.

21           The Rule 29 motion for judgment of acquittal is,

22   therefore, denied.

23           Rule 33 provides that upon a defendant's motion, the

24   Court may vacate any judgment and grant a new trial if the

25   interest of justice so requires.  In *United States v. Archer*,

O4OKCOSS

1    in 2020, the Second Circuit explained that, absent a situation

2    in which the evidence was patently incredible or defied

3    physical realities, or where an evidentiary or instructional

4    error compromised the reliability of the verdict, a district

5    court must defer to the jury's resolution of conflicting

6    evidence.  The Court must be careful to consider any reliable

7    evidence as a whole rather than on a piecemeal basis.  The

8    ultimate test is whether letting a guilty verdict stand would

9    be a manifest injustice.  A Rule 33 motion should be granted

10   only if a court concludes that there is a real concern that an

11   innocent person may have been convicted.

12        The defendant argues that his Sixth Amendment right to

13   confront witnesses was violated by evidence and argument

14   relating to a subpoena return by GLC, as to which Recio was the

15   custodian of records.

16        As an initial matter, I find that this argument was

17   waived, or at least forfeited, by the defendant.  The parties

18   stipulated to the admission of Government Exhibit 520, which

19   included Mr. Recio's signature as custodian of records in

20   connection with the grand jury subpoena of GLC.  And with

21   respect to Exhibit 530, the GLC trial subpoena return, defense

22   counsel did not object to its admission or to the related

23   testimony or argument by the government.

24        Therefore, this argument is subject to review for

25   plain error.

O4OKCOSS

1          First, was there error?  The defendant contends that

2     the government violated *Bruton* and *Crawford* through

3     Government Exhibit 530, the GLC trial subpoena return, which

4     named Recio as custodian of records for GLC and identified

5     certain text messages as responsive to the government's trial

6     subpoena request for documents "relating to the November 18,

7     2018 invoice."  The defendant argues that this was tantamount

8     to a confession by Recio because GLC included as responsive

9     text messages in which Recio and Costanzo discussed running

10    names through the confidential DEA database around the same

11    time as the invoice.  By calling these text messages

12    responsive — and thus relating to the invoice — defendants

13    argues, Recio, via GLC, was effectively admitting the

14    quid pro quo as to this $2,500 payment from GLC to EBCO.

15          Although this is a colorable argument, I am not

16    persuaded that this evidence is properly viewed as tantamount

17    to a confession by Recio implicating Costanzo under the case

18    law.  Last year, in *Samia v. United States*, the Supreme Court

19    made clear that *Bruton* applies to confessions that directly

20    implicate the defendant, but not to confessions that implicate

21    the defendant only indirectly, that is, when linked with other

22    evidence at trial.  On their face, these documents simply show

23    invoices that somehow relate to certain text messages.  The

24    invoices could theoretically be invoices from DEA contractors

25    or some other valid expense.  It is only when considered

O4OKCOSS

1    together with other evidence about the entities and their

2    connections to the parties that they become incriminating.

3         In any event, to the extent there may have been error,

4    I find that it did not affect the defendant's substantial

5    rights or affect the fairness or integrity or public reputation

6    of the proceedings.  Taken as a whole, there was substantial

7    circumstantial evidence of the defendant's guilt, as discussed

8    earlier, and I do not think that this subpoena return, or the

9    government's argument about it, made the marginal difference in

10   the jury's verdict.  In fact, if the parties had objected to

11   Government Exhibit 530 and the related testimony, the outcome

12   may have been the redaction of Recio's name from the custodian

13   of records document, but the GLC subpoena return likely would

14   still have been admitted pursuant to the Court's holding in

15   *Braswell*, and the jury likely would have made the same

16   inference given that GLC was Recio's company, and there was

17   clear evidence of that.  And even if the GLC trial subpoena

18   return had not been admitted at all, the totality of the other

19   evidence at trial — and, in particular, the evidence regarding

20   the $2,500 payment — would have led the jury to reach the same

21   verdict.  If there was error, it was harmless error beyond a

22   reasonable doubt.

23        Finally, the defendant argues that bribery under

24   18, U.S.C., Section 201, and honest services wire fraud under

25   Section 1343 are multiplicitous.

O4OKCOSS

1    The double jeopardy clause of the Fifth Amendment

2    protects a criminal defendant from multiple prosecutions and

3    multiple punishments for the same offense.  If the jury

4    convicts on more than one multiplicitous count, the Court must

5    enter judgment on only one of those counts.  The test for

6    multiplicitous counts in the Second Circuit is the *Blockburger*

7    test, which turns on whether each offense requires proof of a

8    fact that the other does not.  Thus, if there is an element in

9    each statutory offense that is not included in the other, they

10   can both be prosecuted for double jeopardy purposes.

11       As the jury instructions made clear, honest services

12   wire fraud requires proof of the use of interstate wires in

13   furtherance of a scheme, an element that is not required by

14   Section 201.

15       Section 201, in turn, requires proof that a defendant

16   gave, or offered, or promised to give, something of value to a

17   federal public official, and that he intended to influence the

18   federal public official to take some action or inaction in

19   violation of his lawful duty.  Those elements are not required

20   for honest services fraud.

21       Under Second Circuit law, the charges here are not

22   multiplicitous under the *Blockburger* test.  The motion to

23   dismiss is, therefore, denied.

24       That constitutes the bench ruling on the posttrial

25   motions, and we'll turn to sentencing.

O4OKCOSS

1    You shall report to the nearest probation office

2    within 72 hours of release;

3    And you shall be supervised by the district of

4    residence.

5    I'm not imposing a fine because I find, based on the

6    probation department's report, that you are not in a position

7    to pay a fine.

8    However, there is a mandatory $100 special assessment

9    on each count, for a total of $400, which is hereby imposed.

10    I have a forfeiture order.

11    Do you want to address the forfeiture order?

12    MS. YOUNG:  Judge, I would like to put on the record

13    some objections to the forfeiture order.

14    THE COURT:  Okay.

15    MS. YOUNG:  Thank you.

16    The government argues that Mr. Costanzo personally

17    obtained approximately $98,250 in bribery payments and seeks

18    forfeiture in that amount from the money judgment.  We object,

19    and asked the Court in our papers, it's our position that there

20    was no proof at trial that John obtained that money as a result

21    of the offenses of conviction.

22    And, for forfeiture, it's black-letter law that only

23    the defendant's interest in property may be forfeited.  I'll

24    also point the Court to Supreme Court precedent *Honeycutt v.*

25    *United States*, which prohibits joint and several forfeiture in

O4OKCOSS

1   multidefendant cases.

2           Here, much of the money the government seeks to

3   forfeit was not properly obtained by John pursuant to the

4   *United States v. Tanner*.  John cannot forfeit funds he did not

5   acquire.

6           And I will briefly walk through the payments that were

7   not as a result of the offense and were never obtained by John.

8           The $2,500 was in an EBCO bank account, which John did

9   not have custody of or control over, and the financial expert

10  did not identify any money movement of the $2,500 in the EBCO

11  bank account.  The government relied solely on an inference

12  from a text message.

13          Then the 10,000 and $10,760 were in the JEM bank

14  account, which John did not have custody or control over, and

15  there was no subsequent disbursement of those funds to Costanzo

16  proven at trial.

17          I believe the government relies solely on the purchase

18  of the plane tickets from that account, but Costanzo did not

19  purchase the tickets on his own accord.  The evidence showed

20  that he informed Pagan before doing so.

21          The government's forfeiture calculation also puts

22  payments that were not proven to be a result of the offense,

23  and that would include the $50,000 payment that Pagan gave to

24  Costanzo's father, Costanzo, Sr., toward a down payment on

25  John's townhouse.  That came from his personal account at

O4OKCOSS

1    Dade Federal Credit Union, which contained funds that he had

2    accumulated over the years through various streams of income.

3            The $20,000 payment from Pagan to Special

4    Agent Costanzo's former girlfriend, who assisted with the

5    retainer for his prior legal counsel to the defense, had no

6    link to the charged conduct, and Pagan's bank records

7    demonstrated that he repaid the girlfriend with funds from his

8    personal bank account and that there were no transactions

9    reflected from any of the attorneys alleged to be the bribe

10    payors in the case.

11            The Yankees game tickets had no connection to the

12    offense in the case.

13            And the payments for the contractor were stated as

14    having been paid by John.

15            I also want to point out that had there been a

16    forfeiture of specific funds identified, there would have been

17    an opportunity for third parties to contest, but the

18    government, instead, seeks a money judgment.  Money judgment is

19    not authorized by the forfeiture statutes that the government

20    relies on.  The government seeks forfeiture against John

21    pursuant to 18 U.S.C. 981(a)(1)(C) and 982(a)(1), and those

22    statutes do not authorize a forfeiture money judgment, as

23    opposed to specific assets.

24            Whereas here, the text of the statutes at issue do not

25    explicitly provide for a forfeiture money judgment, courts lack

O4OKCOSS

1    the power to impose one.  See, e.g. *United States v. Mejad,*

2    which is a Ninth Circuit case, as well as *United States v.*

3    *Surgent*, which is an Eastern District of New York case from

4    2009.

5          For those reasons and the reasons set forth in our

6    prior papers, we object to the forfeiture order.

7          THE COURT:  Mr. Swett?

8          MR. SWETT:  Well, just to address the first argument

9    that a money judgment is not authorized, I don't think that

10    argument has been raised before.  I think it's clearly wrong,

11    but I don't think we need to be responding to legal arguments

12    not addressed in their sentencing submission.

13          MS. YOUNG:  We received the preliminary forfeiture

14    order after we submitted our sentencing memorandum, so we

15    wanted to make that objection on the record now.

16          MR. SWETT:  As to the theory of the bribe payments, I

17    think we'll rely on the Court's determination as to the bribe

18    amounts set forth in the PSR.  I think the Court, in ruling on

19    the Rule 29 motion, went through all the bribe payments and the

20    reason the jury could have concluded that they were related to

21    the scheme.

22          The only point I will make is just on *Honeycutt*, which

23    is that *Honeycutt* allows forfeiture of proceeds that a

24    defendant controls.  And that doesn't mean that the defendant

25    has a stack of cash in his hands or a bank account in his name.

O4OKCOSS

1    I think all the evidence in this case shows that Costanzo

2    controlled this money even if money was routed in ways that it

3    didn't touch his accounts personally.

4          So, for instance, Costanzo was given access to the

5    JEM Solutions account upon its opening.  So any money that went

6    in there was money that he controlled, even if he didn't draw

7    down all of that money, even if the account was held in the

8    name of another entity.  So I think there is ample evidence

9    that the Court has already laid out to conclude that all of

10   those payments were part of the bribery scheme, and I think

11   that there is ample evidence to conclude that Costanzo

12   controlled all of those proceeds.

13         THE COURT:  Let me just break that down.  I agree with

14   the government that all the payments that have been discussed

15   were part of the bribery scheme.  I guess I'm wondering,

16   though — and I think the improvements on the condo, the 2500,

17   certainly received those; the Yankee game and dinner or

18   whatever, he received the benefit of that; the 5,000 for the

19   payment to the contractor — I'm not sure -- the amount that

20   went into JEM Solutions, I agree, he had access to it, he

21   literally had access to it, but what happens in a situation

22   where the money that I find was intended for him, but then the

23   investigation happened, and it was then never used?

24         MR. SWETT:  It's still proceeds of the offense.  The

25   bribe was paid into the account.  He had access to the account.

O4OKCOSS

1    The fact that he was unable to draw down on the account doesn't

2    change that fact.

3         THE COURT:  What do you do in a situation where

4    multiple people have control of the account?

5         MR. SWETT:  Under *Honeycutt*, there can be joint and

6    several liability, but *Honeycutt* addressed this situation

7    specifically, which is multiple people can control one source

8    of funds.  Now, you may have to consider -- well, I don't think

9    you necessarily have to consider joint and several liability

10   because forfeiture, ultimately, is a punishment, it's not like

11   restitution, but it is not a defense to forfeiture that Pagan

12   also had access to that account.

13        MR. MUKASEY:  It is a defense that he never got the

14   money.

15        MR. SWETT:  He did get the money, your Honor.  When

16   that money hit the account, and he had the JEM credit card, he

17   had access to that money.  He chose not to spend it prior to

18   the FBI knocking on his door, but he had that money.

19        THE COURT:  So if I find that the EBCO money was

20   intended for him, but it then just sat there in the EBCO

21   account because things got interrupted, what do you do with

22   that?

23        MR. MUKASEY:  The JEM account.

24        THE COURT:  The JEM account, but -- that's right, the

25   JEM account, where it ended up.  But then things got

O4OKCOSS

1  interrupted, so then it never -- I guess you're saying he had

2  access to it --

3  　　　　MR. SWETT:  Yes, your Honor, exactly.  It's no

4  different than if someone had handed him a stack of cash and he

5  had left the cash sitting on his bedside table.  He had access

6  to funds that he could use.  That he chose not to spend them

7  during the period of the conspiracy is irrelevant for purposes

8  of forfeiture.

9  　　　　MS. YOUNG:  Your Honor, if I may, in *Tanner*, the

10 Second Circuit vacated the forfeiture order that was imposed by

11 the district court that required a codefendant to forfeit funds

12 that the codefendant had acquired.  Here, the proposed

13 forfeiture order would have the same erroneous result.  If

14 Mr. Costanzo did not acquire the funds, and they sat with a

15 codefendant or an alleged coconspirator, then a forfeiture

16 order as to John would be erroneous.

17 　　　　MS. DEININGER:  Your Honor, the case law is very clear

18 that a bank account does not need to be held in a defendant's

19 name in order for them to control it or been considered to have

20 received those proceeds.  What's critical is that they did at

21 some point receive the proceeds and had control, either

22 directly or indirectly, basically the ability to access that

23 money and determine how it would be disbursed.  Even if it's

24 not disbursed, just the ability to do that.  And, here, what

25 the evidence showed is that the very day or the day after the

O4OKCOSS

1    bank account was opened, Pagan sent Costanzo the account number

2    and the log-in for the bank account.  He is the only person

3    that used that bank account.  So, clearly, he had access to it.

4    Our argument the whole time has been that all of this money was

5    intended for Costanzo.  Pagan never made use of it.  The minute

6    that money hit that bank account, it's under his control, and

7    it's proceeds that are forfeitable.

8            THE COURT:  All right.  I overrule the objection, and

9    I do find, consistent with my findings adopted from the

10   presentence report, that the money was intended for

11   Mr. Costanzo, he had access to it, including the JEM account;

12   even though there might have been multiple access, he clearly

13   had the password, he had the ability, and it was intended for

14   him, and, therefore, he possessed -- he received it in the

15   relevance sense.  Therefore, I'm ordering forfeiture to the

16   United States in the amount of $98,250, and I am signing the

17   proposed forfeiture order representing proceeds traceable to

18   these offenses.

19           I'll set a surrender date.

20           MR. MUKASEY:  Judge, before we get there, I think we

21   have an application.

22           MS. YOUNG:  I'd like to make an oral application for

23   bail pending appeal at this time or, if the Court prefers, we

24   could submit it in writing.

25           Where a defendant is not likely to flee or pose a

O5EURECS

1    (Case called)

2         THE COURT:  Starting with the government, Counsel,

3    please state your name for the record.

4         MR. SWETT:  Good afternoon, your Honor.

5         Sheb Swett, Emily Deininger, and Matt Andrews, on

6    behalf of the United States.

7         THE COURT:  Good afternoon.

8         MR. GAINOR:  Good afternoon, your Honor.

9         Ron Gainor, Amber Donner, Phil Reizenstein on behalf

10   of Manny Recio, who is present, seated to my right.

11        THE COURT:  Good afternoon.

12        MR. GAINOR:  Good afternoon.

13        THE COURT:  I'll start with the oral rulings on the

14   posttrial motions.

15        Mr. Recio has moved for judgment of acquittal under

16   Rule 29 of the Federal Rules of Criminal Procedure, a motion

17   for a new trial under Rule 33, and a motion for dismissal of

18   certain counts as multiplicitous.  He adopts the arguments made

19   by Mr. Costanzo and has filed briefs with additional arguments.

20        The legal standards applicable to these motions are

21   well known and, for the most part, undisputed and I adopt the

22   parties' citations to those legal standards.  I will not repeat

23   those citations where they are undisputed.

24        To prevail on a motion under Rule 29, a defendant

25   bears the heavy burden of showing that no rational trier of

O5EURECS

1  fact could have found all of the elements of the crime beyond a

2  reasonable doubt.  In considering such a motion, the Court must

3  view all of the evidence presented at trial in the light most

4  favorable to the government, that is, in favor of the jury's

5  verdict, crediting every inference that the jury might have

6  drawn in favor of the government.

7       Rule 33 provides that, upon a defendant's motion, "the

8  Court may vacate any judgment and grant a new trial if the

9  interest of justice so requires."  In *United States v Archer*,

10 Second Circuit explained that absent a situation in which the

11 evidence was patently incredible or defied physical realities,

12 or where an evidentiary or instructional error compromised the

13 reliability of the verdict, a district court must defer to the

14 jury's resolution of the conflicting evidence.  The Court must

15 be careful to consider any reliable trial evidence as a whole,

16 rather than on a piecemeal basis.  The ultimate test is whether

17 letting a guilty verdict stand would be a manifest injustice.

18 A Rule 33 motion should be granted only if the Court concludes

19 that there is a real concern that an innocent person may have

20 been convicted.

21       First, the defendant moves for a judgment of acquittal

22 on the ground that the evidence was insufficient to support the

23 jury's verdict.

24       Viewing all the evidence in that light, I find that

25 the evidence was sufficient to support the jury's verdict

O5EURECS

1  finding Mr. Recio guilty of bribery of a public official,

2  honest services wire fraud, and conspiracy to commit those

3  offenses.

4          There was substantial evidence that Mr. Recio made

5  payments to Mr. Costanzo in exchange for confidential DEA

6  information, knowing that this information was being provided

7  in violation of Mr. Costanzo's lawful duties as a DEA agent.

8  Mr. Recio used this information, together with Mr. Macey and

9  Mr. Guerra, to recruit DEA targets as clients.

10          The evidence included several payments including --

11  the evidence included several payments, during the time that

12  the information was being provided, that went through a chain

13  of entities and ended up connected to Costanzo.  The $2,500

14  payment was paid by Mr. Recio via Global Legal Consulting or

15  GLC, to EBCO, Costanzo's father's company, shortly after Recio

16  retired from the DEA.  This payment corresponded temporally

17  with Macey paying Recio $5,000 by check and Costanzo

18  acknowledging to Macey by text that he, Costanzo, had "just

19  made $2,500." Recio paid $20,750, again through GLC to JEM

20  Solutions, an entity jointly formed by Costanzo, Recio, and

21  Pagan, whose bank account Costanzo had access to and used to

22  book airline flights.  Communications between Recio and

23  Costanzo also discussed Macey's and Guerra's involvement in

24  funding the scheme.  And there was evidence of Recio and

25  Costanzo hiding the scheme, including Reico's provision of a

O5EURECS

1    secret phone to Costanzo.  The jury was entitled to find this

2    and other evidence of concealment to be circumstantial evidence

3    and consciousness of guilt on the part of those involved.

4         It is true that the evidence linking the payments to

5    the provision of confidential DEA information was largely

6    circumstantial.  But direct evidence is not required.  As

7    juries are routinely instructed, a guilty verdict can be

8    properly based entirely on circumstantial evidence as long as

9    all the evidence is sufficient to permit a reasonable trier of

10   fact to find guilt beyond a reasonable doubt.

11        Here, the totality of the evidence -- the timing of

12   the payments in relation to the provision of information, the

13   circumstances of the payments, the defendant's communications

14   with others in the scheme including the references to making

15   money and being partners, and the substantial evidence of

16   concealment -- together provides sufficient evidence to support

17   guilt beyond a reasonable doubt.

18        On the issue of venue, I also find that the evidence

19   was sufficient to support the jury's finding on each count by a

20   preponderance of the evidence.  The jury could properly find

21   that the July 16, 2019, call from Recio placed in the

22   Southern District of New York to Costanzo -- in which Costanzo

23   provided confidential information regarding an arrest and

24   mentioned a potential DEA angle for getting involved -- was in

25   furtherance of the bribery scheme and the conspiracy.  The jury

O5EURECS

1    also could have reasonably inferred that the trip to the

2    Southern District of New York and Macey's payment for Costanzo

3    and Palmeri to attend a Yankees game was a bribe payment and/or

4    part of an effort to develop sources to obtain further

5    confidential DEA information.

6         Next, the defendant argues that his Fifth Amendment

7    rights were violated by evidence and argument relating to a

8    subpoena return by GLC, as to which Recio was the custodian of

9    the records.  I previously denied Mr. Reico's motion to quash a

10   grand jury subpoena on July 17, 2023, and his motion to quash

11   a trial subpoena on October 10, 2023, and I adopt the

12   reasoning in those orders.  The defendant now further argues,

13   citing *Braswell v. United States*, that his Fifth Amendment

14   rights were violated as a result of testimony by Rachel Danko

15   about what documents were included in the GLC subpoena returns

16   and testimony that Mr. Recio created GLC and was its custodian

17   of records.

18        As an initial -- as an initial matter, this argument

19   based on *Braswell* was waived or forfeited by the defendant.

20   The parties stipulated to the admission of Government

21   Exhibit 520, which included Reico's signature as custodian of

22   records in connection with the grand jury subpoena of GLC, and

23   Exhibit 530, the GLC trial subpoena return.  The defendant did

24   not raise this objection during Ms. Danko's testimony or during

25   the government's summation.  And the defense counsel

O5EURECS

1    acknowledged in opening statement that GLC was Reico's "own

2    company."

3              Therefore, this argument is subject to review for

4    plain error, at most.

5              I conclude, first, that the custodian-of-records forms

6    and related testimony are "too far removed from the principle

7    evil at which the Confrontation Clause was directed to be

8    considered testimonial." *United States v. Hunt*, 534 F. Supp.

9    3d 233, 256, (E.D.N.Y. 2021)(citing cases).  Further, as in

10   United States v. Stein, 2021, WL 3129628 (S.D. Fla.

11   July 23, 2021), there was no violation of *Braswell* here, where

12   the government did not seek to compel the defendant to be the

13   one to respond to the subpoenas, but he chose to do so.

14             In any event, even if there was an error, I find that

15   it did not affect the defendant's substantial rights or affect

16   the fairness or integrity or public reputation of the

17   proceedings.  Taken as a whole, there was substantial evidence

18   that the defendant's guilt, and I do not think that the

19   subpoena return, or the government's argument about it, made

20   the marginal difference in the jury's verdict.  In fact, if the

21   parties had objected to Government Exhibit 530 and the related

22   testimony, the outcome may have been the redaction of Reico's

23   name from the "custodian of records" document, but the GLC

24   subpoena return likely still would have been admitted pursuant

25   to the Court's holding in *Braswell*, and the jury likely would

O5EURECS

1    have made the same inference given that GLC was Recio's

2    company.  And even if the GLC trial subpoena return had not

3    been admitted at all, the totality of the other evidence at

4    trial, including the evidence regarding the $2,500 payment,

5    would have led the jury to reach the same verdict.  If there

6    was error, it was harmless beyond a reasonable doubt.

7            Accordingly, the motion for acquittal under Rule 29

8    and a motion for a new trial under Rule 33 are denied.

9            Finally, the defendant argues that bribery under 18,

10   U.S.C., Section 201 and honest services wire fraud under

11   Section 1343 are multiplicitous.

12           The double jeopardy clause and the Fifth Amendment

13   protects a criminal defendant from multiple prosecutions as

14   well as multiple punishments for the same offense.  If the jury

15   convicts on more than one multiplicitous counts, the Court must

16   enter judgment on only one of those counts.  The test for

17   multiplicitous counts in the Second Circuit is the *Blockburger*

18   test, which turns on whether each offense requires proof of a

19   fact that the other does not.  Thus, if there is an element in

20   each statutory offense that is not included in the other, they

21   can both be prosecuted for double jeopardy purposes.

22           As the jury instructions made clear, honest services

23   wire fraud requires proof of the use of interstate wires in

24   furtherance of a scheme, an element that is not required by

25   Section 201.

O5EURECS

1      I do find that the value of the reasonably foreseeable

2  bribery payments was $98,750.  I understand the argument that's

3  made by defense counsel, and if the standard were what

4  Mr. Recio specifically knew, it would be different but the fact

5  is that the connections among these scheme members was very

6  close, and I think it's certainly more likely than not that

7  that full amount was reasonably foreseeable given the

8  connections among these individuals, given the nature of their

9  interaction, the volume of their interaction.  I think that's

10  certainly true as to the $50,000 in addition to the undisputed

11  amounts attributable to Mr. Recio.  But the important point

12  under the guidelines is that the measure is not what went

13  through Mr. Reico's hands or what he was directly involved in

14  or knowledgeable about, but rather what was reasonably

15  foreseeable.  He was an integral player in the scheme.  So I

16  think that amount was reasonably foreseeable.  I should say, if

17  I did not include the amounts of 20,000 and 5,000, the

18  guidelines range would be 41 to 51 months.  Under the

19  defendant's view, it would be 33 to 41 months.

20      At the end of the day, what's driving an appropriate

21  sentence is not the guidelines in this case, I believe, but

22  what a meaningful sentence is under all the other

23  considerations.  So even if I accepted that point, it would not

24  make a difference in my ultimate sentence.

25      Because the scheme involved -- so that's eight

O5EURECS

1    through the letters that Manny Recio was a hard-working,

2    dedicated, accomplished, caring, and you'll hear from him

3    shortly, Mr. Recio himself, remorseful individual.  He's made

4    mistakes.  He's also a man that will better himself.

5          We're asking the Court for as short as possible

6    sentence which will reflect his contributions over the decades,

7    his caring for family and nonfamily alike, and the hope of the

8    future.

9          I'm proud to call Manny Recio a friend.  And I know

10   that's a sentiment that's shared by many, many, many people

11   inside and outside of this courtroom.

12         Thank you.

13         THE COURT:  Thank you.

14         Let me ask counsel for both sides something I forgot

15   to ask, Mr. Swett, which is the forfeiture issue.  I think the

16   defense pointed out that under the *Honeycutt* decision it can't

17   be joint and several.  The government, in its submission, said

18   an appropriate measure is the amount that Mr. Macey paid

19   Mr. Recio during the period of time charged for the scheme,

20   which would be 90,300.

21         Do you have anything to add?

22         MR. GAINOR:  I'm going to defer to Ms. Donner who

23   worked up that issue, with the Court's permission.

24         THE COURT:  Sure.  Sure.

25         MS. DONNER:  Good afternoon.

O5EURECS

1          THE COURT:  Good afternoon.

2          MS. DONNER:  As your Honor knows, forfeiture and

3     substitute forfeiture is limited to property that the defendant

4     actually acquired as a result of the commission of the crime.

5     And I understand that your Honor already determined that the

6     98,750, in terms of loss, is applicable to Mr. Recio.  Here, as

7     your Honor points out, we're dealing with a completely

8     different issue.  And as Mr. Gainor mentioned, the term, we

9     believe the government leaps to conclusions, here the

10    government is jumping off a cliff when it asserts that the

11    90,300, all of it relates to the charged crimes and the crimes

12    of conviction.  The government doesn't put forth any evidence

13    that shows that all of Mr. Macey's payments to Mr. Recio, which

14    were salary payments that Mr. Recio got while he was working

15    for Mr. Macey, and as your Honor has heard today that Mr. Recio

16    did work for a lot of attorneys including Mr. Macey, and

17    there's no evidence that everything that Mr. -- that Mr. Recio

18    did for Mr. Macey, Mr. Recio related to the crimes of

19    conviction.  And, in fact, the government provided and

20    introduced at trial an exhibit, it's Government Exhibit 701,

21    which related to financial transactions and communications

22    among Mr. Macey, John Costanzo Sr., Edwin Pagan, Mr. Recio, and

23    Special Agent Costanzo.  And that exhibit reflects the

24    $2,500 -- the $5,000, we'll start with the $5,000 payment that

25    Mr. Macey paid to Mr. Recio, and right around that time there

O5EURECS

1   was the $2,500 payment to John Costanzo Sr. That's reflected

2   in their exhibit.

3        And we acknowledge that the government has established

4   forfeiture regarding that 2,500, but the government has not put

5   forth any evidence related to all of the other payments that

6   Mr. Recio was -- received from Mr. Macey.

7        Again, Mr. Recio worked on many cases with Mr. Macey,

8   and there's -- the government hasn't put forth any evidence

9   that any of that was improper. And it's the government's

10   burden by a preponderance of the evidence to establish that

11   this was money that came from the charged and convicted

12   offenses.

13        THE COURT: Thank you.

14        Mr. Swett, would you like to respond to that

15   forfeiture issue?

16        MR. SWETT: Sure. Sure, your Honor.

17        I think Ms. Donner has made the point for us by

18   accurately saying that Mr. Macey gave Mr. Recio a salary. If

19   this was a situation in which Mr. Recio was receiving some

20   standalone payment for a particular client, then, yes, I think

21   the government would be in a position to examine those clients

22   and determine whether some portion of that could be segregated

23   from this scheme or not.

24        But here, Mr. Macey paid Recio a regular retainer on a

25   monthly basis. The first payment came, I believe, the day

O5EURECS

 1    before Recio retired from the DEA, and as the Court remembers,

 2    that was exactly when Recio started asking Costanzo for names

 3    and dates.

 4          And so I disagree with this notion that we have to

 5    justify every single payment because the payment was tied to

 6    the scheme. It was not tied to individual clients. There's no

 7    indication that Recio and Macey had work that was not tainted

 8    by the bribery scheme. But --

 9          THE COURT: But it seems like he was also doing work

10    in terms of certain clients, the clients needed someone that

11    could speak Spanish, potential clients like Peralta, that he

12    was also doing sort of investigative work and getting evidence.

13          MR. SWETT: Well, I don't think there was much of

14    evidence of that at all, your Honor. In fact, I think we put

15    on a witness to go through the number of contracts that they

16    had. It was a vanishingly small number. And Peralta is a

17    perfect example. Sure. It was helpful that Recio spoke

18    Spanish in that case but it was also extremely helpful that

19    Costanzo was leaking information about the arrest date.

20          So I don't really don't think that you can disentangle

21    the two. Again, I think the fact that Recio, at the outset,

22    literally at the -- the day of his retirement began paying him

23    a salary, makes it very clear that this money was part of the

24    scheme, and I think that Costanzo and Recio acknowledged that.

25    They had a call where Recio was complaining about Macey,

O5EURECS

 1    complaining about working with him, complaining about not

 2    liking him, and Costanzo said, you have to get through this,

 3    that doesn't bring anything to the table.  And that was money.

 4    That was the regular paychecks that were flowing to Recio, and

 5    then which Recio was able to pass along as part of the scheme.

 6         So I think it's a very appropriate measure.  I think,

 7    given the Court's ruling that Macey is a coconspirator and,

 8    frankly, the complete derth of evidence that Macey and Recio

 9    had non-corrupt work, that it's appropriate to treat those

10    payments as part of the scheme.  And just on the --

11         Well, I'll leave it at that, your Honor, because I

12    don't think the *Honeycutt* point is relevant given the way we're

13    calculating forfeiture.

14         THE COURT:  Right.  But I just don't know -- it's true

15    that there's an absence of evidence that he was doing

16    legitimate work.  There's not a dollar-for-dollar piece of

17    evidence or even a basis for extrapolating, you know, that

18    every dollar of the 90,300 was, as you put it, tainted, you

19    know, as opposed to, maybe it was for investigative work he was

20    doing.

21         MR. SWETT:  Your Honor, it's not just the absence of

22    evidence.  It's the complete -- it's the overwhelming evidence

23    of the corrupt scheme.  So it's not as though -- I mean, it is

24    not just that we are saying they haven't proven that this work

25    was not legitimate.  It's, we are saying all of the evidence

O5EURECS

1    points to this work being corrupt.  Costanzo saying -- or

2    excuse me, Recio saying to the cooperator, I've got these

3    cases, I've got to choose if I'm going to give it to Dave or if

4    I'm going to give to Louie.  It's Costanzo and Recio talking

5    about who they should give cases to.  It's Recio -- it's having

6    many, many conversations with Macey on the phone.  It's Macey

7    saying to Costanzo, I thought this was the fresh air that was

8    coming in.

9         There is an overwhelming amount of evidence here to

10   show that what was happening was a concerted scheme.  And,

11   again, your Honor, if there were -- if Recio and Macey had an

12   arrangement whereby Recio was paid for the hours that he put in

13   or the work he did on behalf of clients, I think he'd have a

14   different argument, but this was a salaried employee.  This was

15   someone who was being paid a regular fixed amount.  And that

16   fixed amount wasn't tied to the doors that he knocked on.  It

17   wasn't tied to the memos that he wrote.  We know what it was

18   tied to because the day the payment started is also the same

19   day that Recio started doing the real work that he was

20   getting -- that he was hired to do and that was to get --

21         THE COURT:  Do you know what the payments were?  Were

22   they $5,000 consistent?  Or was --

23         MR. SWETT:  Your Honor, I believe --

24         MS. DONNER:  They were regular payments of $6,500.

25         MR. SWETT:  Correct.  After the first $5,000 payment,

O5EURECS

1    it was, I think, it was I think biweekly payments of $6,500.

2           MS. DONNER:  And I would just point out, your Honor,

3    that the government does have to prove the dollar for dollar

4    and forfeiture is a little bit different than loss analysis.

5           THE COURT:  Understood.  Yes.

6           MR. SWETT:  But, your Honor, the other thing I would

7    just point out, we subpoenaed GLC.  We subpoenaed Macey's law

8    firm.  We don't have billing records.  We don't have -- we

9    don't have invoices.  We don't have a record of the hours that

10   Recio worked on behalf of Macey.

11          And actually that stands in contrast to the Grodman

12   case.  I mean, Mr. Reizenstein knows this, that Recio would

13   have a contract for the Grodman case, and then when he was

14   going to go in excess of that, they rewrote the contract.

15          So this was all -- this was all done the way that

16   everything else in this case was done.  There was nothing --

17   nothing was written.  It was a handshake agreement because they

18   knew that ultimately this money was not something that they

19   could be open about in the same way that Recio was open in his

20   other investigative work.

21          THE COURT:  Thank you.

22          Well, thank you all for your statements.  You've

23   answered the questions that I had.

24          Mr. Recio, if you want to say anything, you're not

25   required to speak at all.  I've obviously read all the letters

O5EURECS

1    So what I determine is a sufficient but not greater

2  than necessary sentence is a sentence of 36 months on all

3  counts to run concurrent, followed by three years of supervised

4  release.

5    The forfeiture presents a close question.  I must find

6  by a preponderance of evidence that the amount of money or

7  property to forfeited was derived from proceeds traceable to

8  the fraud.  He was obviously on the payroll of Mr. Macey.  And

9  there's a pretty good argument that all of the money was

10  tainted because it was connected to the information he was

11  getting from Mr. Costanzo.  However, he was also an agent under

12  task.  And I think it's impossible to say how much of that

13  could be separated out from regular tasks that an investigator

14  does and doing translation services and whatever else he might

15  have been doing.  But, ultimately, I've determined that it's

16  too speculative to estimate how much of that is derived from

17  criminal conduct because I don't see any frame of reference for

18  that.

19    I'd like to ask counsel if you'd like to a state any

20  legal objection to the sentence I've indicated?

21    MR. SWETT:  No legal objections.

22    Your Honor, if you are not inclined to impose

23  forfeiture under the government's theory, we would request

24  forfeiture in the amount of 23,750, which represents the 2,500

25  paid to EBCO as well as the two $10,000 payments, and I can

O5EURECS

1    just confirm that exact amount, but we do think that that is

2    crime proceeds that Mr. Recio came into possession of.

3              MS. DONNER:  Well, that's not what they were seeking

4    on their papers.  They're seeking only payments from Mr. Macey

5    to Mr. Recio.  We didn't get any notice of that request and

6    it's not consistent with their theory of forfeiture that they

7    put forth, which is Mr. Macey's --

8              THE COURT:  I think the 23,000 would be double

9    counting the amount.

10             MR. SWETT:  Your Honor, *Honeycutt* makes it clear.

11   It's not double counting if both individuals have possession.

12   Forfeiture is not like restitution.  There's no windfall here.

13   It's punishment.  And so there are certainly cases where a

14   single bank account that multiple people control results in

15   forfeiture as to all people who control that bank account.  So

16   I don't think it's an issue of double counting.

17             MS. DONNER:  It's joint and several, your Honor.  Your

18   Honor has imposed the forfeiture order against Special Agent

19   Costanzo.

20             MS. DEININGER:  It's not joint and several, as

21   Mr. Swett just laid out.  *Honeycutt* also allows for the concept

22   that multiple defendants could have possessed the funds at

23   different points in time.  So, for example, if narcotic

24   proceeds are passed from a runner to a higher level up, they

25   can both be required to forfeit the amount that they ever had

O5EURECS

1    in their possession.

2            THE COURT:  Even if it was never intended for them to

3    keep it?

4            MS. DEININGER:  Yes.  Money that came into their

5    custody or control can be forfeited.  The amount that we're

6    requesting here is funds that Recio paid.  And so he had in his

7    possession and control that were fraud proceeds and paid into

8    the general account, at which point they came under the control

9    of Costanzo.  So they're forfeitable from Costanzo's -- as he's

10   the last person that ended up in possession of them, but Recio

11   paid them and had control of them as fraud proceeds at an

12   earlier point in time.

13           THE COURT:  The total amount is 23 -- is it 250?

14           MR. SWETT:  Yes.  23,250.

15           THE COURT:  Okay.  Any other legal objection?

16           MR. GAINOR:  Other than what's already on the record

17   and in our papers, no, your Honor.

18           THE COURT:  Okay.  Mr. Recio, you're hereby committed

19   to the custody of the Bureau of Prisons for a period of

20   36 months on all counts concurrent.  Following release, you'll

21   be on supervised release for three years, with the following

22   conditions:  You'll not commit another federal, state, or local

23   crime; you will not possess or use any illegal or controlled

24   substance; you will submit to one drug test within 15 days of

25   placement on supervised release and at least two thereafter;

O5EURECS

1    which is mandatory.  I'm also imposing a forfeiture in the

2    amount of $23,250 pursuant to the 18, U.S.C., Section

3    981(a)(1)(C), and this is based on the reading of *Honeycutt*,

4    which I think is correct as the government has indicated.

5          I'm ordering the defendant to surrender to a facility

6    designated by the Bureau of Prisons on August 19, 2024, at

7    2 o'clock p.m.  And I will make the recommendation that the

8    Montgomery, Alabama camp, and that he be considered as

9    appropriate for the RDAP program or any other treatment program

10   that is appropriate.

11         Mr. Recio, you have the right to appeal from your

12   conviction and sentence.  If you're unable to pay the costs of

13   the appeal, you may apply for leave to appeal without payment

14   of costs.  And the appeal must be filed within 14 days of the

15   filing of the judgment.

16         And a corrected copy of the presentence report will be

17   provided to the BOP and Sentencing Commission.

18         Is there anything further?

19         MR. SWETT:  No.  Thank you, your Honor.

20         MR. GAINOR:  No.  Thank you.

21         THE COURT:  All right.  Thank you all.

22         We're adjourned.

23                         o0o

24

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-                                                      22 Cr. 281 (JPO)

JOHN COSTANZO, JR. and
MANUEL RECIO,
                   Defendants.


### VERDICT FORM

PLEASE CHECK YOUR ANSWER AS TO EACH

*All Answers Must Be Unanimous*


### COUNT ONE:

**(Conspiracy to Bribe a Public Official)**

John Costanzo, Jr.:      Not Guilty _____      Guilty ✓_____

Manuel Recio:         Not Guilty _____      Guilty ✓_____


### COUNT TWO:

**(Public Official Accepting a Bribe)**

John Costanzo, Jr.:      Not Guilty _____      Guilty ✓_____

A-902

## COUNT THREE:

### (Bribery of a Public Official)

Manuel Recio:                    Not Guilty _____          Guilty ✓

## COUNT FOUR:

### (Conspiracy to Commit Honest Services Wire Fraud)

John Costanzo, Jr.:              Not Guilty _____          Guilty ✓

Manuel Recio:                    Not Guilty _____          Guilty ✓

## COUNT FIVE:

### (Honest Services Wire Fraud)

John Costanzo, Jr.:              Not Guilty _____          Guilty ✓

Manuel Recio:                    Not Guilty _____          Guilty ✓

*After completing the Verdict Form, please sign your names in the spaces provided below and fill in the date and time.  **The foreperson should then give a note — NOT the Verdict Form itself — to the Court Security Officer stating that you have reached a verdict.***



Date and Time: November 8, 2023 ; 1:42 p.m.

Court Exhibit 4

Criminal Notice of Appeal - Form A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/8/2024

## NOTICE OF APPEAL

### United States District Court

__Southern__ District of __New York__

Caption:

__United States__                          v.

__John Costanzo Jr., et al.__        Docket No.: __22-cr-281__

Hon. J. Paul Oetken
(District Court Judge)

Notice is hereby given that __John Costanzo Jr.__ appeals to the United States Court of

Appeals for the Second Circuit from the judgment [ ✓ ], other [ ] _____
(specify)

entered in this action on __04/24/2024 (amended on 4/26/2024)__.
(date)

This appeal concerns: Conviction only [ ___ ]   Sentence only [ ___ ]   Conviction & Sentence [ X ]   Other [ ___ ]

Defendant found guilty by plea [ ]  | trial [ ✓ ] | N/A [ ]  .

Offense occurred after November 1, 1987?   Yes [ X ]   No [   N/A [ ]

Date of sentence: __04/24/2024__   N/A [ ___ ]

Bail/Jail Disposition: Committed [ ___ ]   Not committed [ ✓ ]   N/A [ ]

Mr. Costanzo to voluntarily surrender on July 22, 2024.

Appellant is represented by counsel? Yes [ X ] | No [ ]  If yes, provide the following information:

Defendant's Counsel: __Daniel J. O'Neill__

Counsel's Address: __Shapiro Arato Bach LLP__

__1140 Avenue of the Americas, 17th Fl., New York, NY 10036__

Counsel's Phone: __(212) 257-4885__

Assistant U.S. Attorney: __Sebastian Swett__

AUSA's Address: __One Saint Andrew's Plaza__

__New York, NY 10007__

AUSA's Phone: __(212) 637-6522__

_____
Signature

Generated: May 8, 2024 10:26AM                                                                                Page 1/1

# U.S. District Court

## New York Southern - Manhattan

Receipt Date: May 8, 2024 10:26AM

JOHN COSTANZO JR.

Rcpt. No: 29076                          Trans. Date: May 8, 2024 10:26AM                          Cashier ID: #SS

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|----------------------|-----|-------|-----|
| 203 | Notice of Appeal/Docketing Fee | | 1 | 605.00 | 605.00 |

| CD | Tender | Amt |
|----|--------|-----|
| CC | Credit Card | $605.00 |
| | Total Due Prior to Payment: | $605.00 |
| | Total Tendered: | $605.00 |
| | Total Cash Received: | $0.00 |
| | Cash Change Amount: | $0.00 |

**Comments**: 22CR00281 JPO

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

Criminal Notice of Appeal - Form A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/24/24

# NOTICE OF APPEAL

### United States District Court

Southern _____ District of New York _____

Caption:

United States _____ v.

Manuel Recio _____

Docket No.: 22-cr-281

Hon J. Paul Oetken
(District Court Judge)

Notice is hereby given that Manuel Recio _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment ✓ , other ✓ Orders of Forfeiture and Denial of Post Trial Motions

entered in this action on 05/14/2024 _____ .
(date)                                                (specify)

This appeal concerns: Conviction only |___| Sentence only |___| Conviction & Sentence |✓ Other |✓

Defendant found guilty by plea | | trial |✓ | N/A |

Offense occurred after November 1, 1987? Yes |✓ | No [      N/A [

Date of sentence: 05/14/2024 _____ N/A |___|

Bail/Jail Disposition: Committed |___ Not committed |✓ | N/A |

Appellant is represented by counsel? Yes ✓ | No |    If yes, provide the following information:

Defendant's Counsel: Ron Gainor and Amber Donner

Counsel's Address: 3250 Mary Street, Suite 405, Miami, Florida 33133

Counsel's Phone: 305-206-2008

Assistant U.S. Attorney: Sebastian Swett

AUSA's Address: One Saint Andrews Plaza, New York, NY 10007

AUSA's Phone: 212-637-6522

_____
Signature

A-907

CJA-23
(Rev 3/21)

# FINANCIAL AFFIDAVIT
**IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT, OR OTHER SERVICES WITHOUT PAYMENT OF FEE**

IN THE UNITED STATES ☐ DISTRICT COURT ☐ COURT OF APPEALS ☐ OTHER *(Specify Below)*

IN THE CASE OF

| | | |
|---|---|---|
| United States | v. | Manuel A. Recio |

FOR

AT

LOCATION NUMBER

PERSON REPRESENTED *(Show your full name)*

Manuel A. Recio

| | |
|---|---|
| 1 ☑ Defendant - Adult | |
| 2 ☐ Defendant - Juvenile | |
| 3 ☐ Appellant | |
| 4 ☐ Probation Violator | |
| 5 ☐ Supervised Release Violator | |
| 6 ☐ Habeas Petitioner | |
| 7 ☐ 2255 Petitioner | |
| 8 ☐ Material Witness | |
| 9 ☐ Other *(Specify)* _____ | |

DOCKET NUMBERS
Magistrate Judge

District Court
**22-Cr-281**

Court of Appeals

CHARGE/OFFENSE *(Describe if applicable & check box→)* ☑ Felony ☐ Misdemeanor

Bribery of a Public Official

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

| | | |
|---|---|---|
| **INCOME & ASSETS** | **EMPLOYMENT** | Do you have a job? ☑ Yes ☐ No<br>**IF YES,** how much do you earn per month? 0-$5000 (not regular pay)<br>Will you still have a job after this arrest? ☐ Yes ☑ No ☐ Unknown |
| | **PROPERTY** | Do you own any of the following, and if so, what is it worth?<br>　　　　　　　　　　**APPROXIMATE VALUE**　　　**DESCRIPTION & AMOUNT OWED**<br>Home　　　　　$ 0<br>Car/Truck/Vehicle $ 49000　　Porsche Macan – amount owed $49,000) vehicle going to be returned<br>Boat　　　　　$ 0<br>Stocks/bonds　$ 0<br>Other property　$ 6872 (gross pension monthly)　Net income is 5646.18 per month |
| | **CASH & BANK ACCOUNTS** | Do you have any cash, or money in savings or checking accounts? ☐ Yes ☐ No<br>**IF YES,** give the total approximate amount after monthly expenses  $_____ |

How many people do you financially support? _____

| | BILLS & DEBTS | MONTHLY EXPENSE | TOTAL DEBT |
|---|---|---|---|
| **OBLIGATIONS, EXPENSES, & DEBTS** | Housing | $ 3518 | $ |
| | Groceries | $ 500 | $ |
| | Medical expenses | $ 100 | $ |
| | Utilities | $ 440 | $ |
| | Credit cards | $ 2000 | $ 87890 |
| | Car/Truck/Vehicle | $ 1100 | $ 48393 |
| | Childcare | $ | $ |
| | Child support | $ 2277 | $ 13662 |
| | Insurance | $ | $ |
| | Loans | $ | $ |
| | Fines | $ | $ |
| | Other | $ 480 | $ |

I certify under penalty of perjury that the foregoing is true and correct.

_____        05/22/24
SIGNATURE OF DEFENDANT                                         Date
(OR PERSON SEEKING REPRESENTATION)